**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

CSX TRANSPORTATION, INC.              )
                                                          )
              Plaintiff,                              )
                                                          )
v.                                                         )
                                                          )   Case No. 1:21-cv-2859
ZAYO GROUP, LLC,                           )
                                                          )
              Defendant,                           )
                                                          )
                                                          )

**FIRST AMENDED COMPLAINT**

Plaintiff CSX Transportation, Inc. ("Plaintiff" or "CSXT") for its Complaint against

Defendant Zayo Group, LLC ("Defendant" or "Zayo"), alleges as follows[1]:

**INTRODUCTION**

1.       For more than a century, CSXT and its predecessor railroads have operated rail

lines across Indiana and Illinois.

2.       CSXT owns and controls real property on which its railroad rights of way are

situated and upon which CSXT conducts federally regulated rail transportation activities

("CSXT Railroad Property" or "CSXT's Railroad Property"). The CSXT Railroad Property is

part of CSXT's interstate freight rail network that connects communities and commercial

markets across the eastern United States (CSXT's "Rail Network").

3.       CSXT is the wholly-owned rail operating subsidiary of a publicly-traded parent

holding company providing rail transportation services in furtherance of interstate commerce.

---

[1] Zayo files this First Amended Complaint pursuant to the Court's Order of November 17, 2021. Doc. 7.

Through its Rail Network. CSXT transports a wide array of essential goods to the communities it serves, such as fuel, agricultural commodities, automotive products, building materials, food products, manufactured goods, and military and medical supplies and equipment. CSXT also transports critical raw materials necessary to heat homes, fuel automobiles, and produce electricity.

4. Moreover, CSXT's Railroad Property is the private property of CSXT. In order to further facilitate its mission of efficient interstate commerce, CSXT routinely enters into licensing agreements with reputable third parties, such as telecommunications companies.

5. Such licensing agreements often permit these third parties to enter CSXT's private Railroad Property—after taking the necessary safety precautions—and install telecommunications lines alongside CSXT's Rail Network. These types of installations are carefully planned and coordinated by a core group of CSXT planning and safety professionals to ensure (1) the safety of those involved in the installation, CSXT personnel, and the general public; and (2) that the new installation will not interfere with rail operations or damage CSXT railroad infrastructure. These licensing agreements are of great benefit to the third-party companies, as they can efficiently make their installation along a clear railroad corridor with the assistance of CSXT safety and planning professionals.

6. Cooperative planning between CSXT and third-party telecommunication companies also protects the equipment of the telecommunication companies. CSXT frequently maintains its rail line and tracks. Without properly informing CSXT of the location of telecommunications installations near or within the CSXT Rail Network, telecommunications companies run the risk of CSXT's maintenance activities on the CSXT private Railroad Property interfering with their equipment.

7.      As a federally regulated railroad company, CSXT is responsible for controlling activities on its railroad rights-of-way to ensure the safety and continuity of interstate rail operations on CSXT's Rail Network.

8.      To fulfill its obligations and comply with federal safety regulations, CSXT has implemented reasonable safety procedures and permitting requirements for outside parties, such as telecommunications companies, seeking to install utilities on, under, or over CSXT's Rail Network.

9.      Among other things, CSXT's reasonable safety requirements include coordination with CSXT safety and engineering personnel to avoid disruptions to CSXT's freight rail operations and potentially catastrophic harm to CSXT employees and the public.

10.     CSXT's safety policies and permitting requirements are necessary to avoid, among other things: (i) collisions between trains and persons or property; and (ii) damage or disruption to CSXT rail infrastructure and signal systems that are critical to the safety of rail operations, including signal systems necessary to safely operate wayside signals, grade crossing installations, and federally mandated Positive Train Control signal systems.[2]

11.     At all relevant times, Zayo has been fully aware of CSXT's reasonable safety and permitting requirements necessary to make fiber optic installations on CSXT's Railroad Property.

12.     During the past several months, Zayo has repeatedly and willfully refused to comply with CSXT's safety and permitting requirements with respect to myriad unauthorized

---

[2] As the Department of Transportation has explained, "Positive Train Control (PTC) systems are designed to prevent train-to-train collisions, over-speed derailments, incursions into established work zones, and movements of trains through switches left in the wrong position." *See* https://railroads.dot.gov/train-control/ptc/positive-train-control-ptc.

fiber optic installations on CSXT's Railroad Property, including in Greencastle, Indiana and in and around Montrose and Teutopolis, Illinois. Upon information and belief, Zayo's reckless and unsafe installation activities have occurred at other locations along CSXT's Railroad Property.

13.     These unauthorized installations by Zayo included at least (1) the entry of Zayo personnel onto CSXT's private and active Railroad Property without authorization or safety precautions; (2) Zayo's heavy equipment being brought onto CSXT's private and active Railroad Property without authorization or safety precautions; and (3) Zayo's use of this heavy equipment to dig multiple holes and trenches on and under CSXT's private and active Railroad Property, causing immense damage to CSXT facilities, such as the severing of CSXT signal wires, the interference with the structural integrity of CSXT's rail line, and the disruption of CSXT's railroad operations.

14.     Zayo's reckless and unlawful installations have already caused significant harm and damage to CSXT's signal systems at a location in Montrose, Illinois, resulting in disruptions to the safety and continuity of CSXT's rail operations and jeopardizing the safety of the general public.

15.     After discovering Zayo's reckless conduct, on or about October 20, 2021, CSXT formally notified Zayo that it is not authorized to proceed with any installation on CSXT's Railroad Property without express authorization from CSXT and without complying with CSXT's reasonable permitting and safety procedures governing such installation on CSXT's active federally regulated Rail Network.

16.     CSXT further demanded that Zayo: (i) "cease and desist from any further unauthorized and unsafe activity, including any unlawful trespass or entry upon any of" CSXT's

4

Railroad Property; and (ii) confirm in writing that it has not "performed or undertaken any other unauthorized drilling, boring, or equipment installation activity" on CSXT's Railroad Property.

17.     To date, Zayo has not responded to CSXT's reasonable demand that Zayo coordinate any installation activities and comply with CSXT's reasonable permitting and safety requirements.

18.     Zayo's unauthorized installations constitute trespasses to CSXT's Railroad Property.  Upon information and belief, Zayo's unauthorized and unsafe fiber optics installations on CSXT's Railroad Property are part of a broader business strategy in derogation of CSXT's real property rights and in furtherance of a scheme to profit from reselling or advertising for resale the Zayo appropriated CSXT Railroad Property.

