UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02859-JMS-MJD |
| ) | |
| ZAYO GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Dismiss, [Dkt. 19]. On January 7, 2022, District Judge Jane Magnus-Stinson designated the undersigned Magistrate Judge to issue a Report and Recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 26.] For the reasons set forth below, the Magistrate Judge RECOMMENDS that Defendant's motion be **DENIED**.

### I.  Background

The following facts are recited from Plaintiff's Amended Complaint.

Plaintiff CSX Transportation, Inc., ("CSXT"), "is one of the largest railroad transportation companies in the United States." [Dkt. 9 at 7.] CSXT is incorporated under the laws of Virginia with its principal place of business in Jacksonville, Florida. [Dkt. 9 at 5.] Defendant Zayo Group, LLC, ("Zayo"), "installs fiber optic cables at various locations throughout the country and sells the bandwidth on these cables to other businesses." [Dkt. 9 at

12.] Zayo is a Delaware limited liability company with its principal place of business in Boulder, Colorado. [Dkt. 9 at 5-6.]

CSXT "owns and controls real property on which its railroad rights of way are situated and upon which CSXT conducts federally regulated rail transportation activities" ("Railroad Property"). [Dkt. 9 at 1.] This privately-owned Railroad Property "is part of CSXT's interstate freight rail network that connects communities and commercial markets across the eastern United States," consisting "of approximately 20,000 miles of track in 23 states, the District of Columbia, and two Canadian provinces," with "more than 2,600 miles of active railroad lines in the State of Indiana alone." [Dkt. 9 at 1, 7.] As relevant here, CSXT maintains active railroad operations near 2000 South Jackson Street in Greencastle, Indiana, and near the intersection of National Road and County Road 2100 East in Montrose/Teutopolis, Illinois. [Dkt. 9 at 10, 20.]

After taking the necessary safety precautions, CSXT regularly enters into licensing agreements with third parties, such as telecommunications companies, to allow the installation of telecommunications lines alongside CSXT's rail network. [Dkt. 9 at 2.] In addition to the minimum federal safety standards required by 49 C.F.R. § 214.1, CSXT has adopted its own "policies and permitting requirements for outside parties seeking to install utilities on, under or over CSXT's active Railroad Property." [Dkt. 9 at 8.] For each proposed installation, any "outside party seeking to perform utility installation work on any of CSXT's Railroad Property must first submit a completed application to CSXT for engineering review and approval," must "obtain commercial general liability and railroad protective liability insurance coverage" before any work is commenced, and, upon final approval, "must submit an Outside Party Request form to coordinate any appropriate flagging and/or inspection services." [Dkt. 9 at 8-9.] These procedures are in place to ensure the safety of those involved and the general public, to prevent

interference with rail operations and damage to CSXT railroad infrastructure, and to avoid collisions between trains and persons or property. [Dkt. 9 at 2-3.]

CSXT alleges that "Zayo has repeatedly and willfully refused to comply with CSXT's safety and permitting requirements with respect to myriad unauthorized fiber optic installations on CSXT's Railroad Property, including in Greencastle, Indiana and in and around Montrose and Teutopolis, Illinois," as well as "other locations along CSXT's Railroad Property." [Dkt. 9 at 3-4.] Specifically, CSXT contends that Zayo undertook at least two unauthorized installations on its property in Greencastle, Indiana, between August 20, 2020, and June 3, 2021, and between August 20, 2021, and September 17, 2021, ("Indiana conduct" or "Indiana claims"), and at least one unauthorized installation in Montrose, Illinois, around October 5, 2021, ("Illinois conduct" or "Illinois claims"). [Dkt. 9 at 14, 18, 20.] Each incident caused damage to CSXT's railroad infrastructure and equipment. [Dkt. 9 at 18, 15, 20.] Further, CSXT explains that, "[o]ver the past several years, Zayo has made other applications to CSXT to make installations on CSXT's Railroad Property," but CSXT did not approve these applications due to Zayo's refusal to comply with CSXT's safety and permitting requirements. [Dkt. 9 at 22.] CSXT maintains that, on information and belief, Zayo nonetheless "made some or all of these installations on CSXT's Railroad Property" ("other trespasses") as part of Zayo's ongoing project, the goal of which is to install a continuous fiber optic network between Indianapolis, Indiana, and St. Louis, Missouri. [Dkt. 9 at 22.] *See Zayo Expands Fiber Network to Address Increasing Demand for Connectivity in Indianapolis and Fort Wayne*, ZAYO (Nov. 16, 2021), zayo.com/newsroom/zayo-expands-fiber-network-to-address-increasing-demand-for-connectivity-in-indianapolis-and-fort-wayne.

