UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| vs. ) | No. 1:21-cv-02859-JMS-MJD |
| ) | |
| ZAYO GROUP, LLC, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| ZAYO GROUP, LLC, ) | |
| ) | |
| *Third-Party Plaintiff,* ) | |
| ) | |
| vs. ) | |
| ) | |
| MILENIUM, INC.; CROSSROADS ) | |
| COMMUNICATIONS SOLUTIONS, LLC; ) | |
| BASELINE COMMUNICATIONS, NXC, LLC; ) | |
| BSM GROUPS, LLC; JDH CONTRACTING, ) | |
| INC.; OCM ENGINEERING, LLC; ON POINT ) | |
| CONSTRUCTIONS MANAGEMENT, INC.; PLB ) | |
| ENGINEERING, LLC; SPECTRUM ) | |
| ENGINEERING, LLC; and ) | |
| TESCO COMPANY, INC. ) | |
| ) | |
| *Third-Party Defendants.* ) | |

**ORDER**

This case began with allegations by Plaintiff CSX Transportation, Inc. ("CSX Transportation") that Defendant Zayo Group, LLC, ("Zayo Group") installed fiber optic cables upon its active railroad property in Indiana and Illinois, which resulted in damage to railroad equipment and interfered with railroad operations. [*See* Filing No. 210.] Zayo Group subsequently filed third-party claims for breach of contract and indemnification against the Third-Party Defendants, including Baseline Communications, NXC, LLC ("Baseline"), who were involved in

1

installing the fiber optic cables at issue. [Filing No. 222]. Baseline has filed a Motion to Dismiss, [Filing No. 286], arguing that Zayo Group's claims against it should be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue and pursuant to the doctrine of *forum non conveniens*. Baseline's Motion has been fully briefed and is ripe for the Court's review.

# I.
## STANDARDS OF REVIEW

### A.  Improper Venue under Rule 12(b)(3)

Rule 12(b)(3) allows a party to move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). When deciding a motion to dismiss under Rule 12(b)(3), the Court must accept the allegations in the plaintiff's complaint as true unless those allegations are contradicted by evidence submitted by the defendant. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.* "Where one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Id.* at 809-10.

### B.  The Doctrine of *Forum Non Conveniens*

The doctrine of *forum non conveniens* "empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007), and *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008)). A district court may exercise its discretion and dismiss a case on *forum non conveniens* grounds when (1) "'an alternative forum has jurisdiction to hear [the] case'" and (2) a trial in the chosen forum would

prove disproportionately oppressive and vexatious to the defendant, or '"the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem*, 549 U.S. at 432 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)) (alterations original).  The doctrine of *forum non conveniens* is "an exceptional one that a court must use sparingly." *Deb*, 832 F.3d at 805.  While the defendant bears the burden of persuading the district court that dismissal for *forum non conveniens* is appropriate, courts ordinarily afford a plaintiff's choice of forum strong deference.  *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008); *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003).

## II. BACKGROUND

To set context, the procedural background of the Third-Party claim at issue is set forth below. The following factual allegations are set forth in Zayo Group's Second Amended Third-Party Complaint, [Filing No. 222], and in support of Baseline's instant motion.

### A. Procedural History

This case initially began as a dispute between CSX Transportation and Zayo Group when CSX Transportation filed suit, alleging that Zayo Group made unauthorized fiber optic cable installations on its property in violation of its policies and federal safety requirements. [*See* Filing No. 1; Filing No. 210 at 16.]  CSX Transportation alleges that Zayo Group's actions resulted in damage to railroad infrastructure and equipment that has and continues to interfere with railroad operations.  [Filing No. 210 at 11-35.]  After CSX Transportation filed its claims, Zayo Group filed third-party claims for breach of contract and indemnification against the Third-Party Defendants, including Baseline, who each participated in the fiber optic cable installations at the center of CSX Transportation's claims.  [Filing No. 222.]

