UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | No. 1:21-cv-02859-JMS-MJD |
| | ) | |
| ZAYO GROUP, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |
| ZAYO GROUP, LLC, | ) | |
| | ) | |
| *Defendant/Third-Party Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| MILENIUM, INC.; CROSSROADS | ) | |
| COMMUNICATIONS SOLUTIONS, LLC; | ) | |
| BASELINE COMMUNICATIONS, NXC, | ) | |
| LLC; BSM GROUPS, LLC; JDH | ) | |
| CONTRACTING, INC.; OCM | ) | |
| ENGINEERING, LLC; ON POINT | ) | |
| CONSTRUCTION MANAGEMENT, INC.; | ) | |
| PLB ENGINEERING, LLC; SPECTRUM | ) | |
| ENGINEERING, LLC; TESCO | ) | |
| COMPANY, INC. | ) | |
| | ) | |
| *Third Party Defendants.* | ) | |

**DEFENDANT AND THIRD-PARTY PLAINTIFF ZAYO GROUP LLC'S BRIEF IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to F.R.C.P. 56, Defendant and Third-Party Plaintiff Zayo Group LLC ("Zayo") hereby moves for partial summary judgment on Plaintiff CSX Transportation Inc.'s ("CSXT") claims.[1]

## INTRODUCTION AND SUMMARY

Having dominated the transportation industry for much of American history, in the last few decades, railroads like Plaintiff CSXT have found a new source of revenue. Despite often only possessing a right of way over long strips of land across the country, CSXT "licenses" its rail corridor to utilities, demanding fees (often in the tens or hundreds of thousands of dollars) for what it terms "Facility Encroachment Agreements" that allow utility companies to install facilities alongside or crossing its tracks. CSXT makes these demands without any investigation to the nature of the title it may possess at a given location, assuming that if it runs its tracks nearby, it has the right to be paid.

This diversity case arises from Zayo, a telecommunications company that provides network connectivity to a variety of industries, seeking to install fiber optic facilities or cable largely underground in Indiana and Illinois. When working on a new dark fiber route, Zayo sought permission from CSXT per its procedures as to a location in Indiana referred to herein as "Jackson St." At Jackson St., Zayo sought to install 1,300 lineal feet of fiber paralleling and then crossing CSXT's railroad tracks, within the boundaries of what Zayo understood to be (based on design plans from its engineer) an adjoining county road right of way. When CSXT demanded a $428,000 license fee for the installation, Zayo responded that it did not believe CSXT was entitled to any fee, and this litigation ensued.

---

[1] Zayo conferred with all parties, as required by the Court's practice standards. Several of the Third-Party Defendants indicated they would be filing motions as to Zayo's indemnity claims. Zayo will follow the four brief structure as to these Motions.

After initially suing based on Jackson St. in Indiana and a second location in Illinois where contractors drilled off course and damaged CSXT's equipment (referred to herein as "Montrose"), CSXT pursued in discovery any and all fiber routes near its rail corridor in these states. CSXT obtained every location within 150 feet of its purported rail corridor where Zayo owned or operated fiber, regardless of whether Zayo had installed the fiber in question, acquired the fiber from another telecommunications company, or merely leased it from a third party. CSXT then brought claims as to each and every location on the list—more than four hundred locations in total. (*See* Filing No. 210 at 57 (Third Amended Complaint) Exhibit A.)[2]

Related to these locations, CSXT brought the following claims:

- Counts I (Criminal Trespass), II (Railroad Mischief), III (Deception), and IV (Theft or Criminal Conversion) as to locations in Indiana.

- Count V: Civil Trespass to Land as to Indiana and Illinois.

- Count VI: Civil Trespass to CSXT Components as to Indiana and Illinois.

- Count VII: Unjust Enrichment as to Indiana and Illinois.

- Count VIII: Rent as to Indiana and Illinois.

- Count IX: Declaratory Judgment as to Zayo's incursions generally.

- Count X: Declaratory Judgment as the Jackson St. location in Indiana.

As damages, CSXT seeks a variety of relief, including that Zayo damaged its railroad equipment (referred to as "CSXT Components") at each of these locations due to the alleged installations not following its practices and procedures. But CSXT's primary theory as to its

---

[2] CSXT's Third Amended Complaint Exhibit A refers to CSX PIN numbers (with a five digit followed by four digit format), which identify sections of land as to which CSXT purports to have property interests. Many of these locations have been removed from the lawsuit by agreement of the parties, but the majority remain.

trespass claims is that it may disgorge the entirety of Zayo's profits as to any fiber route that runs through a single alleged incursion. CSXT seeks Zayo's entire profits on routes that run hundreds of miles and often into states outside Indiana or Illinois, based in many cases on a single site or a few hundred feet of fiber allegedly running through its corridor.

As a result of its sweeping approach, CSXT's claims are the pinnacle overreach and are ripe for narrowing. The Court should enter partial summary judgment as follows. First, the Court should enter summary judgment as to the locations in Indiana and Illinois where there is no dispute that CSXT possesses mere easements. Indiana law does not allow trespass to an easement, and there is no dispute of fact that Zayo has not rendered CSXT's Illinois easements beyond the Montrose location unusable, as Illinois law requires. Second, the Court should enter summary judgment as to locations in Indiana where Zayo's fiber optic cable runs through a public road right of way, as such installations are authorized under Indiana law. Third, the Court should grant summary judgment as to certain locations as time-barred under the applicable statute of limitations. Fourth, the Court should grant summary judgment on all claims where Zayo's installations are authorized by contract. Fifth, the Court should grant summary judgment as to both CSXT's Railroad Mischief claim and its Deception claim, as there is no dispute of fact it cannot meet the statutory requirements of these criminal claims. Sixth, and finally, neither Indiana nor Illinois law allow CSXT to disgorge Zayo's profits from its fiber installations, and the Court should hold that CSXT is barred as a matter of law from recovering this measure of damages.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### Zayo's Business and Fiber Installations

1.     Zayo is a registered public utility company in Indiana and Illinois. [Filing No. 420-1 at 3, ¶ 5.]

2.      As part of its business, Zayo provides telecommunications services. [Filing No. 420-1 at 3, ¶ 8.]

3.      Zayo was formed in 2007 and has since acquired numerous telecommunications companies (collectively "Zayo-acquired entities"). [Filing No. 420-1 at 3, ¶ 6.]

4.      Zayo and Zayo-acquired entities engaged contractors to installed fiber optic cables and other telecommunications equipment or appurtenances throughout Indiana and Illinois. [Filing No. 420-1 at 3, ¶ 9]; [Filing No. 417-2 at 3, ¶ 7.]

5.      Installations that occurred before 2007 were performed by contractors working on behalf of Zayo-acquired entities. [Filing No. 420-1 at 3, ¶ 6.]

6.      Of the locations appearing on CSXT's incursion list, 144 Illinois installations were installed by contractors working on behalf of Zayo or Zayo-Acquired Entities before 2016. [Filing No. 420-1 at 5, ¶ 23]; [Filing No. 420-1 at 10-27 (Zayo identified alleged incursions with Installation Dates before November 2016 and highlighted those in yellow and green; however, the count of 144 sites only applies to those in Illinois).]

7.      For example, one location in Illinois, identified as CSX PIN 17031 0055 was installed in September 2000 and completed at the direction of a company called Metromedia, which no longer existed as of 2003, making it necessarily installed before 2003. [Filing No. 420-1 at 4, ¶¶ 19-22]; [Filing No. 420-1 at 10-27]; [Filing No. 424-1 at 10.]

8.      Of the locations appearing on CSXT's incursion list, 180 Indiana installations were installed by contractors working on behalf of Zayo or Zayo-Acquired Entities before 2015. [Filing No. 420-1 at 4, ¶ 18]; [Filing No. 420-1 at 10-27] (Zayo identified alleged incursions with Installation Dates before November 2015 and highlighted those in yellow; however, the count of 180 sites are only the locations in Indiana).]

9.      For example, at one location in Indiana identified as CSX PINs 18097 0169 & 18097 0168, Zayo's predecessor directed contractors to install the fiber in question in November 2012, before 2015. [Filing No. 420-1 at 5, ¶¶ 24-26]; [Filing No. 424-1 at 12.]

10.     Of the locations appearing on CSXT's incursion list, 255 Indiana installations were installed by contractors working on behalf of Zayo or Zayo-Acquired Entities before 2019 [Filing No. 420-1 at 5, ¶ 27]; [Filing No. 420-1 at 10-27] (Zayo identified alleged incursions with Installation Dates before November 2019 and highlighted those in yellow, green, and blue; however, the count of 255 sites are only the locations in Indiana).]

11.     For instance, at CSX PIN 18133 0025, Zayo's contractors completed the installation in 2017. [Filing No. 420-1 at 5, ¶¶ 28-30]; [Filing No. 424-1 at 14-32.]

12.     Where Zayo operates an aerial installation, it consists of attaching the fiber line between two utility poles. Typically, contractors engaged by Zayo or a Zayo-acquired entity string new cable between the poles in order to complete the installation, but in some cases, they would overlash cable on a pre-existing cable attached to the pole. [Filing No. 417-2 at 3, ¶ 8.]

13.     Aerial installations are visible from the ground and are typically tagged at the time of installation with information identifying the telecommunications company that owns the fiber. [Filing No. 417-2 at 3, ¶ 9.]

14.     In instances where Zayo owns underground fiber, it is generally installed at a depth of at least thirty to thirty-six inches. Zayo-owned underground fiber, however, is often installed deeper. [Filing No. 417-2 at 3, ¶ 9.]

15.     Zayo's underground installations consist of fiber and/or conduit installed beneath the surface. Those underground installations are marked above-ground using cable markers, which are installed approximately every 1000 to 2000 feet. [Filing No. 417-2 at 4, ¶ 11.]

16.     The cable markers are generally installed at the time of the installation of the fiber, and labeled with identifying information about the telecommunications company that owned or installed the fiber. [Filing No. 417-2 at 4, ¶ 12.]

17.     In addition to the cable markers, Zayo's underground fiber installations also require vaults to be placed that are generally above grade and visible from the ground. These vaults typically have a placard on their lid identifying the vault as part of the Zayo system and are installed at the time of the underground fiber installation. [Filing No. 417-2 at 4, ¶ 13.]

18.     Installation of conduit and vault systems for fiber optic systems includes a number of steps that tend to be visible to the public and occur over a period of time that can span a few days to a few weeks for a given section of route. [Filing No. 417-2 at 4, ¶ 14.]

**CSXT's Easement Interests**

19.     One of CSXT's trespass claims pertains to a location near 2000 S. Jackson Street, Greencastle, Indiana 46135 (the "Jackson Street Location"). [Doc. 210 § IV.]

20.     CSXT alleges that it "owns and controls the Jackson Street CSXT Railroad Property, upon which CSXT conducts federally regulated rail transportation activities." [Doc. 210 at ¶ 74.]

21.     Zayo's fiber optic cable at the Jackson Street Location was installed underground. [Filing No. 417-3 at 6 (Melody Potter Dep. at 36:10-12).]

22.     At Jackson St., CSX PIN 18133 0021, CSXT's property interest is a "Rail Corridor Easement." [Filing No. at 424-2 at 14-15, 64 (referencing CSX's discovery response wherein it identifies its "CSX Title" as to each location, searchable by the CSX PIN or "Alternate Identifier"); [Filing No. 424-3 at 8 (CSXT, B. Harper Rule 30(b)(6) Dep., at 153:21-154:2).]

23.     CSXT's easement at Jackson St. derives from the Charter of New Albany, which authorized railroads to create rail corridor lines. [Filing No. 424-3 at 6, 9, 11 (CSXT, B. Harper Rule 30(b)(6) Dep., at 129:1-23; 154:3-9; 162:16-163:18)]; *see also* [Filing No. 417-6 at 42] (consisting of CSX discovery responses that reference a document appendix, with the bates labeled Charter cited therein.)

24.     CSXT's easement at Jackson St. also derives from the 1852 Act of the Indiana Legislature, which granted railroads the right to eminent domain, the right to purchase, the right to issue stock, and various other sundry powers. [Filing No. 424-3 at 6, 11 (CSXT, B. Harper Rule 30(b)(6) Dep. at 129:17-23, 163:19-21)]; [Filing No. 417-6 at 45-72.]

25.     CSXT represents that The Charter of New Albany is incorporated into the 1852 Act of the Indiana Legislature (collectively, "Legislative Acts"). [Filing No. 424-3 at 6 (CSXT, B. Harper Rule 30(b)(6) Dep. at p. 129:17-23).]

26.     The Legislative Acts, in part, provided railroads with easements at locations in Indiana. [*Id.* at p. 128:15-130:9]; [Filing No. 417-6 at 41-72.]

27.     CSXT's property interests at twenty alleged incursion locations derive from the 1852 Act of the Indiana Legislature and, at all these locations, CSXT admits its title is a "Rail Corridor Easement." [Filing No. 417-7 at 3-24 (consisting of a production index that references documents of which CSX's property interests for alleged incursion locations derive from.)]

28.     At 131 total locations in Indiana, CSXT has brought claims where the property interests as to which it claims trespass are admittedly "Rail Corridor Easements." [Filing No. 424-2 (consisting of CSX's discovery responses wherein its purported property interests can be found in Attachment A and the location of the parcel can be found in Attachment B and D, which are excerpted.)]

7

29.     At 31 total locations in Illinois, CSXT has brought claims where the property interests as to which it claims trespass are admittedly "Rail Corridor Easements." [Filing No. 424-2 (consisting of CSX's discovery responses wherein its purported property interests can be found in Attachment A and the location of the parcel can be found in Attachment B and D, which are excerpted.)]

**Zayo's Installations in Public Road Rights of Way**

30.     CSXT alleges trespass to its parcel identified as CSXT PIN 18051 0003. (Doc. 210 ¶¶ 240-252; ¶¶ 285-299, ¶ 180; at Exhibit A.)

31.     At this location, Zayo's underground fiber installation is within the boundaries of a public road right of way. [Filing No. 420-1 at 7, ¶ 35]; [Filing No. 420-1 at 113.]

**Zayo's Installations Authorized by Contract**

32.     At sixty-nine sites where CSXT alleges trespass, CSXT admitted in CSXT Agreement No. CSX736038 that it possessed a leasehold interest as to the tracks at these locations, and that Zayo's predecessor, FiberLink LLC, had executed an agreement with Hawkeye Land Company covering these locations, and was authorized to install fiber at these locations. [Filing No. 420-1 at 5-6, ¶¶ 31-32.]

33.     The CSXT alleged sites authorized by CSXT Agreement No. CSX736038 are: 17031 0247; 17031 0172; 17197 0002; 17197 0028; 17197 0028; 17197 0032; 17063 0001; 17063 0011; 17063 0014; 17099 0035; 17099 0001; 17099 0017; 17099 0022; 17099 0002; 17099 0007; 17099 0073; 17031 0247; 17031 0172; 17011 0001; 17011 0002; 17011 0003; 17011 0004; 17011 0005; 17011 0006; 17011 0007; 17011 0009; 17063 0005; 17063 0012; 17063 0013; 17063 0016; 17063 0017; 17099 0009; 17099 0014; 17099 0016; 17099 0019; 17099 0002; 17099 0021; 17099 0023; 17099 0024; 17099 0025; 17099 0031; 17099 0036; 17099 0046; 17099 0048; 17099 0050;

17099 0055; 17099 0046; 17099 0057; 17099 0058; 17099 0059; 17099 0060; 17099 0061; 17099 0064; 17099 0066; 17099 0069; 17099 0070; 17099 0074; 17099 0076; 17099 0077; 17099 0078; 17099 0080; 17099 0081; 17099 0082; 17099 0083; 17099 0084; 17099 0085; 17099 0086; 17099 0090; and 17197 0007. [Filing No. 420-1 at 6-7, ¶¶ 33.]

34.    At five locations where CSXT brings claims, Zayo's installations are within another company's conduit, which itself is authorized by agreement with another railroad to be in that railroad's corridor. [Filing No. 420-2 at 3, ¶¶ 4-6.]

35.    The construction drawings for the sites at issue show that Zayo's fiber is within this company's conduit, and within the other railroad's corridor. [Filing No. 420-2 at 3, ¶ 6]; [Filing No. 424-6 at 18-23.]

36.    The CSXT alleged sites where Zayo's fiber is authorized by contract to be in another company's conduit are: 17031 0084; 18089 0056; 18089 0060; 18091 0081; 18127 0020. [Filing No. 420-2 at 3, ¶ 6.]

**CSX's Monitoring of Its Network**

37.    CSXT performs inspections and tests on its equipment on a monthly, quarterly, annual, biennial, and decennial basis. [Filing No. 424-4 at 16 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 281:1-8)]; [Filing No. 424-5 at 8 (S. Ball Dep. at 48:11-49:7).]

38.    Pursuant to federal regulations, CSXT is required to perform these "inspections and tests of its warning and signal systems and various components on a monthly, quarterly, annual, or other basis. *See generally*, 49 C.F.R. parts 234 and 236." [Filing No. 417-10 at 13.]

39.    When performing monthly inspections, CSXT's maintainers physically visit the locations where CSXT operates its tracks, and in particular its grade crossings. [Filing No. 424-5 at 7, 8 (S. Ball Dep. at p. 42:15-43:4; p. 46:22-23; p. 48:9-22; p. 49:24-50:1).]

40. CSXT's communications and signals directors receive and review daily reports regarding the status of CSXT's operations and any incidents. [Filing No. 424-5 at 11 (S. Ball Dep. at p. 128:12-22; p. 130:2-7).]

41. When a train is stopped because of a malfunction, CSXT's communications and signals directors are notified immediately. [Filing No. 424-5 (S. Ball Dep. at p. 39: 5-10.)]

42. In addition to its regular inspections required by Federal Law, CSXT has completed other inspections on and around its rail corridor by contracting with an entity called OSPRE. [Filing No. 424-4 at 13 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 218:9-14).]

43. Those inspections consisted of a visual observation to identify the location of telecommunications equipment. [Filing No. 424-4 at 13, 15 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 220:12- 221:7; 225:5-8; 226:16-20).]

44. Based on the above-ground infrastructure, that was visible without any special equipment, as to locations at issue in this case, the OSPRE inspector was able to determine whether fiber was installed in connection with the above-ground infrastructure. [Filing No. 424-4 at 13 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 220:12-23).]

**CSXT's Claimed False Statements**

45. CSXT brings a claim for deception in Count III, alleging that Zayo made written false statements to CSXT that caused it damage. (Doc. 210, at ¶¶ 263, 269.)

46. In discovery, CSXT identified the particular false statements upon which this claim is based, all of which relate to Zayo's statements made in reference to Zayo's application for a Facility Encroachment Agreement at Jackson St.:

   a. "within the public rights-of way limits of Jackson Street," "Zayo's work will be in the public rights-of-way, which we understand intersects with your railroad corridor at this location." "Zayo's installation will be located entirely within the public rights-of-way."

b. "within the public roadway limits of Jackson Street in Greencastle, Putnam County, Indiana" "Is the facility located in a roadway?: Y"
c. "Zayo's deployment will be wholly within the public road right-of-way."
d. "We are not on RR property on either side and would only be crossing in the one section."
e. "Unfortunately I came into this project when it was already in progress-so some things happened before my time."
f. "I've confirmed with our local and engineering teams that at this location, Zayo's deployment will be wholly within the public road right-of-way (ROW), including both when the public road slightly parallels the tracks (at an angle) and when crossing underneath the railroad tracks that ultimately intersect with that public road."
g. "deploying our facilities wholly within the public road right-of-way," "within the public road right-of-way of Jackson Street"
h. "as you will see after viewing these we are clearly in the road row…"
i. "Again, Zayo's deployment is wholly within the public road right-of-way…"
j. "I'm reaching out regarding a handful of CSX crossings where we are deploying in the public rights-of-way…CSX916908…Our local team is at the point of needing to deploy quickly."
k. "Unfortunately, we're at a critical juncture of needing to move forward pretty soon. As such, if we don't hear back from y'all in the next few days, we'll just proceed via the deployment notice route."

[Filing No. 417-12 at 14-15][3]; [Filing No. 424-4 at 19-21 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 311:8-319:1).]

47.     CSXT alleges that the parallel or longitudinal installation at Jackson St. was made without a Facility Encroachment Agreement. (Doc. 210 at ¶¶ 99, 110-111.)

48.     Moreover, CSXT's 30(b)(6) witness testified that whether an installation is in a public right-of-way is irrelevant to CSXT's engineering review and permitting processes when evaluating a proposed fiber installation. [Filing No. 424-4 at 9 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 68:12-69:2).]

49.     CSXT'S Director of Real Estate for Corridor Services also testified that CSXT does not investigate the nature of its own title when utilities propose installations [Filing No. 424-7 at

---

[3] CSXT later withdrew some of the statements it originally identified in Filing No. 417-12 at 14-15, indicating that it no longer asserted that they were false. The list identified in this Paragraph 46 of the Statement of Facts does not reflect those subsequently withdrawn statements.

5 (C. Adkins Dep. at 52:9-14)], that CSXT does not request information about whether a utility's proposed longitudinal installation is within or outside of a public right of way (*Id.* at 8, 67:23-68:7), and that the location and scope of any public right -of-way is irrelevant to CSXT when considering an installation parallel to its corridor (*Id.* at 10, 141:15-22; *Id.* at 11, 143:14-145:11).

**CSXT's Claimed Damages**

50.     When asked in discovery to state its factual basis for any alleged damage at any of the alleged incursion sites, CSXT responded by defining damage to be "to lessen the soundness, goodness or value of; to impair or reduce the usefulness or value of property," and stated under oath that damage to its rails and roadbed occurs where the unauthorized fiber installation was less than "appx. 15 feet deep," when crossing the rail or within "appx. 25 feet of the rail," when paralleling it. [Filing No. 417-10 at 10]. As to switches, CSXT responded that damage "occurs if the unauthorized fiber optic installation was within 25 feet of the front side of the switch," or "between the back side of the switch and within 15 feet past the last long timber." (*Id.* at 11.) As to bridges, for subgrade installations damage "occurs if the unauthorized fiber optic installation was within 45 feet of the bridge structure," or "within 1,000 feet of the bridge and or within 50 feet of the top of the rail" for aerial installations. (*Id.* at 11.) As to culverts, CSXT stated that damage occurs if the unauthorized installation is within a "100 foot radius" of the culvert, and for railroad signal systems, train control systems, centralized dispatching systems, highway railroad grade crossing warning signals, damage "occurs if the installation is anywhere upon, within, or around the system. . . ." (*Id.* at 11.)

51.     CSXT's Rule 30(b)(6) witness was unable to identify any location besides Montrose, IL where trains were delayed or unable to operate due to Zayo's alleged installations. [Filing No. 424-4 at 5, 6 (CSXT, Alex Saar Rule 30(b)(6) Dep. at 24:15-25:13; 26:22-28:1).]

52.     With the exception of one site outside of Montrose, IL, CSXT has not identified any site where CSXT equipment has actually malfunctioned, been defaced, or been physically damaged. (*Id.* at 16, referring to "Montrose Destruction," as defined in CSX's various discovery requests [Filing No. 417-14 at 9, ¶ 25.][4]

53.     A CSXT Communications & Signals Director, Shawn Ball, testified that in his work, he understood damage to mean "something that to [him] requires assistance or repair of some sort to be functional as intended." [Filing No. 424-5 at 7 (S. Ball Dep. at p. 42:1-6).]  Mr. Ball also testified that he was not aware of any damage to any of CSXT's communications and signals systems caused by the existence of fiber near its corridors, aside from the Montrose Destruction. [Filing No. 424-5 at 14 (S. Ball Dep. at p. 175:15-20).]

54.     CSXT verified under oath that "[u]pon a reasonable inquiry, CSXT does not presently believe that the above-referenced damages to CSXT Components have yet caused any reported accidents or injuries to CSXT personnel or third parties, except for the Montrose Destruction." [Filing No. 417-10 at 17.]

55.     CSXT's complaint alleges that the "hazards posed to CSXT's vital equipment and facilities *could* jeopardize the safety of rail operations and the integrity of CSXT's track structure, which *could* lead to catastrophic injuries to CSXT's equipment, personnel or the public." (Doc. 210 at ¶ 104 (emphasis added)).

56.     CSXT further alleges that "Zayo's unauthorized and unsupervised activities also jeopardize the safety of rail operations and the integrity of CSXT's track structure, which *could*

---

[4] CSX defined "Montrose Destruction" to mean ""Montrose Installation" or "Montrose Destruction" refers to any Installation on, within, over, under, or through CSXT Property or on, within, over, under, through, or to CSXT Components situated at, around, or near the intersection of National Road and County Road 2100 East in Montrose/Teutopolis, Illinois. The approximate GPS coordinates of this location are: 39.14885746009305, -88.41794270280191."

lead to injuries to CSXT's equipment, personnel or the public." (Doc. 210 at ¶ 224 (emphasis added)).

57.     CSXT claims a variety of damages in its Third Amended Complaint, among them that Zayo "make restitution and disgorge its unjust gain." (Doc. 210 at ¶ 53, § Prayer for Relief (f).)

58.     CSXT alleges that Zayo's unauthorized installations are part of a "scheme to profit from reselling or advertising for resale" CSXT's property to create both "a Zayo Indiana to Saint Louis fiber optic route and a Zayo unified Indiana and Illinois fiber optic network." (Doc. 210 at ¶ 18; ¶ 59) (alleging that the unauthorized installations "were required, were connected to, and/or materially supported the Zayo Indianapolis to Saint Louis 'dark fiber' route, which, in turn, were required, were connected to, and/or materially supported the Zayo unified Indiana and Illinois fiber optic network")

59.     CSXT's Fourth Amended Statement of Damages states that CSXT is seeking compensatory damages including the "[v]alue of converted, resold, misappropriated, burdened, destroyed, trespassed, confiscated, damaged, etc. property" as calculated using the revenues generated by Zayo for the dark fiber routes through which the alleged incursions pass. [Filing No. 417-15 at 3.] Alternatively, CSXT seeks this same amount as disgorgement for Zayo's alleged unjust enrichment, as well as "the difference in revenue/profit/value between Zayo's fiber optic network in Indiana and Illinois as it exists today (and into the future) compared to a 'but for' world" without Zayo's alleged incursions. (*Id.*)

### STANDARD OF REVIEW

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." F.R.C.P. 56(a).

Once a moving party meets its burden, the burden shifts to the nonmoving party "to come forward with specific facts showing that there is a genuine issue for trial." S*pierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A genuine dispute as to material fact only exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

## ARGUMENT

### I.   CSXT's Trespass and Rent Claims Fail as a Matter of Indiana and Illinois Law Where it Possesses only an Easement

On November 1, 2022, CSXT amended its complaint to allege trespass to over 400 locations throughout Indiana and Illinois. Nine months later, CSXT supplemented its response to Zayo's First Interrogatory by identifying the nature of its property interests at each of those locations. CSXT has now confirmed that its property interests as to many of those locations are insufficient as a matter of law to maintain its trespass claims—criminal or otherwise.

### A.   *Indiana Law Does not Allow CSXT to Maintain a Trespass Claim as to its Easements*

In its Count IV, CSXT alleges civil trespass as to all locations in Indiana, while its Count I alleges criminal trespass as to locations in Indiana. Both claims fail where CSXT does not possess the property in fee simple, but has admitted its only property interest is an easement.

#### i.   The Court Should Grant Summary Judgment as to CSXT's Counts IV and VIII for the Easement Locations in Indiana

In Indiana, "[t]o make out a cause of action for trespass . . . the [plaintiff] must prove that it *owns* the land in question and the [defendant's] entry upon it was unauthorized." *Reed v. Reid*, 980 N.E.2d 277, 294 (Ind. 2012) (quotation omitted) (emphasis added). It is black letter law in Indiana that an action for trespass "cannot be maintained for an invasion of a right of way or

easement." *State ex rel. Green v. Gibson Circuit Court*, 246 Ind. 446, 449 (Ind. 1965) (collecting authorities); *Duke Energy of Ind., LLC v. City of Franklin*, 69 N.E. 3d 471, 482-483 (Ind. Ct. App. 2016) ("We are also mindful of the traditional rule that an action for trespass cannot be maintained for an invasion of a right of way or easement.") (quoting *Ind. Mich. Power Co. v. Runge*, 717 N.E. 2D 216, 227 (Ind. Ct. App. 1999). "This rule is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land." *Id.* (quotation omitted).

Here, CSXT has admitted that it cannot prove the first element of its Indiana civil trespass claim where it does not in fact own the land but possesses only a right of way easement running over it. As to 131 locations in Indiana, including the Jackson St. location that spurred this litigation, CSXT has admitted that it possesses only an easement. (Statement of Material Undisputed Facts ("SUF") ¶¶ 22, 29.) At these locations, CSXT does not have standing to bring a trespass claim, and cannot meet the first element of its civil trespass claim, that it owns the property in question. *See Reed*, 980 N.E.2d at 294; *State ex rel. Green*, 246 Ind. at 449. Summary judgment should enter as to these locations.

That CSXT purports to possess a "rail corridor" easement does not change this outcome. (SUF ¶ 29.) Even where CSXT has appropriated the land in question as a railroad easement, as with Jackson St. and similar locations (SUF ¶¶ 23-27), the Indiana Supreme Court has held that "the company's right of possession to the surface of the right of way is practically exclusive," but that exclusivity does not extend beyond the surface where its railroad tracks run, let alone to the subsurface, where Zayo's underground installations are located. *See Cleveland, C., C. & S. L. R. Co. v. Smith*, 97 N.E. 164 (Ind. 1912) (holding that underlying fee owner whose land was burdened by railroad easement could divert water "through pipes onto his land outside the right of way,

16

without any practical interference with the [railroad]'s exclusive possession of the appropriated strip" above the pipes). As one authority cited with approval by the Indiana Court of Appeals explained: "Easements and profits may authorize the exclusive use of portions of the servient estate . . . but they are still considered *nonpossessory interests* if the transferor is not excluded from the entire parcel and retains the right to make uses that would not interfere with the easement or profit." Restatement Third of Property: Servitudes, § 1.2 cmt. d (cited with approval in *Crowe v. Drenter*, No. 22A-CT-2815, 2023 Ind. App. LEXIS 215, 2023 WL 4715178, at n.3 (Ind. Ct. App. July 25, 2023)); *see also Brandt Trust v. United States*, 572 U.S. 93, 105 (2014) (reaffirming holding from *Great Northern R. Co. v. United States*, 315 U.S. 262, n.4 (1942) that railroad rights of way created by Federal law granted easements that did not include mineral rights, and explaining that easements do "not give the grantee [railroad] any possessory interest in the land"). The use of CSXT's easements for railroad purposes does not alter the fundamental rule in Indiana that a trespass claim is not available here.

ii.   The Court Should Grant Summary Judgment as to CSXT's Count I for the Easement Locations in Indiana

CSXT's inability to prove its Indiana civil trespass claims as to its easement interests is similarly fatal to Count I, its claim for criminal trespass pursuant to Ind. Code § 35-43-2-2. To prove criminal trespass in Indiana, a claimant must show that the defendant "without having a contractual interest in the property, knowingly, or intentionally entered real property belonging to [the owner] after having been denied entry by [the owner] or its agent." *Glispie v. State*, 955 N.E.2d 819, 821 (Ind. App. 2011). Again, CSXT cannot show that it owns the properties in question where it maintains only a right of way, and therefore its claim for criminal trespass also fails. *See Jones v. Von Hollow Ass'n, Inc.*, 103 N.E.3d 667, 674 (Ind. Ct. App. 2018) (affirming trial court's

conclusion that a criminal trespass claim was unsupported and clearly erroneous where neither the plaintiff nor defendant actually owned the land in question).

### B. CSXT Cannot Prove its Claim for Civil Trespass or Rent as to the Illinois Easement Locations

In Illinois, a plaintiff alleging trespass must show that a defendant enters onto a plaintiff's land without permission, invitation, or other right. *Benno v. Central Lake County Joint Action Water Agency*, 609 N.E.2d 1056 (Ill. Ct. App. 1993). Unlike in Indiana, trespass claims to easements are not categorically disallowed; however, the alleged trespasser's use of the land must materially interfere with "the right of the owner of the dominant estate to reasonable use of the easement." *Chi. Title Land Trust Co. v. JS II, LLC*, 977 N.E.2d 198, 218 (Ill. Ct. App. 2012). In *Chicago Title*, the trial court awarded nominal damages for trespass to a prescriptive easement where the defendant servient estate owner rendered plaintiff's "driveway . . . impassible for a period of time," and the Court of Appeals affirmed. *Id.*

Here, there is no dispute of material fact that the fiber installations in question have not interfered with CSXT's reasonable use of its rail lines or rendered its railway impassible. CSXT's Rule 30(b)(6) witness has admitted that, with the exception of one location in Montrose, IL, Zayo's installations have not interrupted its operations, and that trains continue to run at all of the locations at issue. (SUF ¶ 51.) In response to Zayo's third set of interrogatories, CSXT verified under oath that "[u]pon a reasonable inquiry, CSXT does not presently believe that the above-referenced damages to CSXT Components have yet caused any reported accidents or injuries to CSXT personnel or third parties, except for the Montrose Destruction." (SUF ¶ 54.) CSXT's signals director similarly confirmed that there have been no disruptions to CSXT's normal operations due to Zayo's fiber installations. (SUF ¶ 53.)

There is no dispute of material fact that CSXT's use of its easements in Illinois has continued unhindered, with the exception of the single location at Montrose. Unlike the Plaintiff in *Chicago Title Land Trust Co.*, CSXT cannot show that no longer has reasonable use of its easements. *See* 977 N.E.2d at 218. As a result, the Court should enter summary judgment as to all of CSXT's easement locations in Illinois, save the Montrose location. *See id.*

## II. CSXT's Claims for Trespass and Rent in Indiana Fail as a Matter of Law Where Zayo's Fiber is Installed in a Public Road Right of Way

Many of CSXT's claimed incursions in Indiana also fail at the second element of CSXT's civil trespass claim, namely that the defendant's "entry upon [the plaintiff's land] was unauthorized." *See Reed*, 980 N.E.2d at 294. To the contrary, Indiana law allows public utilities, like Zayo (SUF ¶ 1), to "construct, operate, and maintain" their "facilities . . . upon, along, under, and across any of the public roads, highways, and waters" in the state. Ind. Code Ann. § 8-20-1-28 (2021). It is undisputed that, as to CSX PIN 18051 0003 in Indiana, Zayo installed its fiber optic facilities within the boundaries of a public road right of way. (SUF ¶¶ 30-31.) As a result, this installation, and others like it, were authorized by statute.

In *Louisville & Ind. R.R. Co. v. Ind. Gas Co.*, 829 N.E.2d 7 (Ind. 2005), the Indiana Supreme Court affirmed this authorization in the precise scenario presented here—where a railroad right of way overlaps with a county road. There, the railroad company brought an action for trespass, rent, quantum meruit, and quantum valebant, alleging that the gas company improperly installed its equipment across the rail corridor. *Id.* at 8-9. The court rejected the railroad's claims and concluded that the gas company was authorized to install its equipment beneath the public right of way, and therefore was not liable for trespass. *Id.* at 12. It also held that the gas company did not owe rent to the railroad. *Id.* In so holding, it declined to determine whether the railroad owned the property in question in fee simple or as an easement, as the nature of the railroad's

property interest was irrelevant to its holding that the gas company was authorized by law to enter onto the county right-of-way to install its pipe.

Here too, Zayo has made installations in public rights of way in Indiana and was authorized to do so by Ind. Code Ann. § 8-20-1-28. There is no dispute that the installation at CSX PIN 18051 0003 is within the boundaries of the pavement of a public road right of way. (SUF ¶¶ 30-31.) CSXT therefore cannot show an essential element of trespass—that Zayo entered the property of another *without authorization*. *See, e.g.*, *Clark v. Thessalonica, Inc.*, 2023 Ind. App. Unpub. LEXIS 76, *8 (Ind. Ct. App. Jan. 31, 2023) (granting summary judgment where alleged trespasser had a right to enter upon the land). As a result, the Court should enter judgment as to CSXT's claims for civil trespass, criminal trespass, and rent at this location.

## III.    CSXT's Claims are Barred by Applicable Statutes of Limitation

Although Zayo disputes that CSXT can prove its claims as to the alleged incursions, even if it can, in many instances its claims are still time-barred based on the date contractors (either engaged by Zayo or its predecessors) installed the equipment. CSXT commenced this action on November 16, 2021. The alleged injury to CSXT's property interests would have occurred when Zayo or its predecessor directed contractors to install the fiber optic cable in question. CSXT should have reasonably discovered these installations at or near to the time of installation, as all of the equipment at issue involves above ground infrastructure that is visible to the human eye and CSXT admittedly regularly inspects its rail corridor as required by Federal regulation. As a result, many of CSXT's claims are time barred.

### A.   *Pursuant to the Discovery Rule CSXT Should Have Known of its Injury at or Shortly after Any Alleged Installation*

In both Illinois and Indiana, a cause of actions accrues, and the limitation period begins to run "when a claimant knows or in the exercise of ordinary diligence should have known that an

injury had been sustained as a result of the tortious act of another." *Branham Corp. v. Newland Res.*, LLC, 17 N.E.3d 979, 987-88 (Ind. Ct. App. 2014); *Super Mix of Wis., Inc. v. Natural Gas Pipeline Co. of Am., LLC*, 2020 IL App (2d) 190034, P36 (Ind. Ct. App. 2020) ("[A] party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused."). "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Branham Corp.*, 17 N.E.3d at 988. Statutes of limitation serve to discourage stale claims and promote judicial efficiency. *Id.* at 987; *Bank of Ravenswood v. City of Chi.*, 717 N.E.2d 478, 483 (Ind. Ct. App. 1999). Moreover, in Illinois, "[w]hen a plaintiff invokes the discovery rule to toll the statute of limitations, the plaintiff has the burden of proving the date of discovery." *Super Mix of Wis.,* 2020 IL App (2d) 190034, P36.

Here, there is no dispute of material fact as to the frequency with which CSXT inspects its railroad equipment and is physically present at locations along its rail corridor. It is undisputed that CSXT routinely inspects, tests, and maintains its operations over its various rail corridors in both Indiana and Illinois pursuant to federal regulations. (SUF ¶¶ 37-38.) In doing so, CSXT's maintainers are on-site inspecting CSXT equipment on a monthly basis. (SUF ¶ 39.) As a result, had CSXT been meeting its federally required inspection obligations, it would have encountered construction crews at these locations and known of the alleged injury immediately, as the installations in question would have been constructed over several days, by contractors engaging construction crews and many steps that would be visible to the public. (SUF ¶ 18.)

Even if no CSXT personnel witnessed the installations occurring, the equipment associated with these installations would have been plainly visible to CSXT personnel immediately after installation. It is undisputed that some of installations at issue are aerial installations, where the

wirelines are plainly visible above ground. (SUF ¶ 13.) As to these installations, CSXT knew or should have known of any injury caused by the installations near CSXT's rail corridor within a month of installation. CSXT similarly knew or should have known of underground fiber installations shortly after installation. Underground fiber installations are marked cable markers and necessarily require above-ground infrastructures, such as fiber markers and vaults. (SUF ¶¶ 15-17.) In conducting its monthly inspections, CSXT reasonably should have known about any new underground installations conspicuously marked above ground and nearby its rail corridor. In addition to being able to plainly see cable markers and other above-ground infrastructure, CSXT would also be able to identify the telecommunications company to which they belonged. (SUF ¶¶ 16-17.) Moreover, construction of fiber facilities includes a number of steps that are visible to the public and occur over a few days to a few weeks, plainly in the open.

That CSXT should have discovered these installations with reasonable diligence is evidenced by visual inspections CSXT has conducted of areas near its rail corridor as a result of this litigation. CSXT has sent inspectors to a handful of locations originally alleged in this suit, and these inspectors were able to observe above-ground infrastructure indicating the presence of underground installations by mere visual observation, and without special equipment. (SUF ¶¶ 42-44.) This fact alone confirms that CSX's monthly, on-the-ground inspections of its equipment would reveal fiber installations in plain sight. As a result, it is undisputed that CSXT knew or reasonably should have known about the alleged installations shortly after they occurred, and the applicable statutes of limitation should not be tolled. *See Branham Corp.*, 17 N.E.3d at 987-88; *Super Mix of Wis., Inc. v, LLC*, 2020 IL App (2d) 190034, P36.

**B. CSX's Claims are Untimely Based on the Applicable Statutes of Limitation**

*Criminal Trespass, Railroad Mischief, Deception, Theft/Criminal Conversion.* Claims under Indiana's Crime Victim's Relief Act have a two-year statute of limitations. *Clark v. Univ. of Evansville*, 784 N.E.2d 942, 945 (Ind. Ct. App. 2003); *Browning v. Walters*, 616 N.E.2d 1040, 1045 (Ind. Ct. App. 1993) (explaining that a claim under IC § 34-24-3-1 is penal in nature and is therefore an action for a forfeiture of penalty given by statute, which has a two-year statute of limitations, recodified at IC § 34-11-2-4). Here, CSXT alleges criminal trespass, railroad mischief, deception, and theft/criminal conversion at 255 Indiana locations where Zayo or a Zayo-Acquired Entity directed the installation of fiber more than two years prior to the time CSXT filed its complaint. (SUF ¶ 10.) As one example, CSX PIN 18133 0025, has an installation date in 2017, with as-built construction drawings also identifying a 2017 installation date. (SUF ¶ 11.) CSXT's criminal claims, filed approximately four years after this installation, are time barred. Because CSXT's criminal claims as to these locations are barred by the statute of limitations, the Court should enter summary judgment against CSXT.

*Trespass to Land and Trespass to Chattels.* In Indiana, "[a] trespass action has long been held to be governed by the six year limitations period." *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 733 (Ind. 2010); IC § 34-11-2-7 (same). CSXT alleges trespass to 180 locations in Indiana where contractors installed the fiber at issue more than six years prior to the time CSXT filed its complaint. (SUF ¶ 8.) For example, Indiana Fiber Network directed and installation at CSX PIN 18097 0169 & 18097 0168, and Zayo later acquired the company along with its fiber. (SUF ¶ 9.) The construction drawings for the installation at that location indicate that it was completed in November 2012, well before CSX initiated its complaint. (SUF ¶ 9.)

In Illinois, there is a five-year statute of limitations on trespass claims. *Vill. Of DePue v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 779 (C.D. Ill. 2010) (citing 735 Ill. Comp. Stat. Ann. 5/13-205). CSXT alleges trespass to 144 locations in Illinois where Zayo or a Zayo-Acquired Entity installed fiber more than five years prior to the time CSXT filed its complaint. (SUF ¶ 6.) For instance, at CSX PIN 17031 0055, Zayo's records show that a company called Metromedia directed the installation in September 2000. (SUF ¶ 7.) Metromedia became AboveNet in 2003 and was acquired by Zayo in 2012. (SUF ¶ 7.) Accordingly, CSXT's claims for trespass to land and trespass to chattel for these locations are time barred.

*Unjust Enrichment and Rent.* In Indiana, the statute of limitations for both unjust enrichment and rent is six years. *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004) (citing IC § 34-11-2-7) (Unjust Enrichment); IC § 34-11-2-7 (actions for rent of real property). CSXT asserts claims for unjust enrichment and rent at 180 locations in Indiana where contractors installed fiber over six years ago. (SUF ¶ 8.) In Illinois, the statute of limitations for both unjust enrichment and rent is five years. *Lewandowski v. Jelenski*, 401 Ill. App. 3d 893, 897 (2010) (citing 735 Ill. Comp. Stat. Ann. 5/13-205) (unjust enrichment); 735 Ill. Comp. Stat. Ann. 5/13-205 (rent). CSXT asserts claims for unjust enrichment and rent at 144 locations in Illinois where the fiber at issue was installed over five years ago. (SUF ¶ 6.) Because CSXT's unjust enrichment and rent claims are barred by applicable statutes of limitation for these locations, the Court should grant summary judgment.

IV.    **The Court Should Enter Summary Judgment as to Two of CSXT's Criminal Claims: Count II (Railroad Mischief) and Count III (Criminal Deception)**

      A.    *CSXT Cannot Prevail on its Criminal Deception Claim Because there is no Dispute of Material Fact that Zayo's Purportedly False Statements Did not Cause it Harm*

CSXT's criminal deception claim is unfounded. In order to prove a deception claim under the Crime Victim's Relief statute, a plaintiff must show that a person "knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity." Ind. Code Ann. § 35-43-5-3 (2). The Crime Victim Relief Act (CVRA) permits recovery where a person "suffers a pecuniary loss as a result of" another person's violation of various criminal statutes. Ind. Code Ann. § 34-24-3-1. Because the CVRA is punitive in nature it must be strictly construed." *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 891 (S.D. Ind. 2014). Thus, in order to recover under the CVRA, a plaintiff must prove the elements of the particular criminal statute and "that the violation caused the loss suffered by the plaintiff." *Id.* at 889. Courts interpret this requirement to mean that the defendant's conduct must have been the proximate cause of the plaintiff's loss. *Id.* at 892 (granting summary judgment on deception claim because plaintiff failed to establish proximate causation between their alleged damages and the alleged misrepresentation).

CSXT alleges that Zayo made false and misleading statements and that CSXT was damaged by those statements. (SUF ¶ 45.) However, CSXT cannot show that Zayo's allegedly false statements were the cause of any harm. Specifically, CSXT's claim for deception is based on statements that Zayo employees made to CSXT when attempting to negotiate a Facility Encroachment Agreement for Jackson St., an agreement the parties undisputedly never signed. (SUF ¶ 47.) Moreover, Zayo's purportedly false statements largely relate to the proposed installation's location in the public road right of way, a fact CSXT admits has no bearing on its

engineering or permitting process. (SUF ¶¶ 48-49.) Absent any evidence CSXT relied on these statements to its detriment, or that these statements proximately caused harm to CSXT, the Court should enter summary judgment on this claim. *See Heckler & Koch,* 71 F. Supp. 3d at 889.

### B. The Court Should Enter Summary Judgment as to CSXT's Railroad Mischief Claim Because there is no Dispute of Fact that Zayo did not cause Physical Damage to any Railroad Equipment in Indiana

CSXT's Count II is premised on Indiana Code § 35-43-1-2.3 (2022), which makes it a criminal offense in Indiana where one "without the consent of the owner of the property, recklessly, knowingly, or intentionally damages or defaces" certain railroad equipment, including locomotives themselves, as well as "a part of any railroad signal system," or "rail[s], switch[es], roadbed[s], viaduct[s], bridge[s], trestle[s], culvert[s] or embankment[s] on a right-of-way owned, leased, or operated by a railroad company." § 35-43-1-2.3. No Indiana cases interpret the meaning of the statute; however, as a penal law, it too must be strictly constructed. *See Humphreys v. State*, 984 N.E.2d 1231, 1232 (Ind. 2013) (quotation omitted).

The Railroad Mischief statute only penalizes damage to specific railroad equipment, as identified in the statute. Here, despite alleging general damage to its property, CSXT has also alleged that its equipment is damaged at every location on its incursion list. Despite this claim, CSXT has only produced evidence of physical damage to its equipment at a single location in Illinois, not in Indiana. (SUF ¶¶ 50, 52.) It has admitted that none of Zayo's alleged installations have caused injury, accidents, derailments, or similar incidents. (SUF ¶ 54.) When asked to identify the damage allegedly caused at each of the incursion locations, CSXT responded that anywhere where Zayo's fiber installations come within a certain number of feet of its equipment, the equipment is damaged. (SUF ¶ 50.) At all the Indiana locations, CSXT has only contended that Zayo's fiber devalues its equipment, but has produced no evidence that any alleged installation

physically harmed any equipment. Rather, CSXT's theory is that its equipment is "devalued" by virtue of the mere proximity of fiber optic cable to it (at up to 1,000 feet away in some cases). (*Id.*) This does not fall within the plain language of the Railroad Mischief statute, which is by its terms intended to penalize physical damage to *railroad equipment*. *See* Ind. Code § 35-43-1-2.3 (referring to "damages or defaces" certain physical equipment); Property Damage, Black's Law Dictionary (2d ed.) (defining "property damage," as "the *physical and tangible* damage or destruction that is done to property." (emphasis added)). Were the Court to interpret the Railroad Mischief statute as broadly as CSXT seeks, any homeowner living within 1,000 feet of a rail corridor who wishes to install underground infrastructure on their property would be in violation of the statute. Such an absurd result should not stand, and the Court should enter summary judgment on CSXT's Count II for Railroad Mischief.

## V.    The Court Should Enter Summary Judgment where Zayo's Installations are Authorized by Contract

As to sixty-nine locations on which CSXT brings claims, CSXT has itself admitted that Zayo's predecessor (FiberLink) had rights to install its fiber where it did, at locations where CSXT possess a leasehold interest. (SUF ¶¶ 32-33.) At five additional locations where CSXT brings claims, there is no dispute of fact that the fiber at issue is in another company's conduit, and that company is authorized to have installed that conduit in another railroad's corridor. (SUF ¶¶ 34-36.) As to these locations, because there is no dispute of fact that Zayo's fiber is authorized by contract where it is installed, the Court should grant summary judgment as to all of CSXT's claims.

## VI.    CSXT is Precluded from Disgorging Zayo's Profits as a Matter of Law

As a federal court sitting in diversity, the Seventh Circuit has instructed that the Court must be reluctant to "expand state law." *See J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005). Nonetheless, CSXT's primary damages theory in this case is that it may disgorge

Zayo's profits stemming from its alleged incursions on to its rail corridor and, in particular, that it may seek all of Zayo's revenues flowing from its entire fiber optic network in Indiana and Illinois. (SUF ¶¶ 58-59.) As explained below, this theory of recovery is not endorsed by either state's law. As to its trespass claims, because there is no dispute of material fact that Zayo did not remove an item of value from CSXT's property for resale, CSXT is limited to recovering the fair market value of the property Zayo has allegedly wrongfully appropriated. Nor can CSXT salvage its attempt at a windfall by pointing to its unjust enrichment claim, as this attempt too fails as a matter of law.

### A. CSXT Cannot Disgorge Zayo's Profits as a Remedy for its Trespass Claims under Indiana or Illinois Law

In both Indiana and Illinois, "[w]here a portion of the land is permanently appropriated [by a trespasser], or where it is so occupied as to deprive the owner permanently of the occupation or use of a portion of his land, the general rule as to the measure of damages is the depreciation in the market value of the land occasioned by the appropriation or trespass." *Indiana Pipe Line Co. v. Christensen*, 123 N.E. 789, 791 (Ind. 1919) (alleging defendant's pipeline leaked onto plaintiff's land); *see also Arras v. Columbia Quarry Co.*, 367 N.E.2d 580, 583-84 (Ill. App. 1977) ("(1) if the injury is permanent, the measure of damages is the market value of the real estate before the injury, less the market value after the injury; (2) if the injury to real estate is not permanent, then the measure of damages is the cost of restoration."). The Indiana and Illinois pattern civil jury instructions accord with these principles. *See* 1 Indiana Model Civil Jury Instructions 717 (2022) ("If you decide that the damage to the real estate is permanent, you should award the difference between the fair market value of the real estate immediately before and after the damage."); 1 Illinois Pattern Jury Instructions – Civil 30.18 (2023) (permanent damage to real estate is "determined by the difference between the fair market value of the real property immediately before the occurrence and its fair market value immediately after the occurrence").

The only cases in Indiana and Illinois that award plaintiffs restitution and apply a disgorgement theory of recovery for a trespass claim do so where the trespasser removes something of value from the plaintiff's land (*i.e.*, coal or timber) and then sells the item for profit. *See, e.g.*, *Sunnyside Coal & Coke Co. v. Reitz*, 39 N.E. 541, 543 (Ind. Ct. App. 1895) (relating to the removal of coal); *Dethloff v. Zeigler Coal Co.*, 412 N.E.2d 526, 535 (Ill. 1980) (same). These cases apply a conversion theory of damages, as explained by the Indiana Court of Appeals in *Sunnyside*:

> While the coal lay in the vein it was a part of the realty; when it became severed, it became a chattel. The change in its condition did not change its ownership, it still belonged to the owner of the soil. He was entitled to recover its possession, and if this could not be done he was entitled to recover its value as a chattel.

*Sunnyside*, 39 N.E. at 543*; see also Plymouth Fertilizer Co. v. Balmer*, 488 N.E. 2d 1129, 1138-39 (Ind. Ct. App. 1986) (applying rule from *Sunnyside* to removal of gas from gas well).

The Restatement of Restitution (First) § 129 reflects these different measures of recovery for trespasses that cause a permanent appropriation or damage to the land versus the removal of goods from that land. That section provides that "a person who tortiously has taken possession of another's land without consent" is generally not liable in restitution, except where he has "tortiously severed and taken possession of anything in or upon the land . . . ." *See also id.* at Illustration 1 (explaining that where a party dispossesses another of property, the tortfeasor is only liable for the reasonable rental value of the land occupied, not its increase in profits); *see also Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citing Restatement of Restitution (First)).

Here, it is undisputed that Zayo did not remove anything from CSXT's land and sell it for profit. CSXT instead claims that Zayo has permanently appropriated a portion of its property for its use by installing its facilities near or beneath CSXT's alleged rail corridor. (Doc. 210 ¶¶ 61 (alleging that Zayo "appropriated" Railroad property); 210 ("Through these actions, Zayo is

reselling or advertising for resale the CSXT Railroad Property that it appropriated unlawfully and upon which it is trespassing."). Courts across the country considering similar claims have rejected this measure of damages. *See, e.g.*, *Enbridge Energy Ltd. P'ship v. Engelking*, 890 N.W. 2d 48, 48 (Wisc. Ct. App. 2016) (rejecting plaintiff's theory that it could disgorge profits from pipeline owner whose pipeline trespassed on plaintiff's land under Wisconsin law, and stating that "the proposition that mesne profits are ordinarily measured by the rental value of the land is routinely stated in case law, treatises and current legal reference authorities"); *Moore v. Equitrans*, L.P., 27 F. 4th 211, 221 n.5 (4th Cir. 2022) (collecting West Virginia cases); *Tex. E. Transmission, L.P. v. 7 Acres of Land*, No. H-16-2498, 2016 U.S. Dist. LEXIS 161481, at *14-15 (S.D. Tex. Nov. 22, 2016) (rejecting disgorgement of pipeline company's profits as measure for bad faith trespass claim). The Court should reject this claim here too.

**B. CSXT's Unjust Enrichment Claim does not Entitle it to Disgorge Zayo's Profits**

In addition to its claim for trespass, CSXT has also brought a claim for unjust enrichment (Count VII) stemming from all the alleged incursions, and claiming that Zayo "unjustly retained a benefit to the detriment of CSXT." (Doc. 210 ¶ 331.) This additional tort claim cannot salvage CSXT's plan to recover Zayo's profits. To the contrary, CSXT has failed to state a claim for unjust enrichment pursuant to Indiana law, and the availability of an adequate remedy at law bars this equitable claim under the law of either state. As a result, the Court should enter judgment dismissing this claim. However, even if the Court allows this claim to proceed, it should follow the law across the country holding that a plaintiff cannot obtain the defendant's profits under similar circumstances.

i. <u>CSXT has failed to state a claim for Unjust Enrichment in Indiana.</u>

In Indiana, a claim for unjust enrichment "requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Reed*, 980 N.E. 2d at 296. "To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Id.* In *Reed*, the plaintiff brought claims for both unjust enrichment and trespass, claiming that the defendants trespassed on to his property and disposed of waste, allowing the defendants to avoid civil penalties. *Id.* The Indiana Court of Appeals held that plaintiff's claim for unjust enrichment failed as a matter of law because plaintiff "does not contend that he in anyway rendered a benefit to the Defendants at the Defendants request, nor does [plaintiff] allege that for whatever reason he expected to be paid by Defendants." *Id.*

The same is true here. CSXT does not claim that it rendered a benefit to Zayo at its request with the expectation of payment. *See id.*; *see also Allgood v. GMC*, No. 1:02-cv-1077-DFH-TAB, 2006 U.S. Dist. LEXIS 70764, at *106 (S.D. Ind. Sep. 18, 2006) (granting summary judgment as to unjust enrichment claim under Indiana law because plaintiffs "have not shown that [defendant] expressly or impliedly requested the benefit of avoiding" costs of removing chemicals from their property because "[j]ust the opposite, plaintiffs assert that they had no knowledge of [defendant's] actions"). Instead, it alleges that Zayo appropriated its property in secret and without authorization. *See id.* As a result, CSXT's claim similarly fails.

ii.   CSXT Cannot State a Claim for Unjust Enrichment in Either State
        Because it has an Adequate Remedy at Law

CSXT's claim for unjust enrichment is defective for a second reason, namely that it has an adequate remedy at law. In both Indiana and Illinois, an equitable claim for unjust enrichment cannot be pursued where the plaintiff has an adequate remedy at law. *See Craftsman Chem. Corp.*

*v. IVC Indus. Coatings*, No. 2:15-cv-00425-LJM-MJD, 2017 U.S. Dist. LEXIS 10019 (S.D. Ind. Jan. 25, 2017); *Thayer v. Estate of Lynn (In re Estate of Lynn)*, 2017 IL App (4th) 160766-U, ¶ 24 (Ill. Ct. App. 2017) ("It is axiomatic that an unjust enrichment claim is viable only when there is no adequate remedy at law.") (quotation omitted). As the Indiana Court of Appeals explained in *Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178-79 (Ind. Ct. App. 2006): "[O]ur courts generally will not exercise equitable powers when an adequate remedy at law exists. Equity has power, where necessary, to pierce rigid statutory rules to prevent injustice. But where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law."

Although a typical "adequate remedy at law" that bars an unjust enrichment claim is an express contract governing the parties' dispute, it may also be a tort claim covering the same conduct. *See, e.g.*, *Gibson v. Eagle Fam. Foods Grp. LLC*, No. 1:22-cv-02147-TWP-MKK, 2023 U.S. Dist. LEXIS 152068, at *27 (S.D. Ind. Aug. 29, 2023) (dismissing unjust enrichment claim that plaintiff admitted was duplicative of tort and warranty claims); *Allgood*, 2006 U.S. Dist. LEXIS 70764, at *108 (holding that plaintiffs' unjust enrichment claim "cannot stand because there exists a remedy at law for the alleged harm on which this claim is based," and because "plaintiffs seek the same remedy in equity that they seek at law," the claims overlap and the unjust enrichment claim "cannot survive"); *see also Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv.*, No. 4:20-CV-04058-KES, 2023 U.S. Dist. LEXIS 22969, at *83 (D.S.D. Feb. 8, 2023) ("Tort claims provide an adequate remedy at law.").

Here, CSXT's trespass and rent claims are based on the identical conduct as its unjust enrichment claim. CSXT has pursued these legal claims, and they provide it an adequate remedy at law. As a result, CSXT cannot recover restitution flowing from its unjust enrichment claim.

      iii.  <u>Even if CSXT has Stated a Claim for Unjust Enrichment Under Either State's Law, it Cannot Recover Zayo's Revenues or Profits.</u>

Even if the Court finds CSXT has properly stated claims for unjust enrichment under Indiana or Illinois law, these claims still do not entitle CSXT to the disgorgement of Zayo's profits stemming from its installations as a matter of law. Several courts have rejected similar attempts to recover a defendant's profits premised on unjust enrichment where the defendant has installed infrastructure on a portion of plaintiff's land to benefit its business, holding instead that the proper recovery in these circumstances is fair rental value for the occupation. For instance, in *Beck v. Northern Natural Gas Co.*, 170 F.3d 1018, 1024 (10th Cir. 1999), the Tenth Circuit applied Kansas law to claims brought by plaintiff landowners against a defendant natural gas company for trespass and unjust enrichment. The plaintiffs prevailed on their argument that the gas company committed trespass when it stored natural gas beneath their properties, but challenged the district court's ruling on summary judgment that fair rental value of the property "was the proper measure of damages for both their trespass and their unjust enrichment claims" seeking instead to disgorge the defendant's "profits gained as a result of the use of the formation." *Id.* The Tenth Circuit affirmed, holding that "the benefit [the gas company] received from the landowners was the use of the Simpson formation without payment of rent, for which the proper measure of damages was, as the district court found, fair rental value." *Id.* It further reasoned that there was no indication that, "but for [defendant's] actions of storing gas in the Simpson formation, profits gained as a result would have gone to the landowners." *Id.* Here too, the benefit that CSXT claims Zayo has received is use of its property interests without payment of rent, and there is no evidence or allegation that, had Zayo not installed its fiber optic cable on CSXT's alleged property, CSXT would have installed and profited from its own fiber routes. *See id.* Thus, the Court here should grant summary judgment to hold that CSXT cannot disgorge Zayo's profits.

Similarly, in *Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, No. 3:15-13415, 2016 U.S. Dist. LEXIS 153095 (S.D. W. Va. Nov. 4, 2016), the court also rejected a disgorgement theory of recovery for a pipeline allegedly installed without right on plaintiff's land. There too, the court held that plaintiff's restitution damages as to its unjust enrichment claim "should be limited to the rental value of the land or amount required to obtain a proper easement, not the Defendants' profits." *Id.* at *5. The court in *Lodal v. Verizon Va., Inc.*, 74 Va. Cir. 110 (Va. Cir. Ct. 2007) reached the same result. It applied Virginia law to the installation of a fiber optic cable, holding that plaintiffs' unjust enrichment claim only entitled them to "fair compensation for the defendant's illegal use and occupation of his land, which is not the same measure of recovery as a complete disgorgement of the defendant's damages." *Id.* at 116. The result should be no different here, and the Court should hold that CSXT is not entitled to disgorge Zayo's profits from the installation of its fiber optic cables.

## CONCLUSION

For the foregoing reasons, Zayo respectfully requests that the Court grant the Motion and enter partial summary judgment in Zayo's favor as to the following claims:

- Counts I (Indiana Criminal Trespass), II (Civil Trespass to Land in Indiana and Illinois) and VIII (Rent) as to all locations where CSXT only owns an easement interest.

- Counts I (Indiana Criminal Trespass), II (Civil Trespass to Land in Indiana), VIII (Rent int Indiana) where there is no dispute that Zayo's fiber is installed within the confines of a public road.

- Counts II (Indiana Criminal Railroad Mischief) and III (Indiana Criminal Deception).

- Counts I through IV (Indiana Criminal Claims) as to installations where there is no dispute of fact they were installed before November 21, 2019.

- Count V (Civil Trespass to Land) and Count VI (Civil Trespass to Chattels) as to installations installed in Indiana before November 21, 2015.

- Count V (Civil Trespass to Land) and Count VI (Civil Trespass to Chattels) as to installations installed in Illinois before November 21, 2016.

- Count VII (Unjust Enrichment) and VIII (Rent) as to installations where there is no dispute of fact they were installed in Illinois before November 21, 2016.

- Count VII (Unjust Enrichment) and VIII (Rent) as to installations where there is no dispute of fact they were installed in Indiana before November 21, 2015.

- All counts as to the following locations, authorized by contract: 17031 0247; 17031 0172; 17197 0002; 17197 0028; 17197 0028; 17197 0032; 17063 0001; 17063 0011; 17063 0014; 17099 0035; 17099 0001; 17099 0017; 17099 0022; 17099 0002; 17099 0007; 17099 0073; 17031 0247; 17031 0172; 17011 0001; 17011 0002; 17011 0003; 17011 0004; 17011 0005; 17011 0006; 17011 0007; 17011 0009; 17063 0005; 17063 0012; 17063 0013; 17063 0016; 17063 0017; 17099 0009; 17099 0014; 17099 0016; 17099 0019; 17099 0002; 17099 0021; 17099 0023; 17099 0024; 17099 0025; 17099 0031; 17099 0036; 17099 0046; 17099 0048; 17099 0050; 17099 0055; 17099 0046; 17099 0057; 17099 0058; 17099 0059; 17099 0060; 17099 0061; 17099 0064; 17099 0066; 17099 0069; 17099 0070; 17099 0074; 17099 0076; 17099 0077; 17099 0078; 17099 0080; 17099 0081; 17099 0082; 17099 0083; 17099 0084; 17099 0085; 17099 0086; 17099 0090; 17197 0007; 17031 0084; 18089 0056; 18089 0060; 18091 0081; and 18127 0020.

Finally, the Court should grant summary judgment as to CSXT's claim for disgorgement of Zayo's profits, under any claim for relief.

Dated: September 8, 2023        Respectfully submitted,

DAVIS GRAHAM & STUBBS LLP

*/s/ Tess Hand-Bender*
Tess Hand-Bender, Atty No. 42682 (Colo.)
Emily Mendoza, Atty No. 55272 (Colo.)
1550 17th Street, Suite 500
303-892-9400
303-893-1379
tess.hand-bender@dgslaw.com
emily.mendoza@dgslaw.com

KIGHTLINGER & GRAY, LLP

April M. Jay
Pfenne Peter Cantrell
Thomas J. Jarzyniecki, Jr.
211 North Pennsylvania Street
One Indiana Square, Suite 300
Indianapolis, Indiana 46204
ajay@k-glaw.com
pcantrell@k-glaw.com
tjarzyniecki@k-glaw.com

*Counsel for Zayo Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Matthew Thomas Ciulla
Robert D. MacGill
MACGILL PC
156 East Market Street, Suite 1200
Indianapolis, Indiana 46204
matthew.ciulla@macgilllaw.com
robert.macgill@macgilllaw.com

*Counsel for CSX Transportation, Inc.*

April M. Jay
Pfenne Peter Cantrell
Thomas J. Jarzyniecki, Jr.
KIGHTLINGER & GRAY, LLP
211 North Pennsylvania Street
One Indiana Square, Suite 300
Indianapolis, Indiana 46204
ajay@k-glaw.com
pcantrell@k-glaw.com
tjarzyniecki@k-glaw.com

*Counsel for Zayo Group, LLC*

Georgianna Q. Tutwiler
Mark Holdridge
HUME SMITH GEDDES GREEN &
SIMMONS
54 Monument Circle, 4th Floor
Indianapolis, Indiana 46204
gquinn@humesmith.com
mholdridge@humesmith.com

*Counsel for Milenium Inc.*

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, Kentucky 40202
sjones@reminger.com

*Counsel for Crossroads Communications Solutions, LLC*

Logan C. Hughes
REMINGER CO. LPA – CLEVELAND
College Park Plaza
8909 Purdue Road, Suite 200
Indianapolis, Indiana 46268
lhughes@reminger.com

*Counsel for Crossroads Communications Solutions, LLC*

David E. Bailey
Timothy Allen Manges
FLETCHER VAN GILDER, LLP
436 East Wayne Street
Fort Wayne, Indiana 46802
bailey@fvglaw.com
manges@fvglaw.com

*Counsel for Baseline Communications, NXC, LLC*

Thomas A. Pastore
THOMAS PASTORE, PC
P.O. Box 40939
Indianapolis, Indiana 46240
tpastore@pastorelaw.com

Jon K. Stowell
Law Offices of the Cincinnati Insurance
Company
8910 Purdue Road, Suite 650
PO Box 68449
Indianapolis, Indiana 46268
jon_stowell@staffdefense.com

*Counsel for JDH Contracting, Inc.*

David Thomas Page
Paul J. Cummings
HANN HAWORTH CUMMINGS & PAGE
1634 West Smith Valley Roade, Suite B
Greenwood, Indiana 46142
David.page@hhcfirm.com
Paul.cummings@HHCPlaw.com

*Counsel for Tesco Company, Inc.*

Stacey Ann Everton
Charles S. Smith
Gaius Goree Webb
SCHULTZ & POGUE
520 Indiana Avenue
Indianapolis, Indiana 46202
severton@schultzpoguelaw.com
csmith@schultzpoguelaw.com
gwebb@schultzpoguelaw.com

*Counsel for OMC Engineering, On Point
Construction Management. and PLB
Engineering, LLC*

Scott Sirich
Pamela A. Paige
Bradford S. Moyer
PLUNKETT COONEY, P.C.
201 North Illinois Street
South Tower, 16th Floor
Indianapolis, Indiana 46204
ssirich@plunkettcooney.com
ppaige@plunkettcooney.com
bmoyer@plunkettcooney.com

*Counsel for Spectrum Engineering, LLC*

*s/Brigid Bungum*