UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 1:21-cv-02859-JMS-MJD |
| *vs.* | ) | |
| | ) | |
| ZAYO GROUP, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Plaintiff CSX Transportation, Inc. ("CSXT"), a railway transportation supplier, initiated this matter after Defendant Zayo Group, LLC ("Zayo") installed a fiber optic network system that CSXT alleges damaged its property. This litigation has been highly – and in the Court's view unnecessarily – contentious, as reflected by the more than 600 docket entries in this case to date. Indeed, the parties' filings have, at times, made the Court want to board a midnight train to Georgia to find "a simpler place and time."[1] In any event, the Court has considered a Motion for Partial Summary Judgment filed by Zayo, [Filing No. 417], and discusses its ruling below.

### I.
#### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "'Summary judgment is not a time to be

---

[1] GLADYS KNIGHT & THE PIPS, MIDNIGHT TRAIN TO GEORGIA (Buddah 1973).

coy.'" *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In

other words, while there may be facts that are in dispute, summary judgment is still appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS[2]

The following Statement of Facts is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).[3]

### A.      CSXT's Business

CSXT and its predecessor railroads have operated rail lines across Indiana and Illinois for more than a century. [Filing No. 210 at 1.] CSXT has access to the property on which its tracks run through a variety of interests, including owning the property in fee simple, possessing a rail

---

[2] To the extent the Court quotes from or discusses sealed filings, the information quoted or referred to is integral to the Court's decision and therefore must be publicly available. *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.").

[3] The Court notes Local Rule 56-1(b), which requires that the non-movant on a motion for summary judgment "include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. L.R. 56-1(b). While CSXT's response to Zayo's Motion for Partial Summary Judgment includes a section titled "Statement of Material Facts in Dispute," CSXT does not identify facts from Zayo's brief in support of the Motion for Partial Summary Judgment that it is disputing. Instead, CSXT sets forth its own version of events. [*See* Filing No. 482 at 2-10.] This is unhelpful to the Court and not in compliance with Local Rule 56-1. Nevertheless, the Court has done its best to incorporate CSXT's discernable "disputed facts" into the Statement of Facts contained in this Order.

corridor easement, possessing a leasehold interest, or possessing trackage rights granted from another railroad.  [*See* Filing No. 466 at 8-9; Filing No. 466 at 11 ("CSXT owns CSX Pin No. 18133 0021 as [a] rail corridor easement"); Filing No. 466 at 14 ("CSXT owns CSX PIN No. 18097 0135 as a 999-year perpetual lease"); Filing No. 466 at 26 ("CSXT owns CSX PIN No. 18097 0155 in fee simple").]

CSXT performs inspections and tests on its equipment on a monthly, quarterly, annual, biennial, and decennial basis.  [Filing No. 424-4 at 16; Filing No. 424-5 at 8.]  CSXT is required by federal regulations to perform those "inspections and tests of its warning and signal systems and various components on a monthly, quarterly, annual, or other basis." [Filing No. 417-10 at 13.]  When performing monthly inspections, CSXT's maintainers physically visit the locations where CSXT operates its tracks and grade crossings.  [Filing No. 424-5 at 7-8.]  CSXT's communications and signals directors receive and review daily reports regarding the status of CSXT's operations and any incidents.  [Filing No. 424-5 at 11.]  When a train is stopped due to a malfunction, CSXT's communications and signals directors are notified immediately.  [Filing No. 424-5 at 6.]  In addition to federally-required regular inspections, CSXT has completed other inspections on and around its rail corridor by contracting with an entity called OSPRE.  [Filing No. 424-4 at 13.]  Those inspections consist of visual observation to identify the location of telecommunications equipment.  [Filing No. 424-4 at 13-15.]  Based on the above-ground infrastructure, OSPRE can determine by visual observation whether fiber has been installed in connection with the above-ground infrastructure.  [Filing No. 424-4 at 13.]

**B.     Zayo's Business and General Installation Practices**

Zayo is a public utility that provides telecommunications services.  [Filing No. 420-1 at 3.] Zayo and the numerous telecommunications companies that it has acquired engaged contractors

to install fiber optic cables and other telecommunications equipment or appurtenances throughout Indiana and Illinois. [Filing No. 420-1 at 3.]

When Zayo performs an aerial installation, contractors engaged by Zayo or a Zayo-acquired entity string new cable between two utility poles, but in some cases they would "overlash" cable on a pre-existing cable attached to the pole. [Filing No. 417-2 at 3.] Aerial installations are visible from the ground and are typically tagged at the time of installation with information identifying the telecommunications company that owns the fiber. [Filing No. 417-2 at 3.]

Underground installations involve installing cable at a depth of at least thirty to thirty-six inches, but Zayo-owned underground fiber is often installed deeper. [Filing No. 417-2 at 3.] Zayo installs underground fiber beneath the surface and the installations are typically marked above-ground using cable markers, which are typically installed every 1,000 to 2,000 feet. [Filing No. 417-2 at 4.] The cable markers are generally installed at the time of the installation of the fiber and are labeled with identifying information about the telecommunications company that owns or installed the fiber. [Filing No. 417-2 at 4.] Zayo's underground fiber installations also require vaults to be placed that are generally above grade, are visible from the ground, typically have a placard on their lid identifying the vault as part of the Zayo system and are installed at the time of the underground fiber installation. [Filing No. 417-2 at 4.] Installation of conduit and vault systems includes numerous steps that tend to be visible to the public and occur over a period of time spanning from a few days to a few weeks for a given section of route. [Filing No. 417-2 at 4.]

**C.    Zayo's Installations on Properties Relevant to This Lawsuit**

CSXT requires outside parties to coordinate with CSXT regarding the nature and timing of any construction and the appropriate safety and engineering steps using an "Outside Party Form."

[Filing No. 468 at 1-2.]  This coordination helps ensure that the outside party may proceed in a safe manner and that it will not disrupt the operation of the railway.  [Filing No. 468 at 2.]

Zayo submitted applications to CSXT to install fiber optic cables at several sites, offering to pay $500 to CSXT for each installation.  [*See, e.g.*, Filing No. 467-1; Filing No. 468 at 6; Filing No. 468-5 at 2.]  CSXT responded to each of these applications, requested safety revisions, and did not authorize installation by Zayo.  [*See, e.g.*, Filing No. 468 at 6-7.]  Zayo nevertheless made the installations at the sites for which it applied for CSXT approval.  [*See, e.g.*, Filing No. 469-1; Filing No. 469-2; Filing No. 469-3; Filing No. 470-10; Filing No. 470-11; Filing No. 470-12.]

A list of Zayo's installations reflects that numerous installations in Illinois took place before 2016; numerous installations in Indiana took place before 2015; and still other installations in Indiana took place before 2019.  [Filing No. 420-1 at 4-5; Filing No. 420-1 at 10-27.]  Installations that occurred before 2007 were performed by contractors engaged by entities that Zayo acquired, and not by Zayo.  [Filing No. 420-1 at 3.]  Invoices from an outside contractor indicate that the contractor performed work to remedy missing Zayo marker posts at some sites.  [Filing No. 463-1 through Filing No. 463-13; Filing No. 464-1.]

Zayo regularly makes additional entries on the property to perform maintenance to repair, replace, and maintain its cables, including inspecting, splicing, and testing.  [*See, e.g.*, Filing No. 463-14 at 2; Filing No. 463-14 at 20; Filing No. 470-17; Filing No. 470-18; Filing No. 470-19; Filing No. 471-4 at 7; Filing No. 471-4 at 16; Filing No. 471-5 at 4-6.]

### D.    Zayo's Installations on Properties For Which CSXT Has an Easement

Zayo installed fiber optic cable underground near 2000 S. Jackson Street in Greencastle, Indiana ("the Jackson Street Location").  [Filing No. 417-3 at 6.]  CSXT's property interest in the Jackson Street Location is a rail corridor easement.  [Filing No. 424-3 at 11-12.]  CSXT's easement

at the Jackson Street Location derives from the Charter of New Albany, which authorizes railroads to create rail corridor lines, and the 1852 Act of the Indiana Legislature, which granted railroads the right to eminent domain, the right to purchase, the right to issue stock, and various other powers. [Filing No. 424-3 at 6-11.] CSXT holds numerous "Rail Corridor Easements" at locations in Indiana and Illinois. [*See* Filing No. 424-2.]

### E.    Zayo's Installations at Public Road Rights-of-Way

CSXT alleges that Zayo trespassed at a parcel identified as CSX PIN 18051 0003 (the "Public Road Installation"). [Filing No. 210 at 40-41; Filing No. 210 at 45-46; Filing No. 210-1 at 3.] At the Public Road Installation, Zayo's underground fiber installation is within the boundaries of a public road right-of-way. [Filing No. 420-1 at 7; Filing No. 420-1 at 113.]

### F.    Zayo's Installations Authorized by Contract

At sixty-nine sites in Illinois where CSXT alleges that Zayo trespassed, CSXT admitted that it possessed a leasehold interest as to the tracks at these locations and that Zayo's predecessor, FiberLink LLC ("FiberLink"), had executed an agreement with Hawkeye Land Company covering these locations and was authorized to install fiber at these locations. [Filing No. 420-1 at 5-7.] At five other locations upon which CSXT bases its trespass claims, Zayo maintains that its installations are within another company's conduit, which is authorized by agreement with another railroad to be in that railroad's corridor. [Filing No. 420-2 at 2-3.] CSXT's expert witness opines, however, that according to the United States Department of Transportation's Federal Railroad Administrative Safety Map, the five installations are on CSXT property and not within another railroad's corridor as Zayo claims. [Filing No. 466 at 51-54.]

### G.      Zayo's Allegedly False Statements

CSXT alleges that Zayo made the following false statements in its application for a Facility

Encroachment Agreement at the Jackson Street Location:

- "[W]ithin the public rights-of-way limits of [the Jackson Street Location]," "Zayo's work will be in the public rights-of-way, which we understand intersects with your railroad corridor at this location." "Zayo's installation will be located entirely within the public rights-of-way."

- "[W]ithin the public roadway limits of [the Jackson Street Location]" "Is the facility located in a roadway?: Y."

- "Zayo's deployment will be wholly within the public road right-of-way."

- "We are not on RR property on either side and would only be crossing in the one section." "We had our Engineering firm go to the field and they determined that there's not a feasible reroute in this case that would change anything."

- "Unfortunately I came into this project when it was already in progress – so some things happened before my time." "The proposed route at this point I believe would [cost] more to revise, remove and replace – coupled with global material supply issues involving conduit, I just don't see it happening in a timely manner."

- "I've confirmed with our local and engineering teams that at this location, Zayo's deployment will be wholly within the public road right-of-way (ROW), including both when the public road slightly parallels the tracks (at an angle) and when crossing underneath the railroad tracks that ultimately intersect with that public road."

- "[D]eploying our facilities wholly within the public right-of-way," "within the public road right-of-way of [the Jackson Street Location]."

- "[A]s you will see after viewing these we are clearly in the road [ROW]."

- "Again, Zayo's deployment is wholly within the public road right-of-way."

- "I'm reaching out regarding a handful of [CSXT] crossings where we are deploying in the public right-of-way…. Our local team is at the point of needing to deploy quickly."

- "Unfortunately, we're at a critical juncture of needing to move forward pretty soon. As such, if we don't hear back from y'all in the next few days, we'll just proceed via the deployment notice route."

[Filing No. 417-12 at 14-15.]

Whether an installation is in a public right-of-way is irrelevant to CSXT's engineering review and permitting processes when evaluating a proposed fiber installation. [Filing No. 424-4 at 9.] Additionally, CSXT does not investigate the nature of its own title when utilities propose installations, and does not request information about whether a utility's proposed longitudinal installation is within or outside of a public right-of-way, because the scope of any public right-of-way is irrelevant to CSXT when considering an installation parallel to its corridor. [Filing No. 424-7 at 5-10.] Nevertheless, Anne Murphy, a CSXT Real Estate Analyst, spent "a minimum of thirty…hours of [her] time" investigating the truth or falsity of Zayo's statements regarding its planned installations at the Jackson Street Location. [Filing No. 467 at 1-2.]

**H.     CSXT's Claimed Damages**

CSXT defines, and seeks to have the Court define, damages as "to lessen the soundness, goodness or value of; to impair or reduce the usefulness or value of property," and claims that damage occurs under the following circumstances:

- For rails and roadbeds:  where the unauthorized fiber installation was "less than appx. 15 feet deep," when crossing the rail or within "appx. 25 feet of the rail," when paralleling it;

- For switches:  where "the unauthorized fiber optic installation was within 25 feet of the front side of the switch," or "between the back side of the switch and within 15 feet past the last long timber";

- For bridges:  where, for subgrade installation, "the unauthorized fiber optic installation was within 45 feet of the bridge structure," or, for aerial installations, "within 1,000 feet of the bridge and or within 50 feet of the top of the rail";

- For culverts:  where the unauthorized installation is within a "100 foot radius" of the culvert; and

- For railroad signal systems, train control systems, centralized dispatching systems, and highway railroad grade crossing warning signals:  where "the installation is anywhere upon, within, or around the system, which can extend thousands of feet in either direction from the control point, grade crossing, etc."

[Filing No. 417-10 at 10-11 (emphasis omitted).]

At a CSXT location in Montrose, Illinois ("the Montrose Street Location"), trains were delayed or unable to operate due to Zayo's installations.  [Filing No. 424-4 at 5-6.]  CSXT's Communications & Signals Director, Shawn Ball, testified that he considered damage to mean "something that to [him] requires assistance or repair of some sort to be functional as intended," and that he was not aware of any damage to any of CSXT's communications and signals systems caused by the existence of fiber near its corridors, aside from the damage at the Montrose Street Location.  [Filing No. 424-5 at 7; Filing No. 424-5 at 14.]  CSXT stated in response to Zayo's Third Set of Interrogatories that "[u]pon a reasonable inquiry, CSXT does not presently believe that…damages to CSXT Components have yet caused any reported accidents or injuries to [CSXT] personnel or third parties, except for the [destruction at the Montrose Street Location]."  [Filing No. 417-10 at 17.]

## I.    The Lawsuit

CSXT initiated this litigation on November 16, 2021, [Filing No. 1], and filed the operative Third Amended Complaint on November 16, 2022, [Filing No. 210].  CSXT asserts the following claims against Zayo:

- Count I – criminal trespass under the Indiana Crime Victim's Relief Act ("ICVRA");

- Count II – railroad mischief under the ICVRA;

- Count III – deception under the ICVRA;

- Count IV – theft/criminal conversion under the ICVRA;

- Count V – civil trespass to land;

- Count VI – civil trespass to CSXT components;

- Count VII – unjust enrichment;

- Count VIII – rent;

- Count IX – declaratory judgment related to Zayo's "unilateral and unauthorized actions"; and

- Count X – declaratory judgment as to the Jackson Street Location.

[Filing No. 210 at 40-52.]  It seeks the following relief:

- Ejectment of Zayo from CSXT's railroad property in Indiana and Illinois and that Zayo shall remove the fiber optic cable installed in, on, along, or through that property;

- A permanent injunction enjoining Zayo from entering or interfering with CSXT's railroad property or performing any work on CSXT's railroad property without prior coordination, authorization, and approval from CSXT;

- Compensatory damages and rent related to Zayo's "confiscation, use, damage, destruction, and occupation of CSXT's Railroad Property in Indiana and Illinois";

- Treble damages, costs, and attorneys' fees under the ICVRA as to Counts I through IV;

- Punitive damages as to the civil trespass claims, Counts V and VI;

- Restitution and disgorgement;

- Interest; and

- Numerous declarations related to Zayo's right to make installations on CSXT's railroad property.

[Filing No. 210 at 52-54.]

Zayo moves for partial summary judgment on the following claims, or parts of claims:

- Counts I, V[4], and VIII as to all locations where CSXT only holds an easement interest;

- Counts I, V, and VIII where there is no dispute that Zayo's fiber is installed within the confines of a public road right-of-way;

- Counts II and III in total;

- Counts I through IV as to installations that occurred before November 21, 2019;[5]

- Counts V, VI, VII, and VIII as to installations that occurred in Indiana before November 21, 2015;

- Counts V, VI, VII, and VIII as to installations that occurred in Illinois before November 21, 2016;

- All counts as to certain locations where installations were authorized by contract; and

- Any claim for disgorgement of Zayo's profits.

[Filing No. 428 at 35-36.]

### III.
### DISCUSSION

This case presents an unusual factual scenario, where the conduct at issue spans two different states but involves the same parties. Some of CSXT's claims relate to Zayo's actions in both Indiana and Illinois, while others relate to Zayo's actions just in Indiana. The Court finds it

---

[4] Zayo refers to "[Count] II (Civil Trespass to Land in Indiana and Illinois)" in the Conclusion of its brief in support of its Motion for Partial Summary Judgment, where it sets forth the claims for which it seeks summary judgment. [Filing No. 428 at 35.] But Count II is for railroad mischief under the ICVRA, and the civil trespass to land claim is Count V. [See Filing No. 210 at 41-46.] The Court treats Zayo's reference to Count II in the Conclusion of its brief as a typographical error, and cautions counsel to be mindful of these types of errors in order to avoid confusion.

[5] CSXT initiated this litigation on November 16, 2021, so the relevant date for Zayo's statute of limitations arguments is November 16 and not November 21, as Zayo notes. The Court assumes that Zayo's reference to "November 21" is a typographical error, and evaluates the statute of limitations issue with November 16, 2021 as the relevant date since that is when CSXT filed its initial Complaint.

prudent to discuss claims related to actions in Indiana and claims related to actions in Illinois separately and does so below.  First, however, it discusses the issue of standing.

A.    **Standing**

The Court has an obligation to determine whether a party has standing to sue under Article III of the United States Constitution and can raise the issue *sua sponte* if the parties do not.  Indeed, standing is a threshold issue, and the Court must discuss it at the outset. *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).  "Because standing is an essential ingredient of subject-matter jurisdiction, it must be secured at each stage of the litigation." *Id.*  Although at the pleading stage "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), "[o]nce the allegations supporting standing are questioned as a factual matter – either by a party or by the court – the plaintiff must support each controverted element of standing with 'competent proof,'" *Bazile*, 983 F.3d at 278 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).  "Competent proof" means "a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).

To have standing to sue in federal court under Article III, a plaintiff must establish that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  Injury in fact is "the '[f]irst and foremost' of standing's three elements," and the plaintiff must show that it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 338-39 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998); *Lujan*, 504 U.S.

- 13 -

at 560 (internal quotations omitted)).  "Without an injury that the defendant caused and the court

can remedy, there is no case or controversy under Article III."  *Nabozny v. Optio Sols. LLC*, 84

F.4th 731, 734 (7th Cir. 2023).

The Court's focus in this case is on two components of the "injury-in-fact" element of

standing – an "invasion of a legally protected interest" and a "concrete and particularized injury."

As to the former, Zayo argues that CSXT does not have standing to assert its trespass claims related

to sites for which it only holds an easement because CSXT does not have a valid possessory interest

in the land.  As to the latter, while Zayo discusses CSXT's failure to prove the damages element

of some claims, it does not specifically assert that CSXT does not have standing due to that lack

of damages.  [*See, e.g.*, Filing No. 428 at 26-28 (Zayo arguing that CSXT's railroad mischief and

criminal deception claims fail because CSXT cannot show it suffered any damage).]  In any event,

whether phrased as a lack of evidence to support standing or a lack of evidence to support the

damages element of some of its claims, CSXT is not entitled to relief for those claims if it did not

suffer concrete and particularized damages as a result of Zayo's actions.

The Court must fulfill its obligation to ensure that CSXT has standing to assert each of its

claims and that, consequently, the Court has subject-matter jurisdiction over each of those claims,

regardless of how the parties frame their arguments.  Further, if the Court does not have subject-

matter jurisdiction over a claim due to a lack of standing, it may not decide the merits of that claim

by determining whether or not summary judgment is appropriate.  *See Mack v. Resurgent Cap.*

*Servs., L.P.*, 70 F.4th 395, 402 (7th Cir. 2023) ("A grant of summary judgment is a decision on the

merits, but a court must dismiss the case without ever reaching the merits if it concludes that it has

no jurisdiction.")  The Court's rulings below are made with these principles in mind.

**B.      Claims Related to Actions in Indiana**

The Court first addresses which state's substantive law applies to CSXT's claims related to Zayo's actions in Indiana, near CSXT's tracks in Indiana.  A federal court sitting in diversity, as this Court does, must apply the choice of law provisions of the forum state.  *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice-of-law rules determine the applicable substantive law.").  The parties appear to agree that Indiana law applies to the claims related to Zayo's actions in Indiana.  [*See, e.g.*, Filing No. 428 at 16-20 and Filing No. 482 at 18-25 (parties addressing trespass to land claims related to Indiana tracks under Indiana law and trespass claims related to Illinois tracks under Illinois law).]  Absent a disagreement, the Court will apply Indiana law to claims related to sites in Indiana.  *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.  We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).").

  1.      *Trespass to Land and Rent Claims Related to Properties in Indiana for Which CSXT Possesses an Easement*

Zayo argues in support of its Motion for Partial Summary Judgment that CSXT's claims for civil trespass to land, criminal trespass, and rent as to locations in Indiana for which CSXT only possessed an easement fail because "CSXT does not possess the property in fee simple." [Filing No. 428 at 16.]  As for the civil trespass to land claim and the related claim for rent, Zayo argues that "[i]t is black letter law in Indiana that an action for trespass cannot be maintained for

an invasion of a right of way or easement." [Filing No. 428 at 16-17 (quotation and citation omitted).] Zayo asserts that CSXT has admitted that it cannot prove the first element of its civil trespass to land claim – ownership of the land – for 131 locations in Indiana, including "the [Jackson Street Location] that spurred this litigation." [Filing No. 428 at 17.] It contends that even if CSXT has a "rail corridor" easement, any exclusivity it may have to possess the surface right-of-way "does not extend beyond the surface where its railroad tracks run, let alone to the subsurface, where Zayo's underground installations are located." [Filing No. 428 at 17.] Zayo asserts that CSXT does not have standing to bring trespass claims as to properties for which it only has easements. [Filing No. 428 at 17.] Zayo argues that CSXT's criminal trespass claim under the ICVRA is similarly flawed because CSXT does not own the property for which it only has an easement. [Filing No. 428 at 18-19.]

In its response,[6] CSXT argues that ownership is not required for a civil trespass claim, but rather it need only "prove a right to the possession of the land." [Filing No. 482 at 19-20.] CSXT asserts that its easements are "exclusive and possessory," and more akin to a fee interest in the property. [Filing No. 482 at 20-23.] CSXT argues further that there is nothing in the ICVRA that

---

[6] The Court notes that CSXT did not respond to Zayo's arguments in the order in which Zayo presented them, and often addresses those arguments in a haphazard way. It is always the Court's preference – and indeed sound briefing practice – for a responding party to address the moving party's arguments in the order in which they were raised, but the Court has worked "all the live-long day" to discern CSXT's arguments in any event. THE SHANNON QUARTET, I'VE BEEN WORKING ON THE RAILROAD (Victor Records 1923). Additionally, the Court does not condone CSXT's use of 41 footnotes, containing font smaller than 12-point, in its response brief. Counsel should ensure that it is complying with the most recent version of the Court's Practices and Procedures, which are found on the Court's website. They provide that "[t]he Court does not deem information contained in footnotes as argument [and] counsel should include all argument in the body of the brief." It is also difficult not to view the use of this many footnotes, in tiny font, as a way to circumvent page limitations.

requires it to own the property at issue in order to succeed on a criminal trespass claim.  [Filing No. 482 at 18-19.]

In its reply, Zayo notes that CSXT's trespass claims are based on fiber optic cable only, which were either installed aerially (in the air, through which the cable passes over CSXT's right-of-way) or underground (in the subsurface, where the cable is buried).  It argues that CSXT "does not point to any instrument granting CSXT exclusive possession of the land beneath its right of way," and "provides no Indiana authority holding that railroad easements generally extend beneath the surface."  [Filing No. 505 at 9-10.]  Zayo argues further that CSXT has not shown that, in Indiana, a railroad can have exclusive possession by occupying subsurface areas, or that it used the subsurface at the depth where Zayo's fiber optic cable is installed.  [Filing No. 505 at 11.]  It reiterates its arguments as to CSXT's criminal trespass claim, asserting that CSXT cannot show that it uses the subsurface.  [Filing No. 505 at 11.]

a.      Civil Trespass to Land and Rent

As the Indiana Court of Appeals has explained:

It is settled law that in a trespass claim a plaintiff must prove that [it] was in possession of the land and that the defendant entered the land without right.  We are also mindful of the traditional rule that an action for trespass to real estate cannot be maintained for an invasion of a right of way or easement.  This rule is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land.

*Duke Energy of Ind., LLC v. City of Franklin*, 69 N.E.3d 471, 482-83 (Ind. Ct. App. 2016) (quotations and citations omitted).

CSXT primarily relies on cases from the 1800s or early 1900s in which courts have remarked that a railroad's easement is more than a typical easement, and that the railroad is closer to a fee-simple owner of the property.  *See, e.g., New Mexico v. U.S. Tr. Co. of N.Y.*, 172 U.S. 171, 182-83 (1898) (railroad easements are "surely more than an ordinary easement," and have the

- 17 -

"attributes of the fee"); *W. Union Tel. Co. v. Penn. R. Co.*, 195 U.S. 540, 570 (1904) (A railroad easement has "the attributes of the fee, perpetuity and exclusive use and possession."). CSXT argues that its interest in the property is "possessory." [Filing No. 482 at 22-23.] Even if the Court assumes that CSXT could maintain a civil trespass to land claim if it had an exclusive easement to the property at issue, "exclusivity should be clearly evidenced in the grant of the easement." *Bratton v. Yerga*, 588 N.E.2d 550, 554 (Ind. Ct. App. 1992). Here, CSXT has not pointed to the language of any specific easements – statutory or otherwise – indicating that they are exclusive. *See Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 760-63 (2000) (court considered specific deeds in order to determine whether corresponding grant to CSXT was a conveyance of a fee simple interest or an easement). To the extent documents reflecting some of those easements have been submitted as evidence, [*see* Filing No. 424-2 (exhibits to CSXT's interrogatory responses, including over 475 pages of legal descriptions of land, some of which appear to include easement language)], CSXT has not pointed the Court to any specific document or language supporting its position as required by Local Rule and it is not the Court's responsibility to conduct its own search. *See Grant*, 870 F.3d at 572-73 (court need not "scour the record" for evidence that is potentially relevant) (quotations omitted).

But even if the easements should be considered something more than typical easements under Indiana law based on the fact that they are held by a railroad company, the cases upon which CSXT relies did not consider whether whatever interest the railroad had in the property ran through the subsurface and into the air above the tracks. The Indiana Supreme Court has found, however, that a property owner could run pipes beneath railroad tracks to carry spring water, despite the "practically exclusive" right of the railroad company to the "possession of the surface of the right of way," because there was no "practical interference with the company's exclusive possession of

the appropriated strip on which the stream is now flowing." *Cleveland, C., C. & St. L. Ry. Co. v.*
*Smith*, 97 N.E. 164, 172-73 (Ind. 1912).  It has also found that an electric company could install
electrical lines underneath railroad tracks.  *N.Y. Cent. R. Co. v. Yarian*, 39 N.E.2d 604, 607 (Ind.
1942) ("[A]s gas for fuel, telephones, and electricity came into use, the easements were construed
as intended to be broad enough to permit the laying of pipes and the installation of poles and wires,
upon, and under the streets and highways, and it was concluded that such a use cast no burden
upon the fee beyond that which was contemplated and paid for in the original taking.").

These cases demonstrate a holding by the Indiana Supreme Court that even if CSXT is
entitled to exclusive use of the surface of the land, that entitlement does not equate to exclusive
use of the subsurface below that land or the air above that land – the only places where Zayo
installed fiber optic cable.  The Court acknowledges CSXT's position that its tracks need not have
been physically damaged in order for it to have suffered damages, but CSXT has not provided any
evidence showing that Zayo's installations prevented it from using its tracks in Indiana; in other
words, CSXT has not provided any proof that Zayo interfered with CSXT's exclusive right to the
surface of the land.  And interference with use is a separate issue.  CSXT relies on its "possessory"
interest in the land over which its tracks run in its claims for civil trespass to land and rent, yet has
not shown that its possessory interest was affected by Zayo's installations.  This is fatal to its civil
trespass to land and rent claims.

The Court finds that CSXT does not have standing to assert its civil trespass to land claim
(Count V) and rent claim (Count VIII) related to Zayo's actions in Indiana on properties for which

CSXT has an easement and, consequently, that the Court does not have subject-matter jurisdiction over those claims. The Court **DISMISSES** those claims **WITHOUT PREJUDICE**.[7]

> b. <u>Criminal Trespass</u>

CSXT's criminal trespass claim is based on the ICVRA, Indiana Code § 35-43-2-2, which provides that "[a] person who…knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent …commits criminal trespass, a Class A misdemeanor." Ind. Code § 35-43-2-2(b)(4).[8] CSXT seeks damages under the ICVRA, which are available when "a person…suffers a pecuniary loss as a result of a violation of [Ind. Code §] 35-43," and allows the award of treble damages, attorneys' fees and costs, and other damages. Ind. Code § 34-24-3-1.

The parties dispute whether § 35-43-2-2(b)(4) requires that the plaintiff be the "owner" of the property, with Zayo arguing that it must be and CSXT arguing that Zayo impermissibly reads this requirement into the statute. The Court follows one of the paramount rules of statutory construction, "that undefined words and phrases in a statute are given their plain, ordinary and usual meaning." *Planned Parenthood of Ind. v. Carter*, 854 N.E.2d 853, 866 (Ind. Ct. App. 2006) (quotation and citation omitted). In doing so, it finds that "the property of another person" means "the property that the other person owns." The Court is unsure what else the phrase "the property of another person" could mean, and it would be nonsensical for the provision to apply to property that the person does not own. *See Escalera v. State*, 2024 WL 111961, at *2 (Ind. Ct. App. Jan.

---

[7] A dismissal for lack of jurisdiction is without prejudice. *See Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 661 (7th Cir. 2011).

[8] CSXT does not specify in the Third Amended Complaint which provision of Ind. Code § 35-43-2-2 its criminal trespass claim is based upon, but sets forth allegations consistent with subsection (b)(4), [*see* Filing No. 210 at 41], and refers to subsection (b)(4) in its response brief, [*see* Filing No. 482 at 18]. Accordingly, the Court analyzes CSXT's criminal trespass claim under that provision.

10, 2024) (noting that a conviction under Ind. Code § 35-43-2-2(b)(1), which contains the same "property of another person" language as subsection (b)(4), required showing that defendant "knowingly or intentionally entered the real property of another person after being denied entry by either the *property owner* or the *owner's* agent") (emphasis added); *D.W. v. State*, 2018 WL 3450731, at *4 (Ind. Ct. App. July 18, 2018) (stating that conviction under Ind. Code § 35-43-2-2(b)(4) required showing that defendant had interfered with the possession or use of a van without "the *owner's* consent") (emphasis added).

Having made that finding, the same analysis that the Court set forth above relating to CSXT's civil trespass to land claim applies with equal force to the criminal trespass claim. For properties for which CSXT only holds an easement, CSXT has not shown that it had a possessory interest in the subsurface or the air above its tracks.[9] Accordingly, the Court finds that CSXT does not have standing to assert its criminal trespass claim (Count I) related to Zayo's actions in Indiana on properties for which CSXT has an easement and, consequently, that the Court does not have subject-matter jurisdiction over that claim. The Court **DISMISSES** that claim **WITHOUT PREJUDICE**.

   2.   *Trespass and Rent Claims Related to Properties in Indiana Where Zayo's Fiber Optic Cable Is Installed in a Public Road Right-of-Way*

Zayo argues in support of its Motion for Partial Summary Judgment that some of its installations were made within the boundaries of public road rights-of-way, so CSXT cannot show

---

[9] CSXT points to Ind. Code § 35-43-2-2(h)(6), which exempts from subsection (b) "[a] person [or its agent or independent contractor] going on a railroad's right-of-way for the purpose of crossing at a private crossing site approved by the railroad carrier to obtain access to land that the person owns, leases, or operates." It argues that this exception would not be necessary if "a railroad right of way (e.g., a railroad corridor easement) is incapable of being trespassed upon." [Filing No. 482 at 19.] But CSXT's argument does not change the Court's conclusion because CSXT still has not shown that any easements it has extend beyond the surface of the ground and into the subsurface and the air above the tracks.

that Zayo's entry upon the land was unauthorized as required for its civil trespass to land claim. [Filing No. 428 at 20.]  Zayo refers specifically to the Public Road Installation, but also to "others like it." [Filing No. 428 at 20-21.]  It relies on *Louisville & Ind. R.R. Co. v. Indiana Gas Co., Inc.*, 829 N.E.2d 7 (Ind. 2005), arguing that the Indiana Supreme Court found that a gas company could install its equipment beneath a public right-of-way and a railroad company could not recover for trespass.  [Filing No. 428 at 20-21.]

In its response, CSXT argues that Zayo "has made absolutely no showing as to any purportedly undisputed material fact on whether its installations were 'within the confines of a public road' – except for its attempt at [the Public Road Installation]." [Filing No. 482 at 30.]  It asserts that the public right-of-way in the *Indiana Gas* case was outside of a municipality and the statute at issue in that case only applies to public roads and highways outside of municipalities, but the public road right-of-way in this case is within a municipality.  [Filing No. 482 at 30.]  CSXT argues that *Indiana Gas* also only applies if an entity consults with the railroad about its installation, and that Zayo has not shown that it consulted with CSXT regarding the Public Road Installation.  [Filing No. 482 at 30.]  CSXT contends that if the Court "endorses Zayo's selective reading of *Indiana Gas*," then federal preemption applies because a state court case "cannot authorize actions that run afoul of federal law by interfering with current or future railroad operations or posing undue safety risks to CSXT's federally regulated rail operations." [Filing No. 482 at 31.]  It argues that the Interstate Commerce Commission Termination Act ("ICCTA") preempts any state's action that "would deprive railroads of the right to fully possess and utilize their railroad right-of-ways for rail purposes – including Zayo's attempt to rely on *Indiana Gas* to ignore CSXT's reasonable permitting processes and instead trespass on CSXT's operating railroad right of ways for the purpose of installing fiber optic cable." [Filing No. 482 at 33.]  CSXT claims

- 22 -

that allowing Zayo's unauthorized installation at a public right-of-way affects its ability to "undertake future rail expansion efforts, including the potential installation of second or 'double track' in the future," and constrains its ability to use the right-of-way "for current and planned rail operations." [Filing No. 482 at 34.]  Finally, CSXT argues that the ICCTA preempts state law claims that "pose undue safety risks," and that Zayo's unauthorized installations present a "danger of interference." [Filing No. 482 at 35-36.]

   In its reply, Zayo argues that *Indiana Gas*'s application is not limited to rights-of-way outside of a municipality and that the Indiana Supreme Court has rejected distinctions between utility installations in urban versus rural areas.  [Filing No. 505 at 14.]  It notes that it referred to the Public Road Installation as a representative example of an installation within a public road right-of-way.   [Filing No. 505 at 14.]   Zayo argues that CSXT's preemption argument is "perplexing" since CSXT brings state law tort claims and "now seeks to 'preempt' Zayo from asserting a state law defense sanctioned by the state's Supreme Court." [Filing No. 505 at 14.] Zayo contends that the cases CSXT relies upon involved a complete taking of railroad property, and that here CSXT still has access to its own property and the rights-of-way.  [Filing No. 505 at 15.] Zayo argues that CSXT has not submitted any facts showing that the installations themselves present an undue safety risk.  [Filing No. 505 at 16.]

   In *Indiana Gas*, the Indiana Supreme Court considered whether the installation of gas pipelines which crossed tracks owned by a railroad and that rested on a public road right-of-way constituted trespass for which the gas utility owed rent.  829 N.E.2d at 8-9.  It found that installation of the gas pipelines was authorized and did not constitute trespass under a statute allowing public utilities to construct their fixtures along, under, and across public roads outside of municipalities "as long as they do not interfere with the ordinary and normal public use of the roadway," Ind.

- 23 -

Code § 8-20-1-28, and also under *Fox v. Ohio Valley Gas Corp.*, 235 N.E.2d 168 (Ind. 1968). *Indiana Gas*, 829 N.E.2d at 11. In *Fox*, the Indiana Supreme Court found that a gas utility company could lay a pipeline along a public road right-of-way without trespassing on the owner's property, stating that "we find no basis for a distinction to be made between city streets and rural highways as to the use of utility facilities therein and thereon." *Fox*, 235 N.E.2d at 173.

The Court acknowledges that § 8-20-1-28 applies only to land located outside of a municipality and that the Public Road Installation is within a municipality. But the Indiana Supreme Court in *Indiana Gas* also based its decision on its prior opinion in *Fox*, in which it clearly stated that its decision was not based on whether the right-of-way was in a rural or urban setting. The Court finds that *Indiana Gas* is no less applicable to this case simply because the right-of-way at the Public Road Installation – and perhaps at other sites – is within a municipality.[10]

As to CSXT's preemption argument, it is indeed curious that CSXT asserts state law claims in this case but takes issue with Zayo reciprocally raising a state law defense in response. Putting aside that inconsistency, the Court finds that preemption does not apply in any event. The preemption cases that CSXT relies upon all involved situations where the allegedly unauthorized act either rendered the property unusable by the railroad or it was unclear whether that was the case. *See, e.g.*, *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206 (4th Cir. 2021) (involved quiet title claim that would "exclude [the railroad] from the land at issue"); *Wis. Cent. Ltd. v. City of*

---

[10] The Court also rejects CSXT's argument that *Indiana Gas* does not apply because Zayo did not consult with it regarding the installations. The Indiana Supreme Court stated in *dicta* in *Indiana Gas* that "consultation about the nature and timing of construction at [railroad] intersections is obviously in the best financial interest of all concerned (as utility company signs sometimes say, 'Call before you dig.')." 829 N.E.2d at 12. The Court does not read this statement as standing for the proposition that the holding of *Indiana Gas* only applies if Zayo consulted with CSXT regarding the installations. CSXT's argument to the contrary goes the "wrong way on a one-way track." Soul Asylum, Runaway Train (Columbia 1993).

*Marshfield*, 160 F. Supp. 2d 1009 (W.D. Wis. 2000) (involved condemnation claim); *see also*

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) ("[F]ederal law

preempts state-law efforts against railroads to treat railroad rights-of-way as abandoned or lost

through adverse possession.").[11]   This case is significantly different because CSXT has not

provided any evidence that Zayo's installations on public road rights-of-way have the effect of

precluding CSXT from using its tracks or property on those rights-of-way.

Indeed, in a case much closer to this one, a federal court found that the ICCTA did not

preempt a state law condemnation claim related to an aerial installation above a railroad track that

did not interfere with the railroad's use of its tracks and equipment, and that therefore the court did

not have federal question jurisdiction.   The court stated:

> The aerial easement sought by Zayo does not cross over the railroad tracks; it
> merely runs parallel to the track for less than a mile.   The easement is nonexclusive.
> It does not require placement of new telephone poles or any other structural
> changes.   The only argument [the railroad] offers as to how the aerial easement
> might burden the railroad hinges on a speculative future scenario where the
> telephone poles need to be moved to accommodate a shift in the rail lines and Zayo
> refuses to agree to a corresponding shift in the wires.   A hypothetical future
> inconvenience does not resemble the clear, present, and tangible impacts [that
> constitute] an undue burden.

*Zayo Grp., LLC v. Norfolk S. Ry. Co.*, 2022 WL 243897, at *3 (M.D. Pa. Jan. 25, 2022).

As noted above, CSXT has not provided any evidence that Zayo's installations have

affected its ability to use its tracks or property at any sites other than the Montrose Street Location

– and certainly not at the Public Road Installation or any other sites where Zayo's installations

---

[11] CSXT also relies on *Zayo Grp., LLC v. Norfolk S. Ry. Co.*, 2022 WL 3273906 (E.D. Va. Mar.
22, 2022), *rev'd*, 2023 WL 8230499 (4th Cir. Nov. 28, 2023), which involved a condemnation
proceeding.   But shortly after CSXT relied on it, the Fourth Circuit reversed the district court's
decision, finding that the condemnation proceeding did not involve action that "manages rail
transportation or even immediately impacts the railroad."   *Zayo Grp., LLC v. Norfolk S. Ry. Co.*,
2023 WL 8230499, at *5 (4th Cir. Nov. 28, 2023) (quotation omitted).

were on a public road right-of-way.  Accordingly, the Court finds that the ICCTA does not preempt

Zayo's defense that it was permitted to make installations on a public road right-of-way. [12]

Under *Indiana Gas* and *Fox*, the Court finds that CSXT's trespass and rent claims related

to Zayo's installations in Indiana on public road rights-of-way – including but not limited to, the

Public Road Installation – fail as a matter of law.  The Court **GRANTS** Zayo's Motion for Partial

Summary Judgment as to CSXT's civil trespass to land, criminal trespass, and rent claims (Counts

I, V, and VIII) related to Zayo's installations in Indiana on public road rights-of-way.

### 3.    *Lack of Damages for Criminal Deception Claim*

In support of its Motion for Partial Summary Judgment, Zayo argues that the ICVRA only

permits recovery for criminal deception where the plaintiff "suffers a pecuniary loss as a result of"

the defendant's violation of various criminal statutes.  [Filing No. 428 at 26 (quotation and citation

omitted).]  It contends that CSXT cannot show that Zayo's allegedly false statements that form the

basis of the criminal deception claim caused any harm to CSXT.  [Filing No. 428 at 26.]  Zayo

states that CSXT's claim for criminal deception is based on "statements that Zayo employees made

to CSXT when attempting to negotiate a Facility Encroachment Agreement for [the Jackson Street

Location], an agreement the parties undisputedly never signed."  [Filing No. 428 at 26.]  It also

argues that the allegedly false statements "largely relate to the proposed installation's location in

the public road right of way, a fact CSXT admits has no bearing on its engineering or permitting

process."  [Filing No. 428 at 26-27.]

---

[12] CSXT also argues that the ICCTA preempts state law claims where the activities at issue "pose
undue safety risks."  [Filing No. 482 at 35 (quotation and citation omitted).]  CSXT points only to
cases from outside of the Seventh Circuit which are not binding on this Court and, in any event,
CSXT has not provided evidence that Zayo's installations pose concrete safety risks.

In response, CSXT argues that "Zayo's written false and misleading statements caused CSXT injury in the form of wasted time," which "is recognized as a pecuniary loss." [Filing No. 482 at 25.]

Zayo argues in its reply that CSXT's Real Estate Analyst's declaration that she "spent 30 hours responding to and refuting Zayo's assertion that its installation at Jackson St. was in the public road right of way" is contradicted by other testimony from CSXT's witnesses that "whether or not a utility's location in a public road right of way makes no difference to CSXT in processing its application." [Filing No. 505 at 19-20.]

The ICVRA provides that a person who "suffers a pecuniary loss as a result of a violation of [certain provisions of the ICVRA] may bring a civil action against the person who caused the loss." Ind. Code § 34-24-3-1. While the ICVRA does not define "pecuniary," the Seventh Circuit has stated that "[p]ecuniary loss is considered a loss of money, or of something by which money, or something of money value may be acquired." *Veach v. Sheeks*, 316 F.3d 690, 694 (7th Cir. 2003) (quotations and citations omitted). CSXT's criminal deception claim is based on its allegations that Zayo representatives told CSXT representatives that Zayo's installation at the Jackson Street Location was within the public road right-of-way when, in fact, it was not. [*See* Filing No. 482 at 4-5.] The only injury CSXT claims is that Anne Murphy, a current CSXT Real Estate Analyst and former CSXT Real Estate Specialist, generally worked forty hours per week during a typical week, was paid a full-time salary, estimates that Zayo's allegedly false statements "caused [her] to waste a minimum of thirty (30) hours of [her] time," and could have spent the wasted thirty hours "attending to [her] job duties as a Real Estate Specialist." [Filing No. 467 at 2.]

The Court finds that Ms. Murphy spending thirty hours related to Zayo's alleged misrepresentations is not the type of pecuniary loss the ICVRA was meant to redress.  Ms. Murphy was a salaried employee at that time, [Filing No. 467 at 2], and CSXT paid her the same amount regardless of what she was working on.  She does not contend that she did not complete other work due to devoting time to Zayo's alleged misrepresentations and that CSXT had to pay someone else to complete that work, or that CSXT somehow had to pay her extra due to Zayo's alleged misrepresentations.  While it is conceivable that "wasted time" could constitute pecuniary loss – for example, if Ms. Murphy was paid on an hourly basis – CSXT has not pointed to any caselaw standing for the proposition that a business suffers pecuniary loss where its salaried employee performs tasks that are part of her job.

Further, CSXT's own witnesses testified that whether an installation is in a public road right-of-way is not relevant to the licensing process.  [*See* Filing No. 424-4 at 9 (Alex Saar, CSXT's Senior Manager of Corridor Services, testifying that "the location of [a] public road right-of-way is irrelevant to [CSXT] in [the] permitting process"); Filing No. 424-7 at 11 (Catherine Adkins, CSXT's Director of Real Estate, Corridor Services, testifying that the scope of a public road right-of-way is not relevant to the "assessment of [an] application for a license agreement").]  In addition to the lack of any pecuniary harm, the testimony of Mr. Saar and Ms. Adkins calls into serious question the notion that Zayo's allegedly false statements required Ms. Murphy to spend thirty hours of time to investigate those statements.

CSXT's lack of damages as to its criminal deception claim means that it does not have standing to assert that claim.  Accordingly, the Court does not have subject-matter jurisdiction over that claim, and **DISMISSES** it **WITHOUT PREJUDICE**.

4.    *Lack of Damages for Railroad Mischief Claim*

Zayo argues in support of its Motion for Partial Summary Judgment that Indiana's railroad mischief statute, Ind. Code § 35-43-1-2.3, "only penalizes damage to specific railroad equipment, as identified in the statute," but that CSXT has only produced evidence of physical damage to its equipment at the Montrose Street Location in Illinois. [Filing No. 428 at 27.] It asserts that CSXT has admitted that Zayo's installations have not caused injury, accidents, or derailments, and that CSXT's claim that the installations have devalued its equipment does not fall within the language of § 35-43-1-2.3. [Filing No. 428 at 27-28.] Zayo states that "[w]ere the Court to interpret [§ 35-43-1-2.3] as broadly as CSXT seeks, any homeowner living within 1,000 feet of a rail corridor who wishes to install underground infrastructure on their property would be in violation of the statute." [Filing No. 428 at 28.]

In its response, CSXT argues that § 35-43-1-2.3 does not contain the word "physically" before the word "damage," and that "[t]hree general-language dictionaries provide the following definition of 'damage': to lessen the soundness, goodness, or value of; [to] impair[ ] [or reduce] the usefulness or value of…property." [Filing No. 482 at 26-27 (emphasis and citations omitted, brackets in original).] CSXT contends that it has "submitted voluminous sworn testimony showing a genuine dispute of material fact as to the damage caused by Zayo's incursions upon CSXT Railroad Property across Indiana." [Filing No. 482 at 27.]

Zayo argues in its reply that CSXT's construction of § 35-43-1-2.3 is "absurd" and "would mean that any individual who hangs an aerial cable line on their property can be committing a crime, if the line is located within a thousand feet of a railroad bridge, or anywhere…around a railroad signal system." [Filing No. 505 at 21 (quotation and citation omitted).]

Section 35-43-1-2.3 provides:

A person who, without the consent of the owner of the property, recklessly, knowingly, or intentionally damages or defaces:

> (1) a locomotive, a railroad car, a train, or equipment of a railroad company being operated on a railroad right-of-way;
>
> (2) a part of any railroad signal system, train control system, centralized dispatching system, or highway railroad grade crossing warning signal on a railroad right-of-way owned, leased, or operated by a railroad company; or
>
> (3) any rail, switch, roadbed, viaduct, bridge, trestle, culvert, or embankment on a right-of-way owned, leased, or operated by a railroad company;

commits railroad mischief, a Level 6 felony.

Ind. Code § 35-43-1-2.3.

There are no reported cases discussing § 35-43-1-2.3.  The key dispute is whether the statute requires physical damage – as asserted by Zayo – or merely a lessening of the soundness, goodness, or value of; or an impairment or reduction in the usefulness or value of the railroad property – the definition proposed by CSXT but heretofore unrecognized in the law.  It appears to be undisputed that CSXT has only suffered concrete damage to its property at the Montrose Street Location in Illinois.  [*See* Filing No. 424-4 at 5-6.]  As for the hundreds of other sites for which CSXT claims it was injured, it argues, consistent with its proffered definition of damage, that the very presence of Zayo's fiber optic lines have "lessen[ed] the soundness, goodness or value of," or "impair[ed] or reduce[d] the usefulness or value of" its property.  [*See* Filing No. 482 at 27.]  But CSXT's definition of "damage" is cut out of whole cloth.  It is cobbled together from definitions of "damage" found in three different dictionaries, and CSXT does not point to any legal authority supporting the definition it proposes.  Its proposed definition appears to be designed to cover some

vague reduction in the value of the property based on the very presence of Zayo's fiber optic lines, even where those lines have not caused any tangible injury.

But even using CSXT's definition, it still would be required to show that the soundness, goodness, value, or usefulness of its property has somehow decreased.  Instead, it has only shown – save for the Montrose Street Location – that such a diminution in soundness, goodness, value, or usefulness *could* occur somewhere down the road.  This definition directly contradicts Article III's requirement that CSXT must show that it has suffered a concrete and particularized injury that is actual or imminent, and not conjectural or hypothetical.  *Spokeo*, 578 U.S. at 338-39.

Additionally, CSXT's proposed definition is too broad to accurately reflect the purpose of the statute.  For example, if an installation of an aerial wire were completed in accordance with CSXT's internal policies and procedures, it might still technically reduce the usefulness of the property because it might impair the ability to use the tracks for transporting something at some point in the future that would be tall enough to hit the aerial installation.  In that scenario, even if the installer of the aerial wire had complied with all guidelines, it would still be guilty of a Level 6 felony under CSXT's reading of the statute.  CSXT's definition of "damage" is also vague and subjective.  It includes the term "goodness," but the Court is not sure what "goodness" means when applied to railroad tracks or equipment.

Finally, the Court has granted Zayo's Motion to Exclude the testimony of CSXT's expert, Alex Saar, in part because Mr. Saar's opinions as to CSXT's damages are speculative.  This is the only evidence upon which CSXT relies to show that is has been damaged at locations other than

Montrose Street.[13]  While the Court has excluded Mr. Saar's testimony, it addresses that evidence to show how CSXT's definition of damages directly conflicts with the requirement that CSXT have suffered some type of concrete and particularized damage to have standing to bring many of its claims.  For example, Mr. Saar opines that CSXT was damaged at the Jackson Street Location because "[a]n issue could arise" as to Zayo's installation that "directly traverses CSXT's culvert" and that "the integrity of the culvert is in question."  [Filing No. 548-1 at 38-39.]  But Mr. Saar does not state that any tangible, concrete damage has occurred to date.  He also opines that Zayo installed handholes too close to the rails at the Jackson Street Location, making it impossible for CSXT to stockpile rail ties or other materials when performing maintenance, but does not state that CSXT has tried to stockpile rail ties or even has any plans to stockpile rail ties.  [Filing No. 548-1 at 40-41.]  In short, CSXT's definition of damage and its failure to show that any concrete physical damage has occurred at any sites in Indiana flies in the face of the requirement that a party must have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. at 338-39 (quotations and citation omitted).

Because CSXT has not shown that any of its railroad equipment in Indiana has been physically damaged, the Court finds that CSXT does not have standing to assert its criminal mischief claim and, consequently, that the Court does not have subject-matter jurisdiction over

---

[13] CSXT has had ample opportunity to demonstrate that it has suffered actual damages in response to Zayo's arguments challenging CSXT's ability to satisfy the damages elements of its claims, [*see, e.g.*, Filing No. 482 at 27 (CSXT arguing that it "has submitted voluminous sworn testimony showing a genuine dispute of material fact as to the damage caused by Zayo's incursions upon CSXT Railroad Property across Indiana")], so the Court conducts its standing analysis without further argument.  The voluminous sworn testimony is based upon the Saar report which the Court has stricken.

that claim.  The Court **DISMISSES WITHOUT PREJUDICE** CSXT's criminal mischief claim (Count II).

             5.      *Claims Where Zayo's Installations Were Authorized by Contract*

Zayo argues in support of its Motion for Partial Summary Judgment that at five locations in Indiana, there is no dispute that the fiber at issue is in another company's conduit and that the other company was authorized to install the conduit in another railroad's corridor.  [Filing No. 428 at 28.]

In its response, CSXT asserts that "Zayo's installations at…[sites] 18089 0056, and 18089 0060 are upon CSXT Railroad Property and they were never authorized by CSXT.  Summary judgment cannot enter as to these sites."  [Filing No. 482 at 36 (citation omitted).]

Zayo argues in its reply that CSXT only addresses two of the five locations, so summary judgment should enter for the three locations that CSXT did not address.  [Filing No. 505 at 21.] As to the two locations that CSXT did address, Zayo argues that "CSXT does not dispute that Zayo had authorization from another railroad.  By CSXT's own reasoning, even [if] the other railroad only has a right of way over the property, it has exclusive possession and is authorized to grant permission to Zayo's use."  [Filing No. 505 at 21 (citations omitted).]

As to the three sites which CSXT does not address in its response brief, the Court finds that CSXT has waived any argument in opposition to Zayo's assertion that its installations were authorized by contract.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.").  The Court **GRANTS** Zayo's Motion for Partial Summary Judgment as to all claims related to those sites – 17031 0084, 18097 0081, and 18127 0020.

As for the remaining two sites – 18089 0056 and 18089 0060 – CSXT relies on a Report from Elizabeth Harper, CSXT's Senior Real Estate Supervisor and a designated expert, in which she states that Zayo's installations at the two sites are on CSXT property and not on the property of a different rail company which provided permission to Zayo's predecessor to install fiber optic lines. [*See* Filing No. 466 at 50-54.] Zayo submits testimony from Zayo's Head of Strategic Global Network Operations, Dana Costa, who previously worked for a contractor that performed fiber installations at those two sites. [Filing No. 420-2.] She states that she has reviewed the drawings from the previous installation and that "[t]hese drawings show that the…fiber installation is in [a subsidiary of Norfolk Southern Railroad's] conduit and in Norfolk Southern's rail corridor." [Filing No. 420-2 at 3.]

Because there is a dispute of fact regarding whether the fiber optic cable is installed on Norfolk Southern or CSXT property, the Court **DENIES** Zayo's Motion for Partial Summary Judgment as to sites 18089 0056 and 18089 0060.

### 6.    *Unjust Enrichment Claim*

Zayo argues in its Motion for Partial Summary Judgment that CSXT's unjust enrichment claim fails as a matter of law because such a claim requires the plaintiff to have rendered a benefit to the defendant for which the defendant did not pay, and "CSXT does not claim that it rendered a benefit to Zayo at its request with the expectation of payment[;]…. Instead, it alleges that Zayo appropriated its property in secret and without authorization." [Filing No. 428 at 32.] Zayo argues further that CSXT's unjust enrichment claim fails because CSXT has an adequate remedy at law through CSXT's trespass and rent claims, which "are based on the identical conduct as its unjust enrichment claim." [Filing No. 428 at 33.]

In its response, CSXT argues that an unjust enrichment claim is viable where "the plaintiff is unaware it was involuntarily conferring a benefit." [Filing No. 482 at 14-15.]  It asserts that "Zayo does not challenge the fact that it wrongfully obtained CSXT's property and resold it for a profit, or that it secured a benefit directly at CSXT's expense.  Rather, Zayo takes refuge in the fact that it did so 'in secret.'" [Filing No. 482 at 15.]  It argues that genuine issues of material fact exist regarding whether CSXT "rendered a benefit to Zayo at its request with the expectation of payment." [Filing No. 482 at 16.]  CSXT also argues that tort claims can proceed with an unjust enrichment claim and the Court should allow CSXT to elect whether it will proceed under its trespass or unjust enrichment claim after a jury verdict. [Filing No. 482 at 16-17.]  CSXT notes that Zayo has argued that CSXT's recovery for its trespass claim is limited to nominal damages because CSXT has not pointed to any specific physical damage or diminution in value, which "threatens the adequacy at law of CSXT's remedies for civil trespass." [Filing No. 482 at 18.]

Zayo argues in its reply that CSXT does not refute that it seeks the same damages for its trespass and unjust enrichment claims, or that those claims are based on the same conduct. [Filing No. 505 at 7.]  Zayo contends that CSXT "does not have a better claim to Zayo's profits than Zayo does"; and that the sites CSXT focuses on in its response involved installations in a public right-of-way, for which CSXT was not entitled to a fee. [Filing No. 505 at 7-8.]  As to the unjust enrichment claim being duplicative of the trespass claim, Zayo asserts that the fact that "civil trespass does not offer the entire profits damages remedy CSXT wishes does not compel the court to provide it a windfall via equity," and that "CSXT does nothing to refute that equity at best will provide CSXT damages in an amount not to exceed what it would recover at law." [Filing No. 505 at 8-9.]  It argues that the unjust enrichment claim "should be dismissed or confined to mirror CSXT's trespass claim." [Filing No. 505 at 9.]

In order to succeed on a claim for unjust enrichment, a plaintiff must show that: "(1) [it] rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) [it] expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust." *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016). CSXT relies upon Zayo's installations at three sites – CSX835536 (341481L), CSX835717 (540174L), and CSX865910 (539186J). [*See* Filing No. 482 at 16 (CSXT arguing in its response brief that there are genuine disputes of material fact regarding whether it rendered a benefit to Zayo at its request with the expectation of payment and citing to "SDF §2," which only discusses those three sites).] Zayo cites to a section in its reply brief in arguing that the three sites involved installations in a public right-of-way, but the section to which it refers the Court does not discuss those three sites. [*See* Filing No. 505 at 8 (citing to "*infra* Section IV.A.," which only specifically discusses "Site 18051 0003").]

The Court finds that a genuine issue of material fact exists regarding whether CSXT rendered a benefit to Zayo for which it expected payment, but only as to those 3 sites. Indeed, this entire litigation is about CSXT's claim that it was entitled to payment for Zayo's installations and that Zayo did not pay.

As to whether the unjust enrichment claim fails because it is duplicative of the trespass claim, the Court notes that CSXT seeks the same relief (rent and disgorgement) for the same conduct (allegedly installing fiber optic cable on CSXT's property) in connection with both its trespass to land and unjust enrichment claims. "Indiana law only permits recovery under the equitable principle of unjust enrichment when no adequate remedy at law exists." *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1065 (S.D. Ind. 2011) (citing *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004)). Additionally, "if an unjust enrichment claim rests on the

same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). For sites where the Court has not granted summary judgment on CSXT's trespass to land and rent claims, an adequate remedy at law exists through those claims and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment as to the corresponding unjust enrichment claims. For sites where the Court has found that CSXT lacks standing and has dismissed CSXT's trespass to land and rent claims (*e.g.*, where the installation was at a site for which CSXT has an easement), the Court **DISMISSES** the corresponding unjust enrichment claims **WITHOUT PREJUDICE**. For sites where the Court has granted summary judgment in favor of Zayo on the trespass to land and rent claims (*e.g.*, because the installation was on a public road right-of-way), CSXT's corresponding unjust enrichment claims fail and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment on the unjust enrichment claims related to those sites.

### 7. *Disgorgement Damages*

In its Third Amended Complaint, CSXT requests that Zayo "shall make restitution and disgorge its unjust gain." [Filing No. 210 at 53.] In support of its Motion for Partial Summary Judgment, Zayo argues that "CSXT's primary damages theory in this case is that it may disgorge Zayo's profits stemming from its alleged incursions on to its rail corridor and, in particular, that it may seek all of Zayo's revenues flowing from its entire fiber optic network in Indiana and Illinois," and that "this theory of recovery is not endorsed by either state's law." [Filing No. 428 at 28-29.] Zayo seeks summary judgment on CSXT's request for disgorgement in connection with all of

CSXT's claims, but only addresses CSXT's trespass and unjust enrichment[14] claims as possible bases for the disgorgement component of the damages that CSXT seeks.  CSXT, for its part, argues that it can seek disgorgement in connection with its theft/conversion claim.

a.      Disgorgement Based on Trespass Claims

Zayo argues that the proper measure of damages for a trespass claim is "the depreciation in the market value of the land occasioned by the appropriation or trespass."  [Filing No. 428 at 29 (quotation and citation omitted).]  It contends that disgorgement is only appropriate "where the trespasser removes something of value from the plaintiff's land (i.e., coal or timber) and then sells the item for profit."  [Filing No. 428 at 30.]  Zayo cites cases which it claims stand for the proposition that disgorgement is not a proper measure of damages for trespass by a utility onto railroad property.  [Filing No. 428 at 30-31.]

In response, CSXT argues that "there is a genuine dispute of material fact that precludes the entry of summary judgment" on the issue of whether Zayo removed anything from CSXT's land and sold it for profit.  [Filing No. 482 at 13.]  It relies generally on Restatement (Third) of Restitution and Unjust Enrichment § 40 for the proposition that "[a] person who obtains a benefit by an act of trespass or conversion…is liable in restitution to the victim of the wrong."  [Filing No. 482 at 11.]  It contends that Zayo removed "bandwidth capacity" from CSXT's land, which is considered "property" under Ind. Code § 35-31.5-2-253, a provision in the Indiana Criminal Code. [Filing No. 482 at 13.]

---

[14] The Court need not discuss whether disgorgement is available for CSXT's unjust enrichment claim since it has granted Zayo's Motion for Partial Summary Judgment as to that claim.  In any event, CSXT did not respond to Zayo's argument that disgorgement is not an appropriate remedy for unjust enrichment, so has waived any opposition to that argument.  *Bonte*, 624 F.3d at 466.

In its reply, Zayo asserts that CSXT relies on § 40 of the Restatement (Third) of Restitution and Unjust Enrichment, but does not provide any caselaw showing that Indiana has adopted that section of the Restatement.  [Filing No. 505 at 3-4.]  It argues that CSXT "does not refute that, in Indiana…, courts only allow for disgorgement where a defendant took a tangible property feature away from the land," and that it does not provide any legal authority extending the Indiana Criminal Code's definition of "property" to include intangibles in the trespass context.  [Filing No. 505 at 4 (emphasis omitted).]

The Indiana Court of Appeals has explained that the measure of damages for trespass is "the difference between the fair market value of the property before and after the injury" where the injury is permanent, and "the cost of repair" where the injury is temporary.  *Dow v. Hurst*, 146 N.E.3d 990, 995 (Ind. Ct. App. 2020).  "[D]isgorgement is not a punishment but rather an equitable form of relief."  *State ex rel. Ind. St. Bar Ass'n v. United Fin. Sys. Corp.*, 926 N.E.2d 8, 18 (Ind. 2010) (quotation and citations omitted).  CSXT has not pointed to any Indiana legal authority indicating that a party can recover disgorgement in connection with a trespass claim, and the Court has not located any.  Therefore, in considering the issue, the Court "must…predict how Indiana's highest court would decide the issue."  *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 605 (7th Cir. 2017).  In doing so, a federal court "should not choose the alternative that requires us to predict a change or an expansion in extant state legal doctrine."  *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1020 (7th Cir. 2024) (quotation and citation omitted).

CSXT's attempt to receive disgorgement for a trespass to its property is a trestle too far and the Court declines to stretch Indiana law to fit CSXT's theory of recovery.  Even if the Court considered the removal of bandwidth capacity as a result of Zayo's cables to be CSXT's "property" for purposes of its trespass claims – a novel theory – CSXT still has not provided any legal

authority that the appropriate measure of damages would be to disgorge all of Zayo's profits from its entire line through Indiana since the installations took place.  There is simply no basis under Indiana law for recovering disgorgement for a trespass claim, and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment to the extent that it finds that CSXT may not receive disgorgement in connection with its trespass claims under Indiana law.

b.      Disgorgement Based on Theft/Conversion Claim

Zayo does not discuss disgorgement in connection with CSXT's theft/conversion claim in its Motion for Partial Summary Judgment, but CSXT argues in its response that it "seeks recovery of the fair market value of [its] misappropriated rights" for that claim.  [Filing No. 482 at 12.]  It argues that under Indiana law, the fair market value is "the price at which property would change hands between a willing buyer and seller," and that "the CSXT Licensing Rights were converted by Zayo."  [Filing No. 482 at 12-13 (quotation and citation omitted).]

Zayo argues in its reply that the theft/conversion claim "cannot save [CSXT's] disgorgement theory" because CSXT seeks its "licensing rights" and "intends to submit evidence of the 'actual price paid' and ordinary valuations for 'licensing rights,'" but "[t]here is no argument that Zayo's own profits or revenues from its fiber optic routes could reflect the value of CSXT's 'licensing rights,' as it is undisputed that Zayo does not resell CSXT's 'licensing rights' to its customers, or to anyone else."  [Filing No. 505 at 5 (emphasis omitted).]

CSXT has elucidated its measure of recovery for its theft/conversion claim – the fair market value of its licensing rights.  [*See* Filing No. 482 at 12-13.]  Nowhere does it explain how, or claim that, that fair market value is equivalent to the profits that Zayo made from allegedly converting or stealing those licensing rights.  CSXT has not advanced any specific argument or proffered any

evidence showing that it is entitled to disgorgement in connection with its theft/conversion claim under Indiana law.

In sum, the Court **GRANTS** Zayo's Motion for Partial Summary Judgment to the extent it finds that CSXT is not entitled to disgorgement in connection with any of its claims related to Zayo's actions in Indiana.[15]

> 8.      *Claims Based on Installations Occurring Outside the Statute of Limitations*

In support of its Motion for Partial Summary Judgment, Zayo contends that a cause of action accrues when the claimant knows or in the exercise of ordinary diligence should have known that an injury had been sustained as a result of the tortious act of another, and that this occurred immediately after installation, at the latest.  [Filing No. 428 at 21-22.]  Zayo notes "the frequency with which CSXT inspects its railroad equipment and is physically present at locations along its rail corridor," and that "CSXT's maintainers are on-site inspecting CSXT equipment on a monthly basis," so "would have encountered construction crews at these locations and known of the alleged injury immediately, as the installations in question would have been constructed over several days, by contractors engaging construction crews and many steps that would be visible to the public." [Filing No. 428 at 22.]  It also argues that even if CSXT personnel did not witness the installations occurring, "the equipment associated with these installations would have been plainly visible to CSXT personnel immediately after installation."  [Filing No. 428 at 22.]  Zayo asserts that aerial installations are "plainly visible above ground," "that CSXT should have known of any injury caused by aerial installations within one month of installation," and that it reasonably should have

---

[15] Because the Court has found that CSXT is not entitled to disgorgement at all, it need not consider Zayo's argument that if disgorgement is permitted, CSXT can only recover a pro rata share of Zayo's profits stemming from the alleged incursions.  [Filing No. 505 at 5-7.]

known about new underground installations because they are conspicuously marked and close to CSXT's rail corridor.  [Filing No. 428 at 22-23.]  Zayo notes that CSXT has sent inspectors to some locations during this lawsuit and that the inspectors have been able to observe "above-ground infrastructure indicating the presence of underground installations by mere visual observation, and without special equipment."  [Filing No. 428 at 23.]  Zayo moves for summary judgment on the following claims:

- Criminal trespass, and theft/criminal conversion where the installations took place more than two years prior to the initiation of the litigation (255 Indiana locations);[16] and

- Civil trespass to land, civil trespass to components, and rent where the installations took place more than six years prior to the initiation of the litigation (180 locations).[17]

[Filing No. 428 at 24-25.]

CSXT responds that the statute of limitations has not expired on any of its claims under the continuing trespass doctrine, which stands for the proposition that a defendant's "failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land."  [Filing No. 482 at 27-28 (quotation and citation omitted).]  It also asserts that under the discovery rule, genuine issues of material fact regarding when CSXT should have reasonably discovered the installations exist and preclude summary judgment.  [Filing

---

[16] Zayo also argues that CSXT's railroad mischief and deception claims where the installations took place more than two years prior to the initiation of the litigation are barred by the statute of limitations, but the Court need not address that argument because it has already dismissed those claims for lack of subject-matter jurisdiction.  *See supra* Parts III.B.3. and III.B.4.

[17] Zayo also moves for summary judgment on CSXT's unjust enrichment claim to the extent that it is based on installations that took place more than six years prior to the initiation of the litigation, but the Court has already granted summary judgment on CSXT's unjust enrichment claim in its entirety.

No. 482 at 28-29.]  It contends that Zayo's installations were not properly or conspicuously marked, thus preventing their discovery.  [Filing No. 482 at 29.]

Zayo argues in its reply that CSXT does not dispute that many of the installations occurred outside of the limitations period – only that it could not have reasonably discovered them.  [Filing No. 505 at 16.]  It notes that CSXT did not submit any facts "contravening Zayo's evidence that Zayo's above-ground installations are identifiable by plain visual observation."  [Filing No. 505 at 17.]  Zayo asserts that its above-ground markings made its underground installations discoverable and "put CSXT on notice of Zayo's installations and permitted CSXT to reasonably ascertain any damage," and that "determining the precise location was not necessary."  [Filing No. 505 at 18.]  It argues that CSXT does not dispute that installations are "major construction projects that would easily be discovered during CSXT's mandatory and regular inspections."  [Filing No. 505 at 18.]  Zayo argues that the continuing trespass doctrine does not apply because CSXT claims it has suffered permanent injury and its claims derive from Zayo's initial installation and not subsequent entries onto its property.  [Filing No. 505 at 18-19.]  It asserts that CSXT's claims accrued upon completion of the corresponding installation; that CSXT has only shown that Zayo repairs its cables from time to time and not that Zayo reentered a particular location to repair, replace, and maintain the cable; and that in any event, CSXT does not seek damages related to any repair, replacement, or maintenance of its cable.  [Filing No. 505 at 18-19.]

CSXT does not dispute that some of Zayo's installations occurred outside of the limitations period, but instead relies on two defenses – that the discovery rule tolls the statute of limitations and that Zayo's installations constitute continuing trespasses so the statute of limitations has not run on any of its claims.  The Court considers each defense in turn.

- 43 -

a.    The Discovery Rule

"Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury.  The determination of when a cause of action accrues is generally a question of law." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009).

> Indiana courts have held that the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred…. As such, a plaintiff has a duty under the discovery rule to exercise reasonable diligence to discover the negligent acts or omissions.  The exercise of reasonable diligence means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.

*Bambi's Roofing, Inc. v. Moriarty*, 859 N.E.2d 347, 356 (Ind. Ct. App. 2006) (citations and footnote omitted); *see also Radziwiecki v. Gough, Inc.*, 2023 WL 8802688, at *5 (Ind. Ct. App. Dec. 20, 2023) (cause of action related to allegedly faulty construction accrued upon completion of project and not when defect was actually discovered because plaintiff "did not exercise reasonable diligence to discover the injury").  It is the plaintiff's burden to prove that the discovery rule applies based on the circumstances of the case. *See Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 719 (7th Cir. 1994).

CSXT relies on evidence set forth in its Statement of Material Facts in Dispute in arguing that the discovery rule should apply to the statute of limitations analysis, including:

- January, February, and March 2022 invoices from Western Utility LLC ("Western") to Zayo for work done to correct "missing marker posts."  [*See, e.g.*, Filing No. 463-1; Filing No. 463-2; Filing No. 463-3; Filing No. 463-6; Filing No. 463-7; Filing No. 463-8; Filing No. 463-9; Filing No. 463-10; Filing No. 463-11; Filing No. 463-12; Filing No. 463-13; Filing No. 464-1.]

- Construction drawings dated August 10, 2020 for a segment of fiber optic installation in Putnam County, Indiana, which note "Zayo needs marker post" and "missing marker post," among other similar notations. [*See, e.g.*, Filing No. 463-4 at 5.]

- A November 3, 2021 Western timesheet stating: "Arrived and Started back at missing marker post on clay segment…[and] found…a couple sets of hand holes[18] not [yet] marked…. [W]e could not locate two hand holes on the route and they are marked…and found one not installed and then took photos and of the location of missing/uninstalled hand hole." [Filing No. 463-14 at 20.][19]

- Testimony from Zayo's Vice President of Underlying Rights and Government Relations for North America, Gillian Leytham, in which she states that there do not need to be any handholes in long installations. [Filing No. 471-4 at 11.]

- Testimony from Zayo's expert witness, Gary Kent, in which he states that Zayo's lines "were not marked and so I was – all I could do was use the handholes and the Zayo plans which showed where the line was in between the handholes." [Filing No. 364-1 at 6-7.]

As for work performed by Western, Zayo argues that Western was engaged to remedy issues with a previous contractor, so that the proper markers would be present. While the evidence Zayo points to does note that Western was performing "correction and cleanup" of missing handholes and marker posts, [*see, e.g.*, Filing No. 463-2], it does not indicate the timing of Western's work and whether the work was performed to remedy a previous contractor's errors as opposed to Zayo's errors. As for Zayo's argument that it was remedying issues left behind by contractors, it is not clear how that would lead to the conclusion that the lack of markers did not impair CSXT's ability to discover the installations. Zayo "must explain why this must be,"[20] and

---

[18] A handhole is "a type of manhole, buried underground just deep enough so that its lid is flush with the surface of the ground; its opening is just wide enough for the insertion of one's hand and/or arm." www.streamdatacenters.com (last visited April 22, 2024).

[19] CSXT also cites to Filing No. 464-12 at 14 for the notation "MMI vault needs lid or HH swapped." [Filing No. 482 at 7 (emphasis omitted).] But the page to which CSXT cites does not appear to contain that notation for Zayo – instead, all of the notations appear to reference "Duke." [*See* Filing No. 464-12 at 14.]

[20] THE CLASH, TRAIN IN VAIN (Columbia 1979).

has not done so.  In terms of handholes, however, although Ms. Leytham testified that handholes were not necessary or required in long installations, Mr. Kent's testimony indicates, if anything, that Zayo did install handholes.

The Court finds that CSXT has provided enough evidence that the sites referenced in the invoices, timesheets, and drawings lacked Zayo markers and, therefore, that has created an issue of fact as to whether CSXT could not have reasonably discovered those specific installations.  For any other Indiana sites, however, CSXT has not produced admissible evidence to create a factual dispute regarding application of the discovery rule to toll the statute of limitations.

b.    The Continuing Trespass Doctrine

The Seventh Circuit has instructed that "the doctrine of continuing violation is one governing accrual, not tolling, and is therefore governed by federal law." *Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003).  It found that defendant's installation of pipes on plaintiff's land was not a continuing trespass and noted that "[plaintiff] alleges one discrete incident of unlawful conduct – the installation of the pipes on his land.  That the alleged trespass is, by [plaintiff's] description, 'permanent' does not convert that discrete act into one long continuing wrong [such that the statute of limitations accrued anew each day]." *Id.* at 767.  The Court acknowledges the Indiana Court of Appeals' application of the continuing trespass doctrine to find that the emission of gas from a city sewer line constituted a continuing trespass for which "the limitations period began anew each time the gases entered" the plaintiff's home. *Kerr v. City of South Bend*, 48 N.E.3d 348, 354-55 (Ind. Ct. App. 2015).  But here – unlike in *Kerr*, where additional gas was emitted each day – CSXT's claims are focused on Zayo's installation of its fiber optic cables, an activity which had a clear ending date at each site.  While the Court acknowledges that Zayo may perform repairs or maintenance at the sites from time to time, CSXT's claims are

not aimed at those activities.  The Court finds that the continuing trespass doctrine does not lead to the result that Zayo's installations in Indiana "amount[ ] to a fresh wrong each day" such that the statute of limitations has not run at sites where installations occurred outside of the limitations period.  *Clark*, 318 F.3d at 766.

In sum, the Court concludes that Indiana's continuing trespass doctrine does not apply to the circumstances of this case.  However, the Court finds that a genuine dispute of fact exists regarding whether CSXT should have reasonably discovered its alleged injuries at Indiana sites where evidence submitted by CSXT indicates that Zayo's markers were missing, and the Court **DENIES IN PART** Zayo's Motion for Partial Summary Judgment as to the statute of limitations argument for those sites.  For all other Indiana sites, the Court **GRANTS IN PART** Zayo's Motion for Partial Summary Judgment to the extent that the following claims are barred:

- Criminal trespass claims (Count I) and theft/conversion claims (Count IV) related to installations which occurred before November 16, 2019;[21] and

- Civil trespass claims (Counts V and VI[22]) and rent claims (Count VIII) related to installations which occurred before November 16, 2015.[23]

### C.   Claims Related to Actions in Illinois

As to CSXT's claims related to Zayo's actions in Illinois, the Court applies the forum's (Indiana's) choice of law provisions, *Storie*, 589 F.3d at 879, which dictate that the law of the state where the tort was committed applies, *Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002).  Accordingly, Illinois law applies to these claims and the parties appear to agree.  [*See,*

---

[21] The statute of limitations for CSXT's trespass and theft/conversion claims under the ICVA is two years.  *See* Ind. Code § 34-11-2-4.

[22] Count VI is a civil trespass claim for trespass to CSXT's components, as opposed to land.  [Filing No. 210 at 46.]

[23] The statute of limitations for CSXT's civil trespass and rent claims is six years.  *See* Ind. Code § 34-11-2-7.

*e.g.*, Filing No. 428 at 19-20 and Filing No. 482 at 23-24 (parties addressing trespass to land claims related to Illinois tracks under Illinois law).]   Accordingly, the Court will apply Illinois law to claims related to sites in Illinois.  *Mass. Bay Ins. Co.*, 136 F.3d at 1120; *Wood*, 942 F.2d at 426-27.

        1.      *Trespass to Land and Rent Claims Related to Properties in Illinois for Which CSXT Possesses an Easement*

Zayo argues in support of its Motion for Partial Summary Judgment that under Illinois law, a trespasser's use of land must "materially interfere with the right of the owner of the dominant estate to reasonable use of the easement."  [Filing No. 428 at 19 (quotation omitted).]  It asserts that, with the exception of the Montrose Street Location, its installations have not interfered with CSXT's "reasonable use of its rail lines or rendered its railway impassible."  [Filing No. 428 at 19.]

In its response, CSXT argues that Illinois recognizes that a railroad has an "exclusive and perpetual possession of its easement as long as it was used for railroad purposes," and that a grant of a right-of-way to a railroad "conveys an interest in which is absolute for the purposes for which it was conveyed…even though the language of the deed falls short of conveying the fee to the land."  [Filing No. 482 at 23-24 (quotation and citation omitted).]  CSXT contends that the only caselaw Zayo has pointed to for the proposition that a trespasser must materially interfere with the right of the easement holder involved the fee holder trespassing, and not a third party as in this case.  [Filing No. 482 at 24.]  It argues further that it has shown "unreasonable interference" in any event, including damage at the Montrose Street Location, interfering with CSXT's "ability to utilize its Railroad Corridor for the purposes it deems necessary for current and future Railroad Operations," and causing "latent defects that pose unknown future risks to CSXT's infrastructure." [Filing No. 482 at 25.]

In its reply, Zayo reiterates its argument that CSXT must show that the installations unreasonably interfered with CSXT's use of its easements and asserts that the cases CSXT relies upon support the notion that "the railroad's exclusive possession extends only to the surface." [Filing No. 505 at 12.]   It argues that "[h]ypothetical, future threat of rail disruption, unsubstantiated by any actual physical interference with CSXT's equipment stands in stark contrast to the case on which CSXT relies," and that "[a]side from Montrose, CSXT provides no evidence of actual malfunction or imminent rail disruption."  [Filing No. 505 at 13.]

Under Illinois law, "[a] grant of a right of way to a railroad company conveys an interest which is absolute for the purposes for which it was conveyed so long as it is devoted to those purposes, even though the language of the deed falls short of conveying the fee to the land." *Mitchell v. Ill. Cent. R. Co.*, 51 N.E.2d 271, 274 (Ill. 1943).  A railroad easement under Illinois law "is not limited to the bare surface of the land," but "does have certain limitations as to height and depth within which the railroad company must remain," and the easement "extends only to such height and depth as reasonably permits the full and free enjoyment of the surface for railroad purposes." *Farmers Grain & Supp. Co. of Warsaw v. Toledo, P. & W. R.R.*, 44 N.E.2d 77, 80 (Ill. App. Ct. 1942).  "Fanciful or speculative invasion of easements need not be considered," and installations that do not "interfere with the full enjoyment of the right of way" cannot form the basis of a trespass claim under Illinois law. *Id.* at 81; *see also Cleveland, C., C. & St. L. Ry. Co. v. Cent. Ill. Pub. Serv. Co.*, 43 N.E.2d 993, 997 (Ill. 1942) (railroad could not maintain trespass claim against energy company that installed power lines over right-of-way for which railroad held easement where railroad did not claim that installation would "in any way interfere with the full exercise of [its] right in the easement").

- 49 -

Illinois law dictates that the easement holder's interest in the land extends only as far as is required for the easement holder to be able to use the land for railroad purposes. *Farmers Grain & Supp. Co. of Warsaw*, 44 N.E.2d at 80.  As discussed above in connection with the Indiana trespass to property claims, CSXT has not shown that it was unable to use its tracks for railroad purposes at Illinois sites, with the exception of the Montrose Street Location – in which CSXT holds an easement interest, [Filing No. 466 at 13].  Further, as with the Indiana sites, CSXT has not pointed the Court to any specific easement language for Illinois sites that might indicate that its interest in the land extends below or above the surface where its tracks lie.

The Court finds that CSXT does not have standing to assert its civil trespass to land claim (Count V) and rent claim (Count VIII) related to Zayo's actions in Illinois at sites for which CSXT has an easement, with the exception of the Montrose Street Location, because it has not produced evidence of a sufficient possessory interest in those sites.  As noted before, CSXT cannot assert a claim over land in which it does not have a sufficient interest.  Consequently, the Court does not have subject-matter jurisdiction over those claims.   The Court **DISMISSES** those claims **WITHOUT PREJUDICE**. [24]

> ### 2.    *Claims Where Zayo's Installations Were Authorized by Contract*

Zayo argues in support of its Motion for Partial Summary Judgment that as to sixty-nine locations in Illinois, CSXT has admitted that Zayo's predecessor, FiberLink, had rights to install its fiber at locations where CSXT has a leasehold interest.  [Filing No. 428 at 28.]  It argues that because the installations were authorized by contract, CSXT's claims as to those sites fail.  [Filing No. 428 at 28.]

---

[24] The Court notes that Zayo did not seek summary judgment for the claim at the Montrose location, and that location is specifically excluded from the Court's rulings herein.

In its response, CSXT argues that Zayo's installations at "The Joliet to Seneca Parallel [and] The Spring Valley to Lake Rawson Parallel" are "upon CSXT Railroad Property and they were never authorized by CSXT." [Filing No. 482 at 36.]

Zayo asserts in its reply that CSXT only addressed a subset of twenty-three sites in its response brief (the sites within the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel), and that the Court should grant summary judgment as to the other forty-six sites. [Filing No. 505 at 20.] For the remaining twenty-three sites, Zayo argues that CSXT admits that it entered into an agreement with Zayo to "perform[ ] an overpull of fiber optic cable in existing conduit," which "shows that [CSXT] did not consider the conduit or Zayo's fiber unauthorized." [Filing No. 505 at 20-21.]

Of the sixty-nine sites for which Zayo seeks summary judgment based on installations that were authorized by contract, CSXT only addresses twenty-three of those sites in its response brief. [See Filing No. 428 at 9-10 (Zayo listing sixty-nine Illinois sites for which it argues that installations were authorized by contract) and Filing No. 482 at 36 (CSXT only addressing Illinois sites in the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel).[25]] For the remaining forty-six sites that CSXT does not address in its response brief, it has forfeited any argument that Zayo's installations were not authorized by contract, *Bonte*, 624 F.3d at 466, and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment as to those forty-six sites.

For the twenty-three sites within the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel, CSXT relies upon Ms. Harper's Report in which she states that the documents upon which Zayo relies for its argument that it was authorized to install cable at those sites –

---

[25] CSXT's Real Estate Supervisor, Elizabeth Harper, specifies which sites comprise the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel, stating that the former includes fifteen sites and the latter includes eight sites. [Filing No. 466 at 17; Filing No. 466 at 21.]

- 51 -

including a Settlement Agreement and a Sale of Easements Agreement – do not authorize the installations without CSXT's permission. [Filing No. 466 at 18-25.] Zayo's only response to this evidence is that CSXT agreed to allow Zayo to do certain work in existing conduit, which "shows that it did not consider the conduit or Zayo's fiber unauthorized." [Filing No. 505 at 20-21.] The Court finds that CSXT has presented sufficient evidence to create a genuine issue of material fact regarding whether Zayo's installations at sites within the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel were authorized by contract and **DENIES** Zayo's Motion for Partial Summary Judgment as to those sites.

### 3. *Unjust Enrichment Claim*

Zayo argues in support of its Motion for Partial Summary Judgment that CSXT's claim for unjust enrichment related to sites in Illinois fails because it has an adequate remedy at law – here, CSXT's trespass and rent claims, which Zayo argues are "based on the identical conduct as its unjust enrichment claim." [Filing No. 428 at 32-33.]

In its response, CSXT argues that tort claims may proceed alongside unjust enrichment claims in Illinois and that it is entitled to elect which remedy to accept after the jury reaches a verdict. [Filing No. 482 at 16-18.]

On reply, Zayo reiterates its argument that CSXT's unjust enrichment and trespass claims are based on the same facts, asserts that the trespass claim "offers meaningful recovery," and states that "[the fact that] civil trespass does not offer the entire profits damages remedy CSXT wishes does not compel the court to provide it a windfall via equity." [Filing No. 505 at 8-9.]

In Illinois, unjust enrichment is "an equitable remedy that is available when no adequate remedy at law exists." *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013). Additionally, when a legal claim based on the same conduct as the unjust enrichment claim fails,

the unjust claim fails as well.  *Connors v. Progressive Univ. Ins. Co.*, 2021 WL 1722773, at *4 (N.D. Ill. Apr. 30, 2021) ("[A] plaintiff can bring an unjust-enrichment claim based on conduct such as fraud or duress.  In that case, unjust enrichment rises and falls with the underlying claim."). As discussed above in connection with CSXT's unjust enrichment claim based on Indiana sites, for Illinois sites where CSXT's trespass to land and rent claims have not already been precluded, an adequate remedy at law exists through those claims and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment as to the corresponding unjust enrichment claims.  For sites where the Court has found that CSXT lacks standing and has dismissed those claims (*e.g.*, where the installation was at a site for which CSXT had an easement), the Court **DISMISSES** the corresponding unjust enrichment claims **WITHOUT PREJUDICE**.  For sites where the Court has granted summary judgment in favor of Zayo on the trespass to land and rent claims (*e.g.*, because the installation was on a public road right-of-way), CSXT's corresponding unjust enrichment claims fail and the Court **GRANTS** Zayo's Motion for Partial Summary Judgment on the unjust enrichment claim related to those sites.

### 4.    *Disgorgement Damages*

As with the sites in Indiana, CSXT requests disgorgement of Zayo's "unjust gain" in connection with its claims.  [Filing No. 210 at 53.]  In support of its Motion for Partial Summary Judgment, Zayo argues that under Illinois law the proper measure of damages for a trespass claim is the depreciation in the market value of the land caused by the trespass for a permanent injury or the cost of restoration for a non-permanent injury.  [Filing No. 428 at 29.]  It asserts that disgorgement is only appropriate where the trespasser removes something from the land and then sells it for a profit, and that this did not occur in this case.  [Filing No. 429 at 30.]

CSXT relies upon the Restatement (Third) of Restitution and Unjust Enrichment and the Restatement (Second) of Torts in its response, arguing that a trespasser is liable in restitution to "the victim of the wrong" and that the owner of the property "is entitled to recover from [the trespasser] the value of any profits made by the entry." [Filing No. 482 at 11 (quotations omitted).] CSXT relies upon cases from Wisconsin and New York, and also on a 1930 case from Illinois, *Murphy v. Sampson*, 342 Ill. 305, 315 (Ill. 1930). [Filing No. 482 at 11-12.]

In its reply, Zayo argues that the Illinois Supreme Court in *Murphy* "endorse[d] a reasonable license fee approach – not disgorgement." [Filing No. 505 at 3-4.]

Under Illinois law, in determining the measure of damages for a trespass claim, "[i]f real property is 'partially' injured and the injury may be repaired in a practicable manner, then the measure of damages is the cost of repairing the property; however, if the real property is totally destroyed or damaged in a manner which renders repair impracticable, then the diminution in value rule applies." *Price v. Carri Scharf Trucking, Inc.*, 2023 WL 7182112, at *5 (C.D. Ill. Nov. 1, 2023) (quotations omitted, citing *First Baptist Church of Lombard v. Toll Highway Auth.*, 301 Ill.App.3d 533, 545 (Ill. App. Ct. 1998)).

The *Murphy* case, relied upon by CSXT, held that "[w]here a party enters without authority upon the possession of another's premises and uses them, compensation may be awarded the owner upon the basis of the worth of the use of the property." 174 N.E. at 397. It does not stand for the proposition that disgorgement is available as damages for trespass – rather, the Court reads this holding as allowing the recovery of rent for the use of the property. *See also Falejczyk v. Meo*, 176 N.E.2d 10, 12 (Ill. App. Ct. 1961) (landowner could recover "reasonable rental value" from restaurant owner who covered part of landowner's lot with asphalt and gravel and used it for customer parking). Even if the Court accepts CSXT's creative argument that Zayo has taken

bandwidth capacity from its property by installing cables, CSXT has not pointed to any Illinois cases supporting the notion that disgorgement is an appropriate remedy for a trespass claim. The Court **GRANTS** Zayo's Motion for Partial Summary Judgment to the extent that it finds that CSXT may not receive disgorgement in connection with its trespass claims under Illinois law. Because CSXT has not argued that it is entitled to disgorgement in connection with any of its other claims related to Zayo's actions in Illinois, the Court further **GRANTS** Zayo's Motion for Partial Summary Judgment to the extent that it finds that CSXT is not entitled to disgorgement as a remedy for any of its claims related to Zayo's actions in Illinois.

> 5.    *Claims Based on Installations Occurring Outside the Statute of Limitations*

In support of its Motion for Partial Summary Judgment, Zayo argues that the statute of limitations in Illinois – like in Indiana – begins to run when the plaintiff "knows or in the exercise of ordinary diligence should have known that an injury had been sustained as a result of the tortious acts of another." [Filing No. 428 at 21-22 (quotation omitted).] It contends that the evidence shows that CSXT inspects its railroad equipment and is physically present along its rail corridor, so would have observed the installations. [Filing No. 428 at 22.] Zayo argues that claims related to Illinois sites where installations occurred more than five years before the initiation of this litigation for trespass to land, trespass to CSXT components, and rent are barred.[26] [Filing No. 428 at 24-25.]

---

[26] Zayo also argues that CSXT's unjust enrichment claim related to Zayo's conduct in Illinois is barred where the installations occurred more than five years before the initiation of this litigation, but the Court need not address that argument since it has granted Zayo's Motion for Partial Summary Judgment on the entirety of CSXT's unjust enrichment claim based on Zayo's Illinois conduct.

In its response, CSXT again relies upon the continuing trespass doctrine and the discovery rule, arguing that both apply under Illinois to toll the running of the statutes of limitation. [Filing No. 482 at 27-29.]

Zayo argues in its reply that CSXT has not presented sufficient evidence to justify application of the discovery rule and that the continuing trespass doctrine does not apply to the circumstances of this case. [Filing No. 505 at 17-19.]

a.    The Discovery Rule

Under Illinois law, the discovery rule "delays the start of the limitations period until the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused." *Am. Fam. Mut. Ins. Co. v. Krop*, 120 N.E.3d 982, 987-88 (Ill. 2018) (quotations and citations omitted). The party asserting that the discovery rule applies "has the burden of proving the date of discovery and must provide enough facts to avoid application of the statute of limitations." *Gentile Family, LLC v. Collette*, 2024 WL 1406568, at *6 (Ill. App. Ct. Mar. 29, 2024) (quotation and citation omitted). Here, CSXT relies upon the Western invoices and various timesheets and drawings to show that markers and handholes were missing at certain sites, so it could not have discovered the installations. [*See* Filing No. 482 at 29.] But the invoices, timesheets, and drawings appear to only relate to sites in Indiana. [*See* Filing No. 463-1 through Filing No. 463-4; Filing No. 463-6 through Filing No. 463-14; Filing No. 464-1.] CSXT also relies on testimony from Ms. Leytham, in which she states that there do not need to be any handholes in long installations. [Filing No. 471-4 at 11.] But it has not shown that Zayo in fact failed to install those handholes at any sites in Illinois. Further, as noted above, the testimony from Mr. Kent upon which CSXT relies – that Zayo's lines were not marked so he had to use the

handholes and Zayo's plans to identify where the lines were – if anything shows that handholes were present.

In short, any specific evidence CSXT has presented regarding missing markers or handholes relates exclusively to sites in Indiana.  Accordingly, the Court finds that CSXT has not demonstrated that a material issue of fact exists as to whether the discovery rule applies to its claims related to Zayo's Illinois conduct.

b.    The Continuing Trespass Doctrine

The Court again notes that the continuing trespass doctrine relates to accrual, not tolling, and is governed by federal law.  *Clark*, 318 F.3d at 766-67 (holding that defendant's installation of pipes on plaintiff's land was not a continuing trespass and that the plaintiff's description of the trespass as permanent did not "convert that discrete act [of installing pipes] into one long continuing wrong [such that the statute of limitations accrued anew each day]").  This is in line with Illinois law, under which the continuing trespass doctrine delays the accrual of the statute of limitations where there are "continuing unlawful acts and conduct," but not where there are "continual ill effects from an initial violation."  *Bank of Ravenswood v. City of Chicago*, 717 N.E.2d 478, 484 (Ill. App. Ct. 1999) (finding that installation of subway underneath property was not a continuing violation because "[t]he fact that the subway was present below ground would be a continual effect from the initial violation [(the installation of the subway)] but not a continual violation").

Here, as discussed in connection with application of the continuing trespass doctrine to the Indiana claims, CSXT's Illinois claims focus on Zayo's installations and not on wrongs that were committed after those installations.  The continuing trespass doctrine does not apply to the

circumstances of this case and does not lead to the result that the statute of limitations for CSXT's trespass claims related to Illinois sites accrues anew each day.

Because CSXT has not presented evidence warranting application of the discovery rule to sites in Illinois and because the continuing trespass doctrine does not apply to the circumstances of this case, the Court **GRANTS** Zayo's Motion for Partial Summary Judgment to the extent that the following claims are barred: civil trespass claims (Counts V and VI) and rent claim (Count VIII) related to Illinois sites for which installations occurred before November 16, 2016.[27]

## IV.
### IDENTIFYING THE REMAINING CLAIMS

Because of the sheer volume of sites for which CSXT seeks relief – which has grown exponentially from its initial Complaint, in which it only alleged claims relating to the Jackson Street Location and the Montrose Street Location – the Court finds it prudent to have the parties confer and attempt to agree regarding which sites remain implicated after its rulings herein, given that they are much more familiar with those sites and the evidence related to those sites. So that everyone can see the light at the end of the tunnel, the Court **ORDERS** CSXT and Zayo to confer, to attempt to agree regarding which specific sites remain implicated after the Court's rulings, and to file a Joint Report by **May 22, 2024** setting forth which sites remain implicated for each remaining claim.

To reflect the various rulings contained in this Entry, the parties should only include on their Joint Report, designated by Count:

- Count I (criminal trespass): In Indiana, sites:

  - for which CSXT does not hold an easement; and

---

[27] The statute of limitations for CSXT's Illinois civil trespass, unjust enrichment, and rent claims is five years. Il. St. Ch. 735 § 5/13-205.

- o where the installation was not on a public road right-of-way; and

- o where the installation occurred after November 16, 2019 (unless it is one of the cites for which CSXT submitted evidence indicating that Zayo's markers were missing); and

- o 18089 0056 and 18089 0060;[28]

- Count IV (theft/conversion):  In Indiana, sites where the installation occurred after November 16, 2019 (unless it is one of the cites for which CSXT submitted evidence indicating that Zayo's markers were missing);

- Count V (civil trespass to land):  sites:

  - o in Indiana and Illinois for which CSXT does not hold an easement (and the Montrose Street Location); and

  - o in Indiana where the installation was not on a public road right-of-way; and

  - o in Indiana where the installation occurred after November 16, 2015 (unless it is one of the cites for which CSXT submitted evidence indicating that Zayo's markers were missing); and

  - o in Illinois where the installation occurred after November 16, 2016; and

  - o 18089 0056 and 18089 0060; and

  - o within the Joliet to Seneca Parallel and the Spring Valley to Lake Rawson Parallel;[29]

- Count VI (civil trespass to components):  sites:

  - o in Indiana where the installation occurred after November 16, 2015 (unless CSXT submitted evidence indicating that Zayo's markers were missing); and

---

[28] These sites should only be included on the Joint Report to the extent that they are not excluded for other reasons set forth in this Order (*e.g.*, they should be excluded if CSXT holds easements for those sites).

[29] These sites and sites 18089 0056 and 18089 0060 should only be included on the list to the extent that they are not excluded for other reasons set forth in this Order (*e.g.*, they should be excluded if CSXT holds easements for those sites).

  o  in Illinois where the installation occurred after November 16, 2016 and the Montrose Street Location;

- Count VIII (rent):  only sites in Indiana and Illinois that are already included on the list in connection with Count V;

- Count IX (declaratory judgment):  only sites in Indiana and Illinois that are already included on the list; and

- Count X:  only sites related to the Jackson Street Location that CSXT claims fall outside of the public road right-of-way.

## V.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Zayo's Motion for Partial Summary Judgment, [417], as set forth above.  No partial final judgment shall issue.  After the parties have filed their Joint Report listing the remaining claims and which sites are implicated for each claim, the Court is hopeful that the parties will realize that "maybe it's not too late to learn how to love and forget how to hate,"[30] and decide to jump aboard the Love Train[31] or the Peace Train[32] – either will do.  To that end, the Court **REQUESTS** that the Magistrate Judge confer with the parties regarding possible resolution of those remaining claims after the parties file their May 22, 2024 Joint Report, but before this case leaves the station and heads down the tracks toward trial.

Date: 4/23/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[30] OZZY OSBOURNE, CRAZY TRAIN (Jet-Epic 1980).

[31] THE O'JAYS, LOVE TRAIN (Philadelphia International 1972).

[32] CAT STEVENS, PEACE TRAIN (A&M 1971).