19.     CSXT brings this action in order ensure the safety and continuity of CSXT's interstate rail operations and to protect CSXT's property rights in CSXT's Railroad Property. Specifically, CSXT seeks that Zayo be ejected from CSXT's Railroad Property and that Zayo be enjoined from entering or interfering with CSXT's Railroad Property without prior authorization and approval from CSXT. CSXT also seeks monetary damages associated with Zayo's prior unlawful activities.

## PARTIES, JURISDICTION, AND VENUE

20.     Plaintiff CSXT is a corporation organized under the laws of the Commonwealth of Virginia. CSXT's principal place of business is in Jacksonville, Florida.

21.     CSXT is a citizen of Virginia and Florida.

22.     Defendant Zayo is a Delaware limited liability company.

23.     Zayo's principal place of business is in Colorado.[3]

24.     Zayo has one member: Zayo Group Holdings, Inc.[4]

25.     Zayo Group Holdings, Inc. is a Delaware corporation with its principal place of business in Colorado.[5]

26.     Therefore, Zayo is a citizen of Delaware and Colorado.

27.     Complete diversity lies between Plaintiff and Defendant.

28.     The amount in controversy far exceeds $75,000, not including interest or costs.

29.     Accordingly, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

30.     This Court has personal jurisdiction over Zayo because Zayo does business in Indiana, Zayo has caused injury in Indiana, Zayo owns real property in Indiana, and Zayo has caused property damage in Indiana. Zayo maintains offices and employees in Indiana.

31.     Personal jurisdiction over Zayo in Illinois is not required. However, to the extent the Court wishes to confirm that personal jurisdiction over Zayo would exist in Illinois, it would. Zayo does business in Illinois; Zayo has committed a tortious act in Illinois; Zayo has made and performed contracts in Illinois; and Zayo has acquired, possessed, and controlled items of value present within Illinois when such ownership, possession, and control was acquired. Zayo maintains offices and employees in Illinois.

---

[3] See Zayo Group LLC page on Indiana Secretary of State Website, listing Zayo Group LLC's CEO's address as 1805 29th Street, Suite 2050, Boulder, CO, 80301, USA.

[4] See Doc. 1 ¶ 2, Case 5:17-cv-00083-MTT (M.D. Ga) ("The sole member of Zayo [Group LLC] is Zayo Group, Holdings, Inc.").

[5] See Zayo Group Holdings, Inc. listing on Colorado Secretary of State website (identifying Delaware as jurisdiction and "1805 29th Street, Suite 2050, Boulder, CO 80301, United States" as "Principal office street address").

32.     Venue is appropriate in this Court, the United States District Court for the Southern District of Indiana, under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to this claim occurred in this district and a substantial part of the property that is the subject of this action is situated in this district, as Zayo trespassed on and damaged CSXT Railroad Property situated in Greencastle, Indiana.

33.     Zayo maintains a registered agent at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana, 46204. Zayo maintains offices at 625 E. 11th St., Indianapolis, Indiana 46202; 722 North High School Road, Indianapolis, Indiana 46214; and elsewhere in Indianapolis.

## FACTUAL ALLEGATIONS

### I.     CSXT'S FOCUS ON SAFETY AND CONTINUITY OF RAIL OPERATIONS

34.     CSXT is one of the largest railroad transportation companies in the United States, and as such, plays a critical role in interstate commerce, including among other things, the shipment of materials and supplies supporting national health, safety, and security.

35.     CSXT is a Class I railroad as defined by the Surface Transportation Board and a "rail carrier" as defined by federal law, 49 U.S.C. § 10102(5).

36.     CSXT provides common carrier rail transportation services across the CSXT Rail Network consisting of approximately 20,000 route miles of track in 23 states, the District of Columbia, and two Canadian provinces. CSXT operates and maintains more than 2,600 miles of active railroad lines in the State of Indiana alone.

37.     CSXT's Rail Network is highly interrelated. As such, even minor disruptions or delays in one location on the CSXT Rail Network can have a ripple effect on the efficiency of CSXT rail operations across hundreds of miles in each direction from a single chokepoint.

38.     Among other federal regulations, CSXT personnel and contractors must regularly access and inspect CSXT's rail infrastructure and facilities to ensure compliance with the following rules of the Federal Railroad Administration, Department of Transportation: (i) 49 C.F.R. Part 213-Track Safety Standards; (ii) 49 C.F.R. Part 214-Railroad Workplace Safety; (iii) 49 C.F.R. Part 220-Railroad Communications; 49 C.F.R. Part 225-Railroad Accidents/Incidents: Reports Classifications, and Investigations; (iv) 49 C.F.R. Part 233-Signal Systems Reporting Requirements; (v) 49 C.F.R. Part 236-Rules, Standards, and Instructions Governing the Installation, Inspection, Maintenance, and Repair of Signal and Train Control Systems, Devices, and Appliances; and (vi) 49 C.F.R. Part 237-Bridge Safety Standards.

39.     As a railroad, CSXT is also subject to Title 49 of the Code of Federal Regulations, which include "minimum Federal safety standards" for railroad workplace safety. *See* 49 C.F.R. § 214.1.  CSXT and its employees must comply with these federal regulations governing the safety of CSXT rail operations.

40.     However, railroads may adopt additional or more stringent requirements than those set forth in Part 214.  *See* 49 CFR § 214.1(b).  As these federal regulations permit, CSXT has adopted additional or more stringent safety and operating rules governing activities in close proximity to operating railroad tracks.

41.     More specifically, for the safety and integrity of CSXT's federally regulated railroad operations, CSXT has adopted standard policies and permitting requirements for outside parties seeking to install utilities on, under or over CSXT's active railroad property.

42.     Pursuant to these policies and permitting requirements, an outside party seeking to perform utility installation work on any of CSXT's Railroad Property must first submit a

8

completed application to CSXT for engineering review and approval before any work is commenced on CSXT's Railroad Property.

43.     CSXT also requires that any outside party must obtain commercial general liability and railroad protective liability insurance coverage prior to commencing any authorized work on CSXT's Railroad Property.

44.     To ensure the safety and continuity of CSXT's railroad operations, a completed application must be submitted for each proposed installation for engineering review and approval, including proof of insurance to confirm that any accidents or damage while working in or around railroad property have sufficient minimum coverage.  Each proposed installation project is also reviewed individually to determine, in CSXT's discretion, whether on-site safety personnel are required during the installation activities to protect CSXT's trains and the outside party's contractors.

45.     Upon final approval and grant of a permit, any outside party seeking to perform utility installation work on CSXT's Railroad Property must submit an Outside Party Request form to coordinate any appropriate flagging and/or inspection services.

46.     CSXT and federal regulations also have specific safety requirements governing the presence of persons, vehicles, and equipment in close proximity to active track.

47.     Because the full extent of Zayo's activities are still unknown, it is unclear whether, when, or how often Zayo may have violated CSXT's safety requirements governing activities within certain distances of operating track.

## II.      THE INDIANA JACKSON STREET TRESPASS.

### A.  The CSXT Railroad Property Near Jackson Street.

48.      For more than one hundred years, CSXT has operated its rail line in Greencastle, Indiana, which is an integral part of CSXT's larger interstate Rail Network. Some of these operations have occurred through CSXT's predecessors-in-interest, including the Monon Railroad Seaboard System and the New Albany and Salem Railroad. CSXT acquired and owns all assets from the Monon Railroad Seaboard System and the New Albany and Salem Railroad.

49.      CSXT's Greencastle operations are in active use for railroad purposes today, and they were in active use for railroad purposes at all times material to this Complaint.

50.      One area in Greencastle in which CSXT has active railroad operations is near 2000 S. Jackson St., Greencastle, Indiana 46135. Jackson Street is also known as Manhattan Road or S. County Rd. 150 W. This area is in Putnam County, Indiana.

51.      CSXT's property rights in the CSXT Railroad Property near Jackson Street consists of a total of ninety feet, being forty-five feet on either side of the center-line of the track.

52.      In the relevant area, Jackson Street is to the west of the CSXT Railroad Property.

53.      CSXT has active railroad operations on the Jackson Street portion of the CSXT Railroad Property, and it had active railroad operations on the CSXT Railroad Property at all times material to this Complaint.

54.      The Jackson Street CSXT Railroad Property is not abandoned. CSXT owns and controls the Jackson Street CSXT Railroad Property, upon which CSXT conducts federally regulated rail transportation activities.

**B.  The Jackson Public Road Right-of-Way.**

55.     The City of Greencastle maintains Jackson Street in the vicinity of the CSXT Railroad Property.

56.     In 2017, the City of Greencastle obtained a parcel of land from a nearby business. This encompasses the portion of Jackson Street purportedly relevant to this dispute.

57.     As part of this land transfer, the City of Greencastle retained a Professional Surveyor to prepare a survey map of the transferred land, together with the already-existing public road rights-of-way associated with Jackson Street (the "Jackson Survey").

58.     In the Jackson Survey, the city's Professional Surveyor outlined the public road right-of-way associated with Jackson Street in the area purportedly relevant to this dispute.

59.      The Jackson Survey determined that an existing public road right-of-way extended 17.5 feet to the west of the centerline of Jackson Street. The Jackson Survey also documented and depicted the transfer to the City of Greencastle of an additional 9 feet of public road right-of-way to the west.

60.     The Jackson Survey did not show a public road right-of-way to the east of Jackson Street.

61.     On information and belief, boundary lines of a public road right-of-way to the east of Jackson Street have never been established by a competent authority.

62.     On information and belief, no public easement or public road right-of-way was ever conveyed by instrument or acquired by condemnation to the east of Jackson Street.

63.     Therefore, on information and belief, the public road right-of-way to the east of Jackson Street extends only to the paved edge of Jackson Street.

**C. Zayo Proposes Installation of Fiber Optic Lines Across the CSXT Railroad Property Near Jackson Street Under False Pretenses.**

64.     Zayo installs fiber optic cables at various locations throughout the country and sells the bandwidth on these cables to other businesses.

65.     In August 2020, Zayo's Senior Director, Underlying Rights & Government Relations, Gillian Leytham, Esq., issued a proposal "concerning a fiber installation located across and along the CSX corridor," including the CSXT Railroad Property near Jackson Street.

66.     Zayo's August 2020 proposal contemplated a fiber optic installation to the east of Jackson Street and to the west of the CSXT rail line. This area is within the CSXT Railroad Property.

67.     Zayo represented that the proposed fiber installation would be "within the public rights-of-way limits of Jackson Street in Greencastle, Putnam County, Indiana," and that "Zayo's work w[ould] be in the public rights-of-way, which [Zayo] underst[ood] intersects with [CSXT's] railroad corridor at this location." Zayo further represented that "Zayo's installation w[ould] be located entirely within the public rights-of-way across and along the railroad corridor."

68.     These written representations from Zayo were false. The Jackson Street public road right-of-way does not overlap with CSXT's Railroad Property in any respect material to this lawsuit. Zayo's unauthorized installations fell outside of the public road right-of-way and within CSXT's Railroad Property.

**D. Zayo Promises to Consider Safely Moving the Proposed Fiber Installation Outside of CSXT's Railroad Property After CSXT and Zayo Meet.**

69.     Zayo and CSXT personnel met in March 2021 to discuss Zayo's proposed fiber optic installation near Jackson Street.

70.     During this meeting, Zayo agreed to consider a design change of moving the proposed fiber installation to the west side of Jackson Street. This potential change could have brought the fiber optic line outside of CSXT's Railroad Property, thus limiting the threat of injury to CSXT's rail operations and to the integrity of CSXT's vital equipment and facilities.

71.     After this meeting, CSXT also warned Zayo in writing that Zayo "must enter into an agreement and pay direct costs arising out of their proposed installation" if that installation would fall within CSXT's Railroad Property.

72.     CSXT also warned Zayo in writing that "case law does not grant Zayo the right to install within CSXT's railroad property. Nor does Zayo's certain rights as a public utility grant Zayo the right to install within CSXT's railroad property."

**E.   Zayo Disregards CSXT's Reasonable Safety and Permitting Requirements, Refuses to Respect CSXT's Railroad Property Rights, and Reveals the First Unauthorized Zayo Installation Has Already Occurred.**

73.     In the interest of promoting a safer installation, farther from the Jackson Street active rail track and infrastructure, CSXT again contacted Zayo in June 2021, through Melody Potter, the OSP Project Manager at Zayo.

74.     CSXT asked Ms. Potter whether she had "heard back from [her] engineering team concerning the design change of moving the proposed installation to the other side of Jackson Street so that the facility only crosses the track once and doesn't parallel within the railroad property at any point?" CSXT reminded Potter that if "the design remains the same to include the parallel portion within the railroad property, licensee fees will apply."

75.     In response, and in complete disregard for the safety of CSXT's employees, equipment and the public, Zayo disclosed that it knowingly and voluntarily entered upon CSXT's Railroad Property for unauthorized fiber optic cable installation and boring, without

coordinating with CSXT, without a CSXT flagman present to communicate with oncoming trains, and without CSXT engineering personnel and/or inspectors present to ensure that underground boring does not damage or disrupt CSXT's existing signal communication and other vital equipment.

76.      Specifically, in a series of two emails on June 3, 2021, Zayo revealed that it had "already placed" the conduit for the fiber optic line without CSXT's permission ("First Unauthorized Zayo Installation").

77.      The First Unauthorized Zayo Installation includes only those portions of Zayo's installation that run approximately parallel to CSXT's rail line on the CSXT Railroad Property. It does not include those portions of Zayo's installation that run perpendicular to CSXT's rail line.

78.      The First Unauthorized Zayo Installation was not authorized by CSXT.

79.      On information and belief, the First Unauthorized Zayo Installation took place between August 20, 2020 and June 3, 2021.

80.      The First Unauthorized Zayo Installation was made by Zayo without coordination with CSXT, and without the safety precautions required around an active rail line and in complete disregard for the safety of CSXT's employees, equipment, the public, and Zayo's subcontractor(s).  This was in direct violation of federal and CSXT safety requirements.

81.      Without appropriate railroad engineering review and construction oversight, installations within active rail corridors can create risks to railroad employees and the public, and they can hinder rail service by interfering with rail signals and communications and otherwise damaging railroad property. None of these precautions were taken by Zayo.

82.     The First Unauthorized Zayo Installation was within the CSXT Railroad Property and damaged CSXT's Railroad Property, including railroad infrastructure and equipment. It also interfered with and continues to interfere with railroad operations. The hazards posed to CSXT's vital equipment and facilities could jeopardize the safety of rail operations and the integrity of CSXT's track structure, which could lead to catastrophic injuries to CSXT's equipment, personnel or the public.

83.     Zayo attempted to justify its First Unauthorized Zayo Installation when Potter wrote: "Unfortunately I came into this project when it was already in progress-so some things happened before my time." Because the installation had already taken place—without CSXT's permission, and on the CSXT Railroad Property—Zayo asserted that the formerly proposed, potentially non-encroaching route "would cause [sic] more to revise, remove and replace-coupled with global material supply issues involving conduit, I just don't see it happening in a timely manner."

84.     Zayo further represented that the First Unauthorized Zayo Installation was "not on RR property on either side."

85.     This representation was false. The First Unauthorized Zayo Installation was within the CSXT Railroad Property and jeopardized the safety and continuity of CSXT's regulated rail operations.

86.     The First Unauthorized Zayo Installation was outside of the public road right-of-way.

87.     On information and belief, Zayo made other false, misleading, and coercive statements associated with the First Unauthorized Zayo Installation.

**F.  Zayo Continues Its Misrepresentations and Proceeds With the Second Unauthorized Zayo Installation.**

88.     Over the next several months, CSXT attempted to work with Zayo to coordinate a plan that focused on rail safety and continuity, with respect to any installations on the CSXT Railroad Property. CSXT's efforts included the negotiation and drafting of a licensing agreement, known as a Facility Encroachment Agreement, which among other things: (i) outlined certain safety and insurance requirements focusing on the safety and continuity of CSXT's rail operations; and (ii) included a licensing fee for Zayo's use of CSXT's Railroad Property.

89.     Disregarding all safety concerns, Zayo refused to sign the Facility Encroachment Agreement or to otherwise coordinate with CSXT or adhere to CSXT's reasonable safety and permitting requirements.

90.     Zayo's refusal to sign the agreement was premised on its repeated representations that "Zayo's deployment will be wholly within the public road right-of-way."

91.     Zayo's representations were false. Its unauthorized installations were outside of the public road right-of-way and in dangerously close proximity to active rail track and infrastructure on the CSXT Railroad Property.

92.     Zayo then wrote CSXT on August 19, 2021, attempting to coerce CSXT to choose between the safe operation of the railroad and protecting its property rights, stating:

> "Zayo continues to support safe and timely installations. As such, if CSX would like to provide flagging[6], we're more than willing to coordinate such services. **Zayo will proceed with deploying its**

---

[6] Federal regulations require the presence of a flagger during construction near a rail line. The flagger is designated to protect workers near the tracks, railroad personnel, equipment, passengers, facilities, and the general public, as he or she can communicate directly with train crews and dispatchers.

> **facilities within the next few weeks, so please let me know
> ASAP if CSX would like to arrange for flagging.** In this regard,
> Zayo may be amenable to entering into a $0 agreement specifically
> for flagging purposes; respectfully, however, our deployment
> cannot be delayed by prolonged negotiations."

93.      Zayo made clear through this statement that it would dangerously proceed to make an additional installation on the CSXT Railroad Property, without prior engineering review or coordination, and in total disregard for rail safety, continuity, and infrastructure.

94.      CSXT responded on August 20, 2021, again reminding Zayo that its prior and threatened future unauthorized attempts to install on the CSXT Railroad Property without any CSXT engineering review and/or safety or engineering personnel on-site posed the significant risk of damaging or impacting existing CSXT equipment actually located on the property and jeopardizing the safety of rail operations. CSXT specifically advised that in the interest of safety, Zayo must "coordinate flagging and inspection services with CSXT."

95.      CSXT also informed Zayo:

> "any installation without CSXT consent and coordination…is
> considered unauthorized and a trespass…. CSXT will hold
> Zayo…legally responsible for all damages, losses, and/or costs
> associated with Zayo's unauthorized entry upon, construction
> activity and any resulting interference with CSXT's railroad
> operations, including but not limited to, any damages, harm, injury,
> or disruption to: (i) CSXT's property, personnel, and equipment;
> and (ii) any freight and passengers using CSXT's rail lines in
> interstate commerce."

96.      In complete disregard for the safety of CSXT's employees, equipment and the public, Zayo declared that it "intend[ed] to proceed with construction as planned" without taking the necessary safety measures, and within hours of receiving the CSXT communication on August 20, 2021.

97.     On information and belief, at some time between August 20, 2021 and September 17, 2021, Zayo made an additional unauthorized installation on the CSXT Railroad Property near Jackson Street ("Second Unauthorized Zayo Installation").

98.     The Second Unauthorized Zayo Installation includes only those portions of Zayo's installation that run approximately parallel to CSXT's rail line. It does not include those portions of Zayo's installation that run perpendicular to CSXT's rail line.

99.     The Second Unauthorized Zayo Installation was not authorized by CSXT.

100.    As was the case with the First Unauthorized Zayo Installation, the Second Unauthorized Zayo Installation was made by Zayo without the necessary CSXT engineering review or coordination.

101.    The Second Unauthorized Zayo Installation is within the CSXT Railroad Property and damaged CSXT's railroad property, including railroad infrastructure and equipment. This resulted in significant continuing interference with CSXT's railroad operations.

102.    Zayo represented falsely in writing that the Second Unauthorized Zayo Installation was "wholly within the public road right-of-way." In reality, the Second Unauthorized Zayo Installation was outside of the public road right-of-way.

**G. The First and Second Unauthorized Zayo Installations Are Within the CSXT Railroad Property and Outside of the Public Road Right-of-Way.**

103.    The First and Second Unauthorized Zayo Installation are within the CSXT Railroad Property. These unauthorized installations are positioned to the west of the CSXT rail line and to the east of Jackson Street. On information and belief, they come within approximately twenty-two feet of the CSXT rail line located on the CSXT Railroad Property near Jackson Street.

104.     The First and Second Unauthorized Zayo Installations are outside of the public road right-of-way.

105.     The First and Second Unauthorized Zayo Installations occurred within CSXT active railroad property. The First and Second Unauthorized Zayo Installations occurred between railroad stations and public crossings.

106.     The First and Second Unauthorized Zayo Installations include at least seven bundled lengths of conduit. Each conduit is at least 1,000 feet in length. Accordingly, there are at least 1.3 miles of unauthorized Zayo installations within the CSXT Railroad Property.

107.     On information and belief, Zayo ran or planned to run fiber optic cables through these unauthorized installations.

108.     On information and belief, Zayo sold, planned to sell and/or advertised for sale the fiber optic bandwidth within the First and Second Unauthorized Zayo Installations to other businesses.

### III.     ZAYO'S DESTRUCTION OF CRITICAL RAIL INFRASTRUCTURE.

109.     More recently, Zayo's reckless activity has expanded to a portion of the CSXT Railroad Property in and around Montrose and Teutopolis, Illinois. On information and belief, Zayo's actions in Montrose, Illinois were part of an attempt to install a fiber optic line between Indianapolis and Saint Louis. On information and belief, this fiber optic line would also traverse the CSXT Railroad Property near Jackson Street in Greencastle, Indiana. In other words, Zayo's reckless activities on the CSXT Railroad Property in Indiana and Illinois were both in furtherance of the construction of a single, interstate fiber optic line by Zayo.

110.     For more than a century, CSXT and its predecessors have operated its rail line in the Montrose/Teutopolis area.

111.    CSXT's Montrose/Teutopolis operations are in active use for railroad purposes today, and they were in active use for railroad purposes at all times material to this Complaint.

112.    One area in Montrose/Teutopolis in which CSXT has active railroad operations is near the intersection of National Road and County Road 2100 East. The approximate GPS coordinates of this location are: 39.14885746009305, -88.41794270280191.

113.    CSXT has active railroad operations on the portion of the CSXT Railroad Property near Montrose, Illinois, and it had active railroad operations on that portion of the CSXT Railroad Property at all times material to this Complaint.

114.    The portion of the CSXT Railroad Property near Montrose, Illinois is not abandoned. CSXT owns and controls the portion of the CSXT Railroad Property near Montrose, Illinois, upon which CSXT conducts federally regulated rail transportation activities.

115.    On or before October 5, 2021, Zayo attempted to perform directional boring work within the CSXT Railroad Property near Montrose, Illinois.

116.    As with the above-referenced unauthorized activities, Zayo did not have CSXT's authorization, did not submit for engineering review, and did not coordinate with CSXT before entering and performing construction upon the CSXT Railroad Property.

117.    A direct consequence of Zayo's unauthorized and reckless installation included that Zayo's boring equipment struck and destroyed several key pieces of CSXT railroad infrastructure within the CSXT Railroad Property.

118.    Zayo's reckless activity included the destruction of critical railroad safety infrastructure, including at least ten pairs of CSXT underground wire and two CSXT signal cables, which support the continuity and safety of CSXT's rail operations. Zayo's actions

significantly disrupted CSXT's interstate rail operations, which could not continue until emergency repairs were made and safety concerns were addressed.

119.    After learning of Zayo's unauthorized activities and destruction of critical railroad infrastructure, on or about October 20, 2021, CSXT immediately sent correspondence to Zayo.

120.    In addition to notifying Zayo of the severe damage that had already been done, CSXT further directed Zayo and/or its contractor(s) to cease any unsafe and unauthorized activities on CSXT's railroad property, or otherwise interfering with CSXT's property rights or the safety of its rail transportation activities without CSXT's authorization.  CSXT explained that doing so would create grave safety risks for all concerned and the general public and that CSXT's reasonable safety and permitting requirements are designed to eliminate these risks.

121.    CSXT also reasonably requested that Zayo confirm in writing that neither Zayo, its contractor(s), "nor any other individual or entity acting on their behalf, has performed or undertaken any other unauthorized drilling, boring, or equipment installation activity . . . elsewhere on CSXT's interstate railroad network."

122.    However, Zayo ignored and disregarded CSXT's reasonable request for confirmation that Zayo and/or its contractors have not engaged in additional dangerous activities on CSXT's railroad properties. Accordingly, the full extent of Zayo's unlawful and dangerous activities elsewhere on CSXT's federally regulated rail network is not yet known.

123.    On information and belief, Zayo's activities also damaged or destroyed CSXT rails, switches, roadbeds, viaducts, bridges, trestles, culverts, embankments, railroad signal systems, train control systems, centralized dispatching systems, highway railroad grade crossing warning signals, locomotives, railroad cars, trains, and/or equipment.

124.    Zayo's destruction of key facilities significantly hampered and interfered with CSXT's railroad operations.

**IV.    THE OTHER TRESPASSES.**

125.    Over the past several years, Zayo has made other applications to CSXT to make installations on CSXT's Railroad Property.

126.    On information and belief, Zayo knowingly and intentionally made false and misleading statements in its applications, and the written communications surrounding these applications.

127.     Because Zayo refused to comply with CSXT's reasonable safety and engineering permitting requirements, CSXT did not approve these installations.

128.    In complete disregard for the safety and continuity of CSXT's rail operations, on information and belief, Zayo ignored CSXT's efforts and made some or all of these installations on CSXT's Railroad Property without CSXT authorization and without adhering to CSXT's reasonable safety and engineering permitting requirements. On information and belief, these installations were made as a part of the overarching Zayo scheme described in this Complaint.

129.    CSXT has not yet discovered, and could not, through the exercise of ordinary diligence, have discovered, Zayo's false and misleading statements associated with these other installations, until discovery in this case proceeds.

130.    Discovery will reveal the full extent of Zayo's associated misconduct.

**V.    ZAYO'S MENS REA.**

131.    In the interest of safety and protecting interstate rail operations, CSXT denied Zayo entry to the CSXT Railroad Property. Despite this denial, and with knowledge of it, Zayo knowingly and intentionally entered the CSXT Railroad Property and made installations in

Indiana and Illinois without authorization. These actions were taken in an intentional attempt to appropriate CSXT property rights and to injure CSXT, in a malicious manner, and in an effort to oppress CSXT.

132.    Zayo recklessly, knowingly, and intentionally damaged and defaced CSXT's railroad property and equipment. These actions were taken in an attempt to injure CSXT, in a malicious manner, and in an effort to oppress CSXT.

133.    On information and belief, Zayo's destructive actions on the CSXT Railroad Property were part of an overarching plan and scheme to appropriate large swaths of CSXT railroad property through self-help, without CSXT's authorization, and in contravention of the law.

134.    Discovery will reveal the full extent of this plan and scheme and Zayo's accompanying tortious actions.

135.    Zayo knew the false and misleading representations described above were false and misleading at the time they were made and thereafter.

136.    Zayo made the false and misleading representations and threats described above in an intentional attempt to injure CSXT, in a malicious manner, and in an effort to appropriate CSXT property rights, to deceive CSXT, and to oppress CSXT.

137.    Zayo made the false and misleading representations and threats described above with the intent to confiscate, appropriate, and obtain CSXT's property.

138.    Zayo's false and misleading representations and threats described above were calculated to injure CSXT and to inure to the benefit of Zayo, as Zayo relied on them in asserting that CSXT was only entitled to CSXT's "actual or direct costs for the plan review" associated with the proposed fiber line installation, as opposed to a traditional license fee.

## VI.   ZAYO'S RESALE SCHEME.

139.   Zayo employs a "business-to-business" fiber optic marketing strategy, wherein it sells portions of its fiber optic network bandwidth "to the world's most impactful companies," such as "carriers & cable TV companies."

140.   On information and belief, Zayo sells and advertises for sale this fiber optic bandwidth through Greencastle, Indiana and through Montrose/Teutopolis, Illinois.

141.   Further, on information and belief, Zayo sells and advertises for sale a current or future fiber optic line from Indianapolis to Saint Louis. On information and belief, this Zayo Indianapolis-Saint Louis fiber line traverses or will traverse Greencastle, Indiana and Montrose/Teutopolis, Illinois.

142.   On information and belief, Zayo's advertised fiber optic network utilizes or will utilize the illegally-installed Zayo fiber optic equipment within CSXT's Railroad Property.

143.    Through these actions, Zayo is reselling or advertising for resale the CSXT Railroad Property that it appropriated unlawfully and upon which it is trespassing.

144.   On information and belief, Zayo plans to continue its actions in furtherance of this scheme, appropriating CSXT railroad property and reselling it.

145.   Zayo's resale actions were taken with malice, with intent to appropriate property rights of CSXT and to oppress and injure CSXT, knowingly and intentionally, and with intent to appropriate the valuable property of CSXT.

VII.    **ZAYO'S INTENTIONAL AND RECKLESS ACTIVITIES ON CSXT'S PROPERTY HAVE CAUSED AND WILL CONTINUE TO CAUSE SIGNIFICANT AND IRREPARABLE HARM TO CSXT, INTERSTATE RAIL OPERATIONS, AND THE PUBLIC.**

146.    CSXT is obligated by federal law to ensure railroad safety, and Zayo's unauthorized installations have interfered and continue to interfere with CSXT's ability to comply with that obligation.

147.    Zayo's unauthorized and unsafe activities have interfered and jeopardized the safety and continuity of CSXT's federally regulated rail operations.

148.    Zayo's refusal to coordinate with CSXT safety and engineering personnel and to observe other basic safety precautions have resulted in the destruction of critical rail infrastructure. Zayo's actions damaged, defaced, and interfered with CSXT's rails, switches, roadbeds, viaducts, bridges, trestles, culverts, embankments, railroad signal systems, train control systems, centralized dispatching systems, highway railroad grade crossing warning signals, locomotives, railroad cars, trains, and/or equipment.

149.    Zayo's actions pose undue safety risks to CSXT's employees, contractors, and the general public, the full extent of which are unknown.

150.    Zayo's actions have hindered and continue to hinder CSXT's current and future rail operations, which are constantly being evaluated for efficiency, including the potential need for rail transportation infrastructure (including structures or substructures) improvements such as the double tracking of mainline segments across CSXT's Rail Network. The loss of even a small portion of any of CSXT's Railroad Property will prevent CSXT from conducting current and future rail transportation activities on any such Property.

151.    If Zayo is allowed to permanently restrict or limit CSXT's use of any of its Property it also would significantly limit or reduce CSXT's future ability and operational

flexibility to efficiently conduct rail transportation operations and to expand or reconfigure such Property.  For example, Zayo's illegal installations make it impossible for CSXT to add a second rail line through CSXT's Railroad Property due to federal, state, and internal safety laws, regulations, and policies. Among other reasons, Zayo's installations would be within the second rail line's "theoretical railroad live load influence zone," which is a safety hazard and which is not permissible.

152.    If CSXT were so restricted, CSXT would then be forced to incur substantial capital investment to explore alternative locations to expand (to the extent such locations exist and are suitable).

153.    These burdens and hinderances impact the efficiency of CSXT's entire Rail Network and significantly impair the value of the CSXT Railroad Property and its usefulness as a railroad corridor.

154.    Zayo's actions will also burden, hinder, or prevent CSXT's ability to upgrade its existing railroad operations. For example, the railroad industry is currently transitioning to "Positive Train Control" systems to increase safety and efficiency. Zayo's actions will interfere with this upgrade.

155.    Based upon prior experience, CSXT has reason to believe that Zayo may, without coordination or CSXT's consent or authorization, knowingly and surreptitiously again attempt to bore install fiber optic cable on, under and through CSXT's Railroad Property, thereby further interfering with CSXT's use and possession of its railroad property.

156.    Zayo's prior and threatened future unauthorized attempts to install fiber optic cable installation on CSXT's Railroad Property without any CSXT safety or engineering

personnel on-site poses the significant risk of damaging or impacting existing CSXT safety infrastructure, such as signal systems and positive train control.

157.    Zayo's unauthorized and unsupervised activities also jeopardize the safety of rail operations and the integrity of CSXT's track structure, which could lead to injuries to CSXT's equipment, personnel or the public.

158.    Finally, Zayo also stands to unjustly profit from its continuing tortious operation of its illegal installations. On information and belief, Zayo installed or will install fiber optic cable within these installations as part of a national Zayo fiber optic network. On information and belief, Zayo will sell, and currently advertises for sale, the bandwidth associated with this fiber optic cable to other companies, such as telephone companies, internet companies, and television companies. Zayo's appropriation and resale of CSXT's valuable railroad property in this manner is unjust and should not be permitted.

## VIII.   ALTERNATIVE ALLEGATIONS.

159.    Even if it is determined that the First and Second Unauthorized Zayo Installations were within a public road right-of-way, this would not provide Zayo with justification, excuse, privilege, or authorization to enter CSXT's Railroad Property, without prior coordination and approval by CSXT. It would likewise not provide Zayo with justification, excuse, privilege, or authorization to damage, deface, and destroy CSXT's railroad property and equipment, to interfere with CSXT's railroad operations, to make false and misleading statements and threats to CSXT, or to appropriate CSXT's Railroad Property.

160.    Accordingly, even if it is determined that the First and Second Unauthorized Zayo Installations were within a public road right-of-way, Zayo's installations within, entry upon, interference with, and damage to CSXT's Railroad Property, equipment, and operations were

unauthorized and without CSXT's consent. As were Zayo's false and misleading statements and coercive actions to CSXT and Zayo's appropriation of CSXT's property. Zayo took these unauthorized actions knowingly and intentionally, with malice, with intent to injure CSXT, with intent to oppress CSXT, and with intent to obtain CSXT's Railroad Property.

**COUNT I**
**Crime Victim's Relief Act – Criminal Trespass**
**(Zayo's Indiana Actions)**

161.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

162.    The CSXT Railroad Property is the real property of CSXT.

163.    Zayo did not have a contractual interest in CSXT's Railroad Property.

164.    Zayo knowingly and intentionally entered CSXT's Railroad Property.

165.    Zayo's knowing and intentional entry onto CSXT's Railroad Property occurred after Zayo was denied entry by CSXT. This denial was by means of personal communication, oral and written.

166.    This denial was also by means of the posting or exhibiting of a notice at the main entrance of the portion of CSXT's Railroad Property in a manner likely to come to the attention of the public.

167.    Zayo knowingly and intentionally refused to leave CSXT's Railroad Property.

168.    Zayo's knowing and intentional refusal to leave CSXT's Railroad Property occurred after Zayo was asked to leave the by CSXT.

169.    Zayo knowingly and intentionally interfered with the possession and use of CSXT's Railroad Property.

170.     Zayo's knowing and intentional interference with the use and possession of CSXT's Railroad Property was without the consent of CSXT.

171.     Zayo's actions with respect to CSXT's Railroad Property constituted criminal trespass, a class A misdemeanor, under Ind. Code § 35-43-2-2.

172.     CSXT has been damaged by Zayo's criminal trespass.

173.     The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

**COUNT II**
**Crime Victim's Relief Act – Railroad Mischief**
**(Zayo's Indiana Actions)**

174.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

175.     CSXT is a railroad company.

176.     CSXT owns and controls real property on which its railroad rights of way are situated and upon which CSXT conducts federally regulated rail transportation activities, the CSXT Railroad Property. The CSXT Railroad Property is part of CSXT's interstate freight rail network that connects communities across the eastern United States.

177.     On the CSXT Railroad Property, CSXT installed, operated, and maintained various rails, switches, roadbeds, viaducts, bridges, trestles, culverts, embankments, railroad signal systems, train control systems, centralized dispatching systems, highway railroad grade crossing warning signals, locomotives, railroad cars, trains, and/or equipment (the "CSXT Components").

178.    Zayo recklessly, knowingly, and/or intentionally damaged and/or defaced the CSXT Components.

179.    Zayo did not have the consent of CSXT, the owner of the CSXT Components.

180.    Zayo's actions with respect to the CSXT Components constituted railroad mischief, a level 6 felony, under Ind. Code § 35-43-1-2.3.

181.    CSXT has been damaged by Zayo's railroad mischief.

182.    The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

**COUNT III**
**Crime Victim's Relief Act – Deception**
**(Zayo's Indiana Actions)**

183.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

184.    Zayo made false and misleading written statements to CSXT.

185.    Zayo made these false and misleading written statements with the intent to obtain property.

186.    Zayo made these false and misleading written statements knowingly and intentionally.

187.    Zayo's false and misleading written statements constitute deception, a class A misdemeanor, under Ind. Code § 35-43-5-3(2).

188.    Although Ind. Code § 35-43-5-3 was repealed effective July 1, 2021, see 2021 Ind. HEA 1115 (LEXIS) § 45, the Indiana Legislature simultaneously provided that this repeal

did not affect crimes committed before July 1, 2021. See id. § 1 (codified at Ind. Code § 1-1-5.5-23).

189.    Zayo's deception occurred before July 1, 2021.

190.    CSXT has been damaged by Zayo's deception.

191.     The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

**COUNT IV**
**Crime Victim's Relief Act – Theft or Criminal Conversion - Resale Scheme**
**(Zayo's Indiana Actions)**

192.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

193.    CSXT's Railroad Property is the property of CSXT.

194.    One of the property rights that CSXT owns with respect to the CSXT Railroad Property is the right to license to third parties CSXT's Railroad Property for various purposes, including for the installation of telecommunications equipment parallel to CSXT's rail line ("CSXT Licensing Rights").

195.    The CSXT Licensing Rights are CSXT's property, as defined in Ind. Code § 35-31.5-2-253. Specifically, the CSXT Licensing Rights are valuable and they constitute: a gain or advantage or anything that might reasonably be regarded as such by the beneficiary; services; intangibles; and contract rights.

196.    Zayo knowingly and intentionally exerted unauthorized control over the CSXT's Railroad Property and the CSXT Licensing Rights. This included obtaining, taking, selling, conveying, encumbering, possessing, purporting to secure, purporting to transfer, and

purporting to extend a right to the property. For example, Zayo appropriated and then resold and advertised for resale CSXT's Railroad Property and the CSXT Licensing Rights.

197.    Zayo's control was not authorized by CSXT.

198.    Zayo was aware of a high probability that its control over CSXT's Railroad Property and the CSXT Licensing Rights was unauthorized.

199.    Zayo's knowing and intentional exertion of unauthorized control over CSXT's Railroad Property and the CSXT Licensing Rights was taken with the intent to deprive CSXT of any part of that property's value or use.

200.    The value of the property is at least $750.

201.    The value of the property is at least $50,000.

202.    Zayo's actions constitute theft, a Class A misdemeanor or a Level 5 or 6 felony, under Ind. Code § 35-43-4-2.

203.    Zayo's actions also constitute criminal conversion, a Class A misdemeanor, under Ind. Code § 35-43-4-3.

204.    CSXT has been damaged by Zayo's theft and criminal conversion.

205.    The Indiana Crime Victim's Relief Act permits the victim of criminal acts under Ind. Code § 35-43 to recover actual damages, treble damages, costs, reasonable attorney's fees, reasonable expenses, and reasonable costs of collection. Ind. Code § 34-24-3-1.

**COUNT V**
**Civil Trespass – Land**
**(All Zayo Actions)**

206.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

207.    CSXT's Railroad Property in Indiana and Illinois is the property of CSXT.

208.    CSXT was and is in lawful possession of CSXT's Railroad Property.

209.    Zayo did not have authorization to enter CSXT's Railroad Property.

210.    Zayo did not have permission, invitation, or other right to enter CSXT's Railroad Property.

211.    Zayo entered CSXT's Railroad Property.

212.    Zayo invaded the exclusive possession and physical condition of CSXT's Railroad Property.

213.    Zayo materially and unreasonably interfered with the right of CSXT to reasonable use of CSXT's Railroad Property.

214.    Zayo intruded upon and invaded CSXT's Railroad Property.

215.    Zayo trespassed on the CSXT's Railroad Property.

216.    Zayo's trespass was intentional.

217.    CSXT was damaged by Zayo's trespass.

218.    Zayo's trespass on CSXT's Railroad Property was malicious and oppressive.

219.    Zayo's trespass on CSXT's Railroad Property amounted to willful and wanton misconduct.

220.    Malicious, oppressive, willful, and/or wanton trespasses warrant the imposition of punitive damages.[7]

_____

[7] To the extent required, this Complaint's requests for punitive damages and treble damages are stated in the alternative or to the extent they do not overlap.

**COUNT VI**
<u>**Civil Trespass – CSXT Components**</u>
<u>**(All Zayo Actions)**</u>

221.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

222.    Within the CSXT Railroad Property, CSXT installed, operated, and maintained the CSXT Components as defined above.

223.    The CSXT Components are fixtures to the land.

224.    In the alternative, the CSXT Components are chattels.

225.    The CSXT Components are the property of CSXT.

226.    CSXT was and is in lawful possession of the CSXT Components.

227.    Zayo did not have authorization to disturb or damage the CSXT Components.

228.    Zayo did not have permission, invitation, or other right to disturb or damage the CSXT Components.

229.    Zayo disturbed and damaged the CSXT Components.

230.    Zayo invaded the exclusive possession and physical condition of the CSXT Components.

231.    Zayo dispossessed CSXT of the CSXT Components.

232.    Zayo impaired and diminished the CSXT Components' condition, quality, and value.

233.    Zayo deprived CSXT of CSXT's use of the CSXT Components for a substantial time.

234.    Zayo harmed the CSXT Components, items in which CSXT had a legally protected interest.

235.    Zayo unlawfully exercised authority over the CSXT Components.

236.    Zayo cut, carved, lacerated, incised, and otherwise altered the CSXT Components without CSXT's authorization.

237.    Zayo injured and interfered with CSXT's possession of the CSXT Components.

238.    Zayo used and intermeddled with the CSXT Components.

239.    Zayo took the CSXT Components without CSXT's consent.

240.    Zayo obtained the CSXT Components by duress.

241.    Zayo barred CSXT's access to the CSXT Components.

242.    Zayo destroyed the CSXT Components while they were in CSXT's possession.

243.    Zayo intruded upon and invaded the CSXT Components.

244.    Zayo's actions with respect to the CSXT Components constitute a trespass.

245.    Zayo's trespass was intentional.

246.    CSXT was damaged by Zayo's trespass.

247.    Zayo's trespass was malicious and oppressive.

248.    Zayo's trespass amounted to willful and wanton misconduct.

249.    Malicious, oppressive, willful, and/or wanton trespasses warrant the imposition of punitive damages.

**COUNT VII**
**Unjust Enrichment**
**(All Zayo Actions)**

250.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

251.    A measurable benefit has been conferred upon Zayo at the express and implied request and actions of Zayo.

252.    Zayo has unjustly retained a benefit to the detriment of CSXT.

253.    Under the circumstances, Zayo's retention of the benefit without payment would be unjust.

254.    Zayo's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

255.    CSXT expected to receive payment for this measurable benefit.

**COUNT VIII**
**<u>Rent</u>**
**<u>(All Zayo Actions)</u>**

256.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

257.    The CSXT Railroad Property constitutes the property of CSXT.

258.    Zayo has taken and held possession of CSXT's Railroad Property without the consent of CSXT.

259.    CSXT has been damaged by Zayo's taking and holding of possession of CSXT's Railroad Property.

260.    Zayo should be required to pay rent for its past and continuing taking and holding of possession of CSXT's Railroad Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CSXT respectfully prays that this Court enter judgment in its favor and against Zayo and order as follows:

a.  That Zayo shall be ejected from CSXT's Railroad Property in Indiana and Illinois and remove the fiber optic cable installed in, on, along, or through such CSXT Railroad Property.

b.  That Zayo and its agents are permanently enjoined from entering or interfering with CSXT's Railroad Property or performing any work on CSXT's Railroad Property without prior coordination, authorization and approval from CSXT.

c.  That CSXT shall be entitled to recover compensatory damages and rent from Zayo in an amount to be determined at trial, for Zayo's confiscation, use, damage, destruction, and occupation of CSXT's Railroad Property in Indiana and Illinois.

d.  That CSXT shall be entitled to recover up to three times its damages, its costs, its reasonable attorneys' fees, and other costs and expenses from CSXT pursuant to Ind. Code § 34-24-3-1 (as to Counts I, II, III, and IV);

e.  That CSXT shall be entitled to recover punitive damages (as to Counts V and VI);

f.  That Defendant Zayo shall make restitution and disgorge its unjust gain;

g.  That CSXT be entitled to all other just and proper relief in the premises.

### JURY DEMAND

Plaintiff CSXT demands a trial by jury on all claims and issues so triable.

Dated: November 17, 2021.                    Respectfully submitted,

*/s/Robert D. MacGill*
Robert D. MacGill (9989-49)
Matthew T. Ciulla (34542-71)
**MACGILL PC**
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on November 17, 2021 on

all counsel of record by virtue of the Court's CM/ECF System.

On that same day, I mailed a copy of the foregoing via First Class United States Mail to

the below address:

Zayo Group, LLC
c/o CORPORATION SERVICE COMPANY
135 North Pennsylvania Street
Suite 1610
Indianapolis, IN 46204

/s/Matthew T. Ciulla