On November 17, 2021, CSXT filed its Amended Complaint, asserting claims for criminal trespass (Count I), railroad mischief (Count II), deception (Count III), and theft/criminal

conversion (Count IV), each arising from Zayo's alleged conduct in Indiana, and claims for civil trespass to land (Count V), civil trespass to CSXT components (Count VI), unjust enrichment (Count VII), and rent (Count VIII), each arising from Zayo's alleged conduct in Indiana, Illinois, and other unknown locations. [Dkt. 9.]

## II.  Discussion

Zayo moves to dismiss CSXT's claims only with respect to conduct that allegedly occurred outside of Indiana for (1) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); (3) improper venue under Federal Rule of Civil Procedure 12(b)(3); and (4) pursuant to the doctrine of *forum non conveniens*. [Dkt. 19.] The Court will address each argument in turn.

### A.  Personal Jurisdiction

The Court begins with Zayo's arguments that personal jurisdiction is lacking. [Dkt. 20 at 7.] As an initial matter, "[w]here no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). Here, Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause, which allows this Court to "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *see also Tamburo*, 601 F.3d at 700-01.

Once a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). A plaintiff need only make a prima facie showing of jurisdictional facts when, as here, a "district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Accordingly, all well-pleaded allegations are taken as true at this stage and any factual disputes are resolved in the plaintiff's favor. *Tamburo*, 601 F.3d at 700 (citing *Purdue Rsch.*, 338 F.3d at 782).

The overarching question with regard to personal jurisdiction is whether the defendant has sufficient "minimum contacts" with the forum state as to "reasonably anticipate being haled into court" there. *Id.* at 700-01 (quoting *Int'l Shoe*, 326 U.S. at 316; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Understanding this, personal jurisdiction "can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). A court may assert general personal jurisdiction "over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317); *see Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence"). On the other hand, specific personal jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (citation and internal quotation marks omitted).

CSXT does not argue that Zayo is subject to general jurisdiction in Indiana, and thus the Court turns to the issue of specific jurisdiction.

1. Specific Personal Jurisdiction

The exercise of specific jurisdiction is appropriate "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists*, 623 F.3d at 444 (citing *Burger King*, 471 U.S. at 472). Specific personal jurisdiction is therefore evaluated "by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo*, 601 F.3d at 702.

Here, there is no dispute that Zayo is subject to the Court's specific personal jurisdiction arising out of conduct alleged to have occurred within Indiana. Indeed, regarding at least two incidents in Greencastle, Zayo undoubtedly conducted activities within Indiana, and CSXT's alleged injuries arise out of that Indiana-based conduct. Based on these facts, there is no question that Zayo "should reasonably anticipate being haled into court" in Indiana for those incidents. *Burger King*, 471 U.S. at 474.

That said, a plaintiff "must secure personal jurisdiction over a defendant with respect to each claim [it] asserts." 4A Wright & Miller, *Federal Practice & Procedure* § 1069.7 (4th ed.). Zayo argues vigorously that the Court lacks personal jurisdiction with respect to CSXT's claims arising out of conduct alleged to have occurred outside of Indiana—namely, at least one incident in Montrose, Illinois. In response, CSXT urges the Court to extend pendent personal jurisdiction to its claims involving conduct outside of Indiana.

2. Pendent Personal Jurisdiction

Pursuant to the doctrine of pendent personal jurisdiction, "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only

6

when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court." *Id.*; *see also Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991). Notably, however, courts disagree regarding the validity of pendent personal jurisdiction. While no federal statute directly contemplates the subject, *see* 4A Wright & Miller, *Federal Practice & Procedure* § 1069.7 (4th ed.), the Second, Fourth, Seventh, Ninth, Tenth, Federal, and D.C. Circuits have adopted its use, at least in some circumstances. *See*, *e.g.*, *Aviva Life and Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 702 n.7 (S.D. Iowa 2014) (collecting cases); *Richardson v. Kharbouch*, 2020 WL 1445629, at *5 n.6 (N.D. Ill. Mar. 25, 2020) (same); *but see Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 n.6 (5th Cir. 2006) ("There is no such thing as supplemental specific personal jurisdiction" in the Fifth Circuit).[1] And although the doctrine is most often "invoked in federal question cases where a federal statute authorizes nationwide process of service," there is nonetheless support among courts in the Seventh Circuit for applying pendent personal jurisdiction "where the anchor claims

---

[1] Several cases from the Northern District of Illinois reject the notion of pendent personal jurisdiction. *See*, *e.g.*, *Liggins v. Abbvie, Inc.*, 164 F. Supp. 3d 1040, 1048 (N.D. Ill. 2016). In doing so, these cases routinely cite to *Seiferth*, 472 F.3d at 275 n.6, which in turn cites to 5B Wright & Miller, *Federal Practice & Procedure*: Civil 3d § 1351, at 299 n.30. However, the citation from Wright and Miller is actually to a compilation of caselaw regarding personal jurisdiction by circuit; the specific passage that states that "[t]here is no such thing as supplemental specific personal jurisdiction" is not a statement of generally accepted law, although it has been treated that way by the courts who have, directly or indirectly, relied upon it. As such, these Illinois cases are citing caselaw which, although undisputed in the Fifth Circuit, is not binding in this Court. In fact, Wright and Miller detail the existence and adoption of pendent personal jurisdiction elsewhere, *see* 4A Wright & Miller, *Federal Practice & Procedure* § 1069.7 (4th ed.), including in the Seventh Circuit. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) (where the district court exercised pendent personal jurisdiction over the defendant, Judge Posner stating that the "doctrine has heretofore been applied only to cases in which personal jurisdiction of one claim was based on a federal statute authorizing nationwide service of process. . . . But the defendants do not question the district court's extension of the principle to this case, so we need not discuss it, beyond observing that the court's action should probably be viewed as an interpretation of Illinois' long-arm statute rather than as some free-standing federal common law doctrine.") (internal citations omitted).

are based purely on state law." *Doe v. Cotterman*, 2018 WL 1235014, at *5 (N.D. Ill. Mar. 9, 2018) (citing *Rice*, 763 F. Supp. at 966). Indeed,

> [i]n *Rice v. Nova Biomedical Corp.*, Judge Aspen invoked pendant [sic] personal jurisdiction over an employee's retaliation and defamation claims due to their relationship to a third, intentional interference claim. 763 F. Supp. 961, 966 (N.D. Ill. 1991), *aff'd*, 38 F.3d 909 (7th Cir. 1994), *cert. denied*, 514 U.S. 1111, 115 S. Ct. 1964, 131 L. Ed. 2d 855 (1995). He determined that, even though he was sitting in diversity and all three claims arose under state law, the doctrine applied with "equal, or perhaps greater, force" than in cases where personal jurisdiction was predicated on a federal claim that provided for extra-territorial service of process. *Id.* (discussing *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 554-56 (3d Cir. 1973)). In so holding, Judge Aspen reasoned that "[s]ince the first two counts are substantially interrelated to [the third]" and the defendant was already properly before the court on the third count, the defendant "loses nothing by being subject to [the court's] judgment on the other two counts." *Id.*

*Id.*

Then, in 2000, the Seventh Circuit expressly recognized the doctrine in *Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445 (7th Cir. 2000). In *Robinson*, the plaintiff filed a complaint in the Northern District of Illinois, alleging violations of RICO, the Securities Act of 1933, and the Securities Exchange Act of 1934, as well as state law claims for rescission and fraud. *Id.* at 447. After the defendant was supposedly served in Canada, the district court ultimately entered a default judgment against him. *Id.* at 447-48. Ten years later, the defendant moved to vacate the default judgment, arguing that service was improper because he had never been served and had only recently become aware of the default judgment. *Id.* at 448. The district court denied the motion, and the defendant appealed. *Id.* To decide whether service was proper, the Court of Appeals first needed to determine whether the federal statutes at issue provided for service in a foreign country. *Id.* at 449. The court found that although each statute authorized nationwide service of process, only the Securities Act and Securities Exchange Act claims authorized service in Canada. *Id.* However, the court noted that "[t]he RICO claim

arises out of the same nucleus of operative fact as the securities claims; it was therefore proper for the federal court to assert personal jurisdiction over [the defendant] for it as well, under the idea of pendent personal jurisdiction." *Id.* Turning to the supplemental state law fraud and rescission claims, the court stated that, "[i]n our view, the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under § 1367." *Id.* at 450. The *Robinson* court thus concluded that the defendant "was amenable to the jurisdiction of the United State District Court for the Northern District of Illinois" for all of the claims asserted against him. *Id.*[2]

Following these authorities, the Court finds consideration of pendent personal jurisdiction appropriate. The question thus becomes whether CSXT's Illinois claims arise out of the same nucleus of operative fact as the Indiana claims such that the Court may exercise its pendent personal jurisdiction to hear the Illinois claims.

---

[2] While "some courts have interpreted *Robinson* to mean that pendent personal jurisdiction is only applicable in cases where the statute at issue authorizes nationwide service of process," *Robinson*'s application of pendent personal jurisdiction "did not turn on the availability of nationwide service of process." *Richardson,* 2020 WL 1445629, at *5 n.7.

> Specifically, the fact that the particular statutes at issue in *Robinson* authorized nationwide service of process had *no* bearing on the decision to exercise pendent personal jurisdiction. The operative issue in the case—given that the defendant lived in Canada—was that not all of the statutes authorized *international* service. Ultimately, the Seventh Circuit held that pendent personal jurisdiction over the defendant with respect to the RICO claim was proper because it arose out of the same nucleus of operative facts as the securities claims, which *did* authorize international service. *Robinson,* 223 F.3d at 449. Nationwide service was neither here nor there.

*Id.* (emphasis in original).

9

Here, CSXT's Illinois-based claims arise from the same nucleus of operative fact as the Indiana-based claims. Those common facts concern Zayo's alleged failure to follow CSXT's policies and permitting requirements during the installation of fiber optic cables on CSXT's Railroad Property. Taking CSXT's allegations as true, Zayo has ignored CSXT's procedures and commenced unauthorized activities on CSXT's property on at least three occasions—at least twice in Indiana and at least once in Illinois. Regardless of the incident location, the foundational footing remains the same; the claims share the same parties, the same procedures that were ignored, the same kind of unauthorized activities, and the same overarching property. This is sufficient for the application of pendent personal jurisdiction.

Still, federal due process requires consideration of "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," as well as "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies'" to ensure the exercise of personal jurisdiction is reasonable. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Here, since the Indiana-based claims are properly before this Court, "from the standpoint of fundamental fairness as to contracts with and convenience of the forum," Zayo loses nothing by being subject to pendent personal jurisdiction in this Court on the Illinois-based claims. *Rice*, 763 F. Supp. at 966. Additionally, trying CSXT's claims in a single case would eliminate the burden on CSXT of having to file a second lawsuit in another state that is largely dependent on the same facts, avoid the burden of two courts adjudicating what is essentially one dispute, and uphold the plaintiff's interest in seeking swift relief. Indeed,

it would not make sense to sever the Illinois claims from the Indiana claims in this case.[3] The exercise of pendent personal jurisdiction over CSXT's Illinois-based claims will thereby promote judicial economy and the efficient use of resources by the parties and the judicial system alike.

In sum, Zayo is properly subject to the Court's personal jurisdiction with respect to each of CSXT's claims in their entirety. Accordingly, the Magistrate Judge RECOMMENDS that Zayo's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) be **DENIED**.

### B. Failure to State a Claim

Next, Zayo argues that CSXT's "other trespass" claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that CSXT "fails to allege with specificity the acts giving rise to the claim for which relief may be granted." [Dkt. 20 at 13.] Specifically, Zayo asserts that CSXT "fails to set forth when and where these alleged trespasses occurred, or even if they occurred within the State of Indiana," and "fails to identify the property that CSXT alleges was damaged." [Dkt. 20 at 13-14.]

To sufficiently state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a claim upon which relief may be granted is dependant

---

[3] This case raises the interesting question of what constitutes a claim in the personal jurisdiction context. It is not at all clear whether CSXT's assertions of Illinois conduct and Indiana conduct are in fact separate claims, or whether they are simply factual allegations underlying CSXT's claims (Counts) for trespass, etc. The parties do not venture down this rabbit hole, however, so the Court need not either.

[sic] upon the context of the case and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

      Here, with regard to Counts V through VIII, CSXT has sufficiently given Zayo notice regarding CSXT's allegations that misconduct occurred in additional, currently unidentified, locations on CSXT's Railroad Property. That is enough to satisfy Rule 8's modest pleading standard, despite the lack of concrete details. In fact, "[m]ost details are more efficiently learned through the flexible discovery process." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 779 (7th Cir. 2007) (citations omitted); *see Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016) ("Discovery is the proper tool for [plaintiffs] to use to test the validity of [their] allegations," and summary judgment is available to defendants where plaintiffs are "unable to marshal enough facts to support [their] claim"). That is the case here, and CSXT has already utilized the discovery process in this manner by serving interrogatories on Zayo requesting specific details of all Zayo installations in Indiana and Illinois over the past five years. [Dkt. 44 at 26; Dkt. 32.] If CSXT is unable to support their "other trespass" claims, Zayo will have the opportunity to showcase that deficiency on summary judgment.

      Additionally, "a plaintiff might sometimes have a right to relief without knowing every factual detail supporting its right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove its claim." *EEOC*, 496 F.3d at 780 (citation omitted). While Zayo may be correct that CSXT "should be able to articulate when and where they claim Zayo trespassed on its property," [Dkt. 20 at 15], the same goes for Zayo: Zayo should be able to articulate when and where they installed fiber optic lines

12

on CSXT's Railroad Property. Still, these details are a matter of discovery and dismissing CSXT's Amended Complaint for failure to state a claim is unwarranted.

Zayo further argues that Count III should be dismissed to the extent it is premised upon CSXT's "other trespass" allegations on the ground that those claims fail to meet the heightened pleading standard for fraud prescribed by Rule 9(b). [Dkt. 20 at 15.] *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) ("Fed. R. Civ. P. 9(b) requires a party to 'state with particularity the circumstances constituting fraud,'" which includes "describing the 'who, what, when, where, and how' of the fraud") (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). However, Count III is not premised on CSXT's "other trespass" allegations; Count III alleges that Zayo knowingly made false and misleading statements to obtain CSXT's property with respect to Zayo's Indiana conduct. *See* [Dkt. 9 at 30] (CSXT's claim for deception under the Crime Victims Relief Act arising from "Zayo's Indiana Actions"). If Count III had included CSXT's "other trespass" claims, Zayo's argument may be well-taken, but CSXT sufficiently establishes the "who, what, when, and how" of the alleged Indiana conduct. *See* [Dkt. 9 at 12, 15, 16, 18] (explaining Zayo's allegedly false representations with regard to the Jackson Street installations).

In sum, Zayo is properly on notice regarding CSXT's "other trespass" claims, the details of which are appropriately to be borne out through discovery. Accordingly, the Magistrate Judge RECOMMENDS that Zayo's motion to dismiss CSXT's "other trespass" claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) be **DENIED**.

C. **Venue**

Zayo additionally argues that the Southern District of Indiana is an improper venue for claims arising from conduct that allegedly occurred in Illinois and other locations outside of Indiana. [Dkt. 20 at 16.] Venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the evidence or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Importantly, "the fact that another district could also be such a proper venue does not eliminate the propriety of this one." *Hill v. White Jacobs & Associates, Inc.*, 2015 WL 1717431, at *2 (S.D. Ind. Apr. 15, 2015); *see Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009) ("Venue may be proper in more than one court"). "When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)).

Zayo contends that venue is improper because "[n]one of the events giving rise to CSXT's Illinois claims occurred in the State of Indiana." [Dkt. 30 at 17.] However, the venue statute does not require that **all** events giving rise to the claim occur in the district where the claim is brought—only "a substantial part." 28 U.S.C. § 1391(b)(2). Nonetheless, "[a]ccording to the doctrine of 'pendent venue,' a claim that is not properly venued standing alone still can be heard by a court as long as another properly venued claim arising out of a common nucleus of operative facts also is brought at the same time in the same district." *Solomon v. Wardlaw Claim*

*Serv., LLC*, 2018 WL 3715690, at *4 (N.D. Ind. Aug. 3, 2018) (citing *Pacer Global Logistics, Inc. v. National Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 789 (E.D. Wis. 2003)). Pendent venue was "developed as an analogy to the concept of supplemental jurisdiction whereby a state law claim that could not otherwise be heard in a federal court would be allowed if attached to a factually similar federal claim." *Pacer*, 272 F. Supp. 2d at 789 (citing Richard Corn, *Pendent Venue: A Doctrine in Search of a Theory*, 68 U. Chi. L. Rev. 931, 932 (2001)). Since then, "[a] number of courts have invoked the doctrine of pendent venue to avoid having to dismiss or bifurcate claims that are based on the same underlying facts as properly venued claims." *Id.* (collecting cases). "The touchstones in the pendent venue analysis are judicial economy, convenience and fairness." *VMS/PCA Ltd. Partnership v. PCA Partners Ltd. Partnership*, 727 F. Supp. 1167, 1174 (N.D. Ill. 1989) (citing *Beattie v. United States*, 756 F.2d 91, 102 (D.C. Cir. 1984)).

Here, as already explained, the Illinois conduct is part of the same common nucleus of operative facts as the Indiana conduct. Forcing CSXT to sever its claims and establish the same nucleus in separate trials on different timelines would therefore disserve judicial economy and burden CSXT. *See Pacer*, 272 F. Supp. 2d at 789 ("If two or more claims arise out of the same set of facts, it is wasteful of judicial resources and unfair to one of more of the parties to require that the claims be litigated in separate judicial districts."). Such issues can be avoided by one court hearing the entire case together. As such, under the doctrine of pendent venue, each of CSXT's claims against Zayo may be litigated in the Southern District of Indiana.

Accordingly, the Magistrate Judge RECOMMENDS that Zayo's motion to dismiss CSXT's Illinois-based and "other trespass" claims for improper venue under Federal Rule of Civil Procedure 12(b)(3) be **DENIED**.

D. *Forum Non Conveniens*

Alternatively, Zayo argues that, even if venue is proper in the Southern District of Indiana, CSXT's Illinois-based claims should nonetheless be dismissed under the doctrine of *forum non conveniens*. [Dkt. 20 at 18.] As an initial matter,

> [t]he common law doctrine of forum non conveniens has continuing application in federal courts only in cases where the alternative forum is a foreign one. Otherwise, if the issue is one of convenience within the United States federal court system, the Federal Rules of Civil Procedure allow for transfer, rather than dismissal, when a sister federal court is the more convenient forum.

*Deb v. Sirva, Inc.*, 832 F.3d 800, 805 n.2 (7th Cir. 2016) (citing 28 U.S.C. §§ 1404(a), 1406(a); *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). As such, Zayo's motion to dismiss pursuant to *forum non conveniens* is more appropriately labeled as a motion to sever and transfer venue pursuant to 28 U.S.C. § 1404(a).

A district court may, in its discretion, transfer a civil action to any other judicial district in which the action could have been brought, provided that such transfer is "in the interest of justice" or will promote "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). "When deciding whether to transfer a case under § 1404(a), a district court therefore 'must evaluate both the convenience of the parties and various public-interest considerations.'" *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020) (quoting *Atlantic Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62, n.6 (2013)).

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Ibid.* (internal quotation marks omitted). The court

16

must also give some weight to the plaintiffs' choice of forum. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1995).

*Atlantic Marine*, 571 U.S. at 62 n.6. Importantly, the moving party must establish, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

Here, in contending that CSXT "has an alternative available venue in the State of Illinois," Zayo argues that "access to evidence would be easier in the State of Illinois," the location of the alleged trespass "would be more readily accessible for view by the jury," any "witnesses to the events are more likely to be in the State of Illinois," and "[a]n Illinois forum with judges more familiar with the laws of the State are Illinois is better suited to resolve the Illinois-based claims." [Dkt. 20 at 18-19.] These arguments are unpersuasive. As CSXT highlights in response, severing the Indiana and Illinois claims and forcing separate courts to try these interrelated issues would be a profound waste of judicial resources and a detriment to judicial economy. [Dkt. 44 at 23.] Moreover, Montrose, Illinois is located in the Southern District of Illinois,[4] and this case would presumably be assigned to the Benton division. The Benton courthouse is approximately 101 miles from Montrose—only 31 miles farther than the distance between the Indianapolis courthouse and Montrose. As such, the Southern District of Indiana is barely a more inconvenient forum than the Southern District of Illinois for Zayo, and

---

[4] The Court notes that Zayo fails to specify a transferee district, of which there are three options within the State of Illinois. The Court cannot compare the convenience of the Southern District of Indiana to that of "Illinois"; in order to properly engage in the necessary "flexible and individualized analysis" of "all factors relevant to convenience and/or the interests of justice," particularly with respect to factors such as court congestion, *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)), the Court must compare two specific districts.

17

this inconvenience pales in comparison to the burden that would be forced upon CSXT if made to try its claims in separate courts.

Accordingly, the Magistrate Judge RECOMMENDS that Zayo's motion to transfer CSXT's Illinois-based claims pursuant to 28 U.S.C. § 1404(a) be **DENIED**.

### III. Conclusion

For the reasons set forth above, the Magistrate Judge RECOMMENDS that Defendant's Motion to Dismiss, [Dkt. 19], be **DENIED** in its entirety.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 4 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.