### B.     The Master Construction Services Agreement

Zayo Group and Baseline are parties to a Master Construction Services Agreement (the "MSA") which provides that Baseline will perform certain engineering services on behalf of Zayo Group, including the design of fiber optic cable installations. [Filing No. 222 at 8.] The MSA includes a provision (the "Indemnity Provision") that requires Baseline to:

> defend, indemnify, and hold [Zayo Group] harmless from and against any and all claims, proceedings, losses, demands, actions (and all expenses associated therewith asserted against, suffered, or incurred by indemnities) with respect to Death or injury to any persons or damage to property arising out of the acts or omissions of [Baseline,] its subcontractors and its or their employees or agents during the performance of the Services, any violation of law, or any failure to comply with any obligations imposed on it under this agreement.

[Filing No. 222 at 9.]

With respect to the relationship between the parties, the Terms and Conditions section of the original MSA[1] includes a provision (the "Arbitration Provision") that provides:

> **44.0 DISPUTE RESOLUTION**
>
> All claims and disputes relating to [the MSA] shall be subject to arbitration in Denver, Colorado. Any controversy or claim arising out of or relating to [the MSA] or the breach thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment of the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

[Filing No. 288-1 at 36.]

---

[1] Zayo Group did not attach the MSA as an exhibit to its Second Amended Third-Party Complaint. [Filing No. 222.] However, the MSA was attached as an exhibit to Baseline's Motion. [Filing No. 288-1 at 36.] When ruling on a motion to dismiss for improper venue, the Court may consider the allegations in the complaint as well as evidence submitted in support of the motion. *See Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Accordingly, the Court may consider the MSA when considering Baseline's Motion.

Additionally, the original MSA contained a provision (the "Forum Selection Clause") that provided:

**42.0 GOVERNING LAWS**

The rights and obligations of the parties hereto shall be construed and interpreted in accordance with the substantive law of the State of Colorado without giving effect to its principles for the choice of law.

[Filing No. 288-1 at 36.]

Importantly, however, the parties subsequently entered into six addendums that amended and extended the terms of the MSA.[2] [Filing No. 288-2; Filing No. 288-3; Filing No. 288-4; Filing No. 288-5; Filing No. 288-6.] Each of the addendums referenced the original MSA and stated that any amendments were "annexed to and made a part of" the MSA but "all other terms and conditions of [the MSA] shall remain in full force and effect." [Filing No. 288-2 at 1-4; Filing No. 288-3 at 1-2; Filing No. 288-4 at 1; Filing No. 288-5 at 1; Filing No. 288-6 at 1-2.] However, each of the addendums also provided that: "[i]n each instance in which the provisions of this Addendum contradict or are inconsistent with the provisions of the [MSA,] the provisions of this Addendum shall prevail and govern, and the contradicted, superseded, or inconsistent provisions shall be deemed amended accordingly." [Filing No. 288-2 at 1; Filing No. 288-3 at 1; Filing No. 288-4 at 1; Filing No. 288-5 at 1; Filing No. 288-6 at 1.]

The Second Addendum to the MSA amended the Forum Selection Clause as follows:

3. Section 42.0 Governing Laws, of Exhibit C, shall be removed and replaced in its entirety with the following:

**"42.0 GOVERNING LAWS & ATTORNEYS FEES**

The validity, performance and all matters relating to the interpretation and effect of [the MSA] and any amendment thereto shall be governed by the

---

[2] While Baseline failed to include the First Addendum to the MSA as part of its Motion, the Court finds the First Addendum unnecessary to resolve the Motion before it.

>laws of the State of Colorado, excluding its rules with respect to conflict of laws and all litigation arising under [the MSA] shall be in the state courts located in Boulder County, Colorado.  [Baseline] hereby irrevocably consents to the exclusive personal jurisdiction of the state courts located in Boulder County, Colorado and Contractor shall not institute[] any legal proceeding in any other court.  Registered or certified mail of any legal process shall constitute lawful and valid service of process in any such proceeding, suit or controversy. . . . "

[Filing No. 288-2 at 2-3.]

   **C.**  **Zayo Group's Claims Against Baseline**

  Zayo Group alleges that Baseline is obligated under the Indemnity Provision of the MSA to defend it from CSX Transportation's claims arising out of the MSA and to indemnify it for any damages recovered in this action, but Zayo Group alleges that Baseline has breached the terms of the MSA by failing to abide by these obligations.  [Filing No. 222 at 9; Filing No. 222 at 16-17.] Accordingly, Zayo Group seeks a judgment requiring Baseline to indemnify and defend it, and payment for "all losses, including court costs and attorney's fees, expert witness fees, and expenses, sustained by Zayo Group."  [Filing No. 222 at 16-17.]

  Baseline has filed a Motion to Dismiss, which seeks dismissal of each of Zayo Group's claims against it pursuant to Fed. R. Civ. P. 12(b)(3) and the doctrine of *forum non conveniens*. [Filing No. 286.]

**III.**
**DISCUSSION**

  Baseline argues that the MSA requires dismissal under both the Arbitration Provision and the Forum Selection Clause.  [Filing No. 287 at 2-4.]  Zayo Group responds that Baseline "admit[ted] venue is proper" in its Answer and that venue is proper in this Court.  [Filing No. 310.] The Court first addresses the impact of Baseline's Answer before turning to the parties' arguments related to each provision of the MSA below.

6

### A. The Impact of Baseline's Answer

Without further development, Zayo Group asserts that Baseline "admits venue is proper under 28 U.S.C. § 1391(b), but it now moves to dismiss [its] third-party complaint based upon improper venue." [Filing No. 310 at 2.] To the extent that Zayo Group intended to argue that Baseline's Answer constituted an admission, the Court finds that Zayo Group waived this argument by failing to develop it. "Seventh Circuit precedent is clear that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (internal quotations and citation omitted).

Even if Zayo Group had developed this argument, the Court finds that this argument is misplaced. Ordinarily, a party waives the defense of improper venue by failing to include it in a responsive pleading. Fed. R. Civ. P. 12(h). The Seventh Circuit has held that the waiver clause of Rule 12(h) applies to forum selection clauses. *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (stating that forum selection clauses represent "an *ex ante* determination by the parties of the place that will be the most convenient for any litigation that may arise, therefore, like other objections to venue, they can be waived or forfeited"). However, Baseline did not fail to include its venue-based dismissal arguments in its Answer. [Filing No. 263 at 28.] A careful reading of Baseline's Answer shows that it timely asserted both affirmative defenses that the present motion is premised upon. [Filing No. 263 at 28 ("Pursuant to the terms of the [MSA, Zayo Group's] claim against Baseline is subject to an agreement to arbitrate. Pursuant to the terms of the [MSA,] any litigation arising under the agreement is to be brought in the courts of Boulder County, Colorado.")] Accordingly, the Court finds that Baseline has not waived its ability to seek dismissal based on the terms of the MSA.

## B. The Arbitration Provision

Baseline argues that dismissal is appropriate because the MSA requires that any claims arising under the MSA be arbitrated in Denver, Colorado. [Filing No. 287 at 2.] It asserts that "[a] district court can issue an order compelling arbitration when the arbitration agreement before it calls for arbitration within the district," but when "the arbitration agreement calls for arbitration outside the confines of the district, the court should dismiss the claim pursuant to Rule 12(b)(3)." [Filing No. 287 at 3.]

Zayo Group responds that dismissal is inappropriate based on the Arbitration Provision because the MSA's Forum Selection Clause supersedes the MSA's Arbitration Provision. [Filing No. 310 at 3.] Specifically, Zayo Group argues that the parties "entered into two types of forum selection clauses—an earlier arbitration provision and a subsequent forum selection clause," but these provisions are "contradictory" and "inconsistent" with each other. [Filing No. 310 at 3-4.] When parties enter into an "all-inclusive" and "mandatory" forum selection clause after entering into an agreement containing an arbitration provision, Zayo Group argues that courts have held that the latter displaces the parties' agreement to arbitrate. [Filing No. 310 at 3-5.]

Baseline replies that "the addition of the [Forum Selection Clause] does not negate the [Arbitration Provision.]" [Filing No. 315 at 2.] Baseline argues that the cases relied upon by Zayo Group "have no bearing on this case" because they involved situations where "the parties first entered into an agreement which contained an arbitration provision and then later entered into separate agreements which contained forum selection clauses that were inconsistent with the arbitration agreements contained in the earlier contracts." [Filing No. 315 at 2.] Baseline argues that "the present case does not involve parties entering into separate agreements at different times"

8

but instead involves an amendment to the MSA, which is not in conflict with the other provisions of the MSA. [Filing No. 315 at 2.]

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party to an arbitration clause attempts to avoid arbitration by filing suit in a district court, the Court may compel arbitration in that district and stay the litigation. 9 U.S.C. § 3. However, the Court cannot compel arbitration in a different district, and when confronted with a motion seeking this relief, the Court must dismiss the complaint for improper venue under Rule 12(b)(3). 9 U.S.C. § 4; *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district."); *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court."). Because the Arbitration Provision requires that arbitration occur outside of this district, [Filing No. 288-1 at 36], the Court must determine if dismissal is appropriate under Rule 12(b)(3).

The Seventh Circuit has made clear that the Court must enforce an arbitration clause where: (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022). Here, the parties agree that at one point they were parties to a valid agreement to arbitrate but now dispute whether that agreement is still in effect. [*See* Filing No. 310 at 3-5.] To determine the validity of an arbitration agreement, the Court looks to the state law that governs the

9

contract, *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 367 (7th Cir. 1999), which in this case is Colorado, [Filing No. 288-2 at 2-3]. [3]

Under Colorado law, "arbitration is a favored method of dispute resolution." *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006.) When interpreting an agreement to arbitrate, Colorado courts "afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration." *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) ("[W]e must compel arbitration unless we can say 'with positive assurance' that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute."). However, Colorado law requires proof "'that the parties agreed upon all essential terms'" as evidenced by "the parties' 'conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement.'" *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (quoting *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986)).

As the parties agree, the MSA initially required that all claims between the parties "shall *be settled* by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." [Filing No. 288-1 at 36 (emphasis added).] However, the parties subsequently agreed that "all litigation arising under [the MSA] shall be in the state courts located in Boulder County, Colorado" and that Baseline "shall not institute[] any legal proceeding in any other court." [Filing No. 288-2 at 3.] The conflicting and contradictory nature of the Forum Selection Clause and the Arbitration Provision simply trigger the amendment clause of the Second

---

[3] Both parties cite to cases interpreting arbitration agreements governed by the laws of states other than Colorado. [*See* Filing No. 287 at 3; Filing No. 310 at 4; Filing No. 315 at 3.] These cases are immaterial to the issues before the Court and are unhelpful to the Court in resolving Baseline's Motion.

Addendum, which states: "[i]n each instance in which the provisions of [this amendment] contradict or are inconsistent with the provisions of the [MSA,] the provisions of this [amendment] shall prevail and govern, and the contradicted, superseded or inconsistent provision shall be deemed amended accordingly." [Filing No. 288-2 at 1.] Because the parties agreed that subsequent contradictory amendments to the MSA control, the Court finds the parties superseded the Arbitration Provision when they amended the Forum Selection Clause to require litigation in Boulder County, Colorado. Because the Forum Selection Clause supplanted the Arbitration Provision, there is no longer a valid agreement to arbitrate.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Because there is no longer an agreement to arbitrate, the Court has no authority to dismiss on that basis. Accordingly, Baseline's Motion is **DENIED** to the extent Baseline seeks dismissal pursuant to the Arbitration Provision.

### C. The Forum Selection Clause

Baseline further argues that the Forum Selection Clause requires that any litigation arising from the MSA must occur in the state courts in Boulder County, Colorado. [Filing No. 287 at 2.] Baseline argues that a "valid forum selection clause" should be given "controlling weight" under the doctrine of *forum non conveniens*. [Filing No. 287 at 3.] Because the MSA contained a forum selection clause, Baseline argues that Zayo Group's claims against it should be dismissed.

Zayo Group responds that "where a valid forum selection clause exists, courts consider public-interest factors" when considering a motion based upon *forum non conveniens*, including: "'(1) the relationship of the community to the issue of the litigation and the desirability of resolving

11

controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for an earlier trial.'" [Filing No. 310 at 5 (quoting *Mroch v. Sedgwick Claims Mgmt. Servs., Inc.*, 2014 WL 7005003, at *4 (N.D. Ill. Dec. 10, 2014)).] Zayo Group argues that public interest considerations favor litigation of this matter in this Court because a substantial part of its allegations relates to conduct that occurred in Indiana, property that is in Indiana and Illinois, and witnesses that are in Indiana and "beyond the subpoena power of Colorado courts." [Filing No. 310 at 5-6.]

Baseline replies that Zayo Group has not met the "heavy burden of demonstrating that the interests of justice entitle [Zayo Group] to ignore [the Forum Selection Clause] for which it bargained." [Filing No. 315 at 5.] Baseline argues that while the claims against Zayo Group are trespass claims, Zayo Group's claims against Baseline are claims that a Colorado company breached a contract governed by Colorado law. [Filing No. 315 at 4-5.] While there may be "some overlap in the litigation" if Zayo Group's claims were moved to Colorado, Baseline argues that "the central questions in the Colorado case would relate to whether or not Baseline engaged in conduct that makes it liable to Zayo" and its conduct "would not be an issue in the Indiana case." [Filing No. 315 at 5.] Finally, Baseline argues that Zayo Group's assertion that the majority of witnesses are in Indiana is "speculative" and that this concern is "a red herring" because the Colorado state courts have the ability to obtain the testimony of Indiana residents vis-à-vis the Indiana Uniform Depositions and Discovery Act, Ind. Code § 34-44.5-1, *et seq*. [Filing No. 315 at 5.] Accordingly, Baseline argues that Zayo Group's claim against it should be dismissed. [Filing No. 315 at 5.]

Contractual provisions governing where a suit may be brought, or "forum selection clauses," have become "nearly ubiquitous in all manner of contract." 14D Fed. Prac. & Proc. Juris.

§ 3803.1 (4th ed.). If a forum selection clause requires litigation in another federal court, the Court may order the case to be transferred to the appropriate federal venue. 28 U.S.C. § 1404(a); 28 U.S.C. 1406(a). However, the Supreme Court has explained that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "The common law doctrine of forum *non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 627–28 (7th Cir. 2008)).

Ordinarily, the doctrine of *forum non conveniens* requires that the Court consider factors related to both the public's interest as well as the private interests of the parties.[4] *Id.* at 63, n. 6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). However, when presented with a forum selection clause, the parties' private interests "drop out of the equation," *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018), and the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," *Atl. Marine Const.* 571 U.S. at 64.

The relevant public interest factors include: (1) "docket congestion and likely speed to trial in the transferor and potential transferee forums"; (2) "each court's relative familiarity with the relevant law"; (3) "the respective desirability of resolving controversies in each locale"; and (4)

---

[4] The Court notes that the parties do not dispute the validity of the Forum Selection Clause or the applicability of the Forum Selection Clause to the instant dispute. Therefore, the Court need not address these issues. *See IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006); *ACD Distrib., LLC v. Wizards of the Coast, LLC*, 2018 WL 4941787, at *1 (W.D. Wis. Oct. 12, 2018).

"the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (collecting cases).  "[B]ecause [the public interest] factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller,* 880 F.3d at 894 (cleaned up).  As the Seventh Circuit explained:

> [a] forum selection clause may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain.

*J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 651 (7th Cir. 2014).  Accordingly, the party acting in violation of a forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly favor" litigation in another forum.  *Atl. Marine Const. Co.,* 571 U.S. at 66.

The Court finds that Zayo Group has not met that burden.  The Forum Selection Clause requires that "all litigation arising under [the MSA] shall be in the state courts located in Boulder County, Colorado."  [Filing No. 288-2 at 2-3.]  This is mandatory language, and federal law is clear that "'where venue is specified with mandatory or obligatory language, the clause will be enforced.'" *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022) (quoting *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)).  Zayo Group points to three reasons that it contends compel the Court to disregard the plain language of the MSA: (1) Indiana's interest in its claims as compared to Colorado's interest; (2) judicial inefficiency and docket congestion; and (3) Zayo Group's assertion that "the majority of witnesses are in Indiana beyond the subpoena power of Colorado courts."  [Filing No. 310 at 5-6.]

14

With respect to the relative interests of the communities at issue, Zayo Group is correct that CSX Transportation's trespass allegations against it pertain to "property located throughout Indiana and Illinois, but not Colorado." However, it does not follow that Indiana's relationship to CSX Transportation's claims necessarily means that Indiana also has a more significant relationship to Zayo Group's claims – which involve a Colorado-based entity and concern a contract governed by Colorado law. [Filing No. 222 at 8.] Whether or not Baseline breached its obligations under the MSA will necessarily involve the interpretation of Colorado contract law, a task that the Colorado state courts are authoritatively equipped to resolve. In fact, based on the allegations in the Second Amended Third-Party Complaint, the only connection between Zayo Group's claims against Baseline and Indiana is that Baseline is an Indiana limited liability company. [Filing No. 263 at 3.] In light of Baseline's Indiana citizenship and its preference to litigate in Colorado, the Court does not find that Indiana has a greater relationship to the instant dispute than Colorado.

Turning to Zayo Group's arguments concerning judicial inefficiency, the Court acknowledges that there is some inevitable overlap between CSX Transportation's trespass claims and Zayo Group's breach of contract claims. However, the Court disagrees that these claims are so related as to require nullification of the parties' agreement under the MSA, nor does the Court find that honoring the terms of the MSA would "significantly delay resolution of this dispute." [Filing No. 310 at 6.] Whether or not Zayo Group damaged CSX Transportation's railroad equipment does not necessarily inform whether Baseline breached its obligations under the MSA. Similarly, Zayo Group's allegations against the other Third-Party Defendants equally have no bearing upon whether Baseline breached its obligations under the MSA. Moreover, the Court does not find that adjudicating Zayo Group's claims in Colorado will result in duplicative use of judicial

15

resources. While CSX Transportation's claims have been pending for almost two years and have involved a substantial amount of the Court's resources, Zayo Group's claims against Baseline have been pending for significantly less time and are at the beginning stages of adjudication. While it certainly would be more efficient to resolve the complete universe of this dispute in one forum, the Court must give Zayo Group the benefit of the bargain it struck when it negotiated the MSA with Baseline.

Finally, Zayo Group alleges that "the majority of witnesses are in Indiana beyond the subpoena power of Colorado courts." [Filing No. 310 at 6.] This argument is without merit. First, Zayo Group has not pointed to any potential witnesses that are in Indiana. But more fundamentally, Zayo Group's position is an incorrect statement of law. Both Indiana and Colorado have adopted iterations of the Uniform Interstate Depositions and Discovery Act, which permits litigants to take depositions and obtain discovery from individuals and entities located out of state. Ind. Code § 34-44.5-1-6 ("When a party submits a foreign subpoena to the clerk of a court in Indiana, the clerk, in accordance with the court's procedure, shall promptly issue a subpoena for service upon the person to which the foreign subpoena is directed"); Colo. Rev. Stat. § 13-90.5-103 (accord); *see also* Ind. R. Trial P. 28 ("A court of this state may order a person who is domiciled or is found within this state to give his testimony or statement or to produce documents or other things, allow inspections and copies and permit physical and mental examinations for use in a proceeding in a tribunal outside this state"). Given the clear avenue for Zayo Group to obtain discovery from Indiana witnesses in connection with a proceeding in Colorado state court, the Court does not find this to be a sufficient basis for overriding the parties' preselected forum.

In sum, the Court finds that the MSA's Forum Selection Clause superseded the Arbitration Provision and that the Forum Selection Clause requires Zayo Group to bring its third-party claims

against Baseline in the state courts of Boulder County, Colorado. Accordingly, Baseline's Motion to Dismiss, [Filing No. 286], is **GRANTED**, and Zayo Group's third-party claims against Baseline are **DISMISSED WITHOUT PREJUDICE**.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Baseline's Motion to Dismiss, [286], and Zayo Group's claims against Baseline are **DISMISSED WITHOUT PREJUDICE** for improper venue.[5] All other claims shall remain pending, and no partial final judgment will enter at this time.

Date: 8/24/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

---

[5]A dismissal based on *forum non conveniens* is ordinarily without prejudice. See *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576 (7th Cir. 2022) (Noting that dismissal without prejudice is appropriate when "the district court has finished with the case but is leaving open the possibility that the parties may pursue the dispute in another forum.")

17