UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CSX TRANSPORTATION, INC.,      )
                                  )
      *Plaintiff,*        )
                                  )   No. 1:21-cv-02859-JMS-MJD
      *vs.*             )
                                  )
ZAYO GROUP, LLC,        )
                                  )
      *Defendant.*       )

## ORDER

In this highly contentious case, Plaintiff CSX Transportation, Inc. ("CSXT") has sued Defendant Zayo Group, LLC ("Zayo") related to Zayo's installation of a fiber optic network system that CSXT alleges damaged its property. On April 23, 2024, the Court issued an Order on Zayo's Motion for Summary Judgment which significantly limited CSXT's claims. [Filing No. 607.] The Court ordered the parties to confer, to attempt to agree regarding which specific sites remain implicated for which claims after the Court's ruling, and to file a Joint Report setting forth those sites and claims. [Filing No. 607 at 58.] The Court also requested that the Magistrate Judge confer with the parties after they had filed their Joint Report regarding possible resolution of the remaining claims. [Filing No. 607 at 60.] The parties filed their Joint Report, [Filing No. 609], and the Magistrate Judge set a settlement conference for June 27, 2024, [Filing No. 613]. CSXT has now filed a Motion to Modify the Court's Summary Judgment Order to Allow Interlocutory Review, [Filing No. 624], and a Rule 72(a) Objection to Settlement-Conference Orders, [Filing No. 628], which are both ripe for the Court's decision.

- 1 -

## I.

### MOTION TO MODIFY THE COURT'S SUMMARY JUDGMENT ORDER TO ALLOW INTERLOCUTORY REVIEW

#### A.    Background

CSXT set forth ten claims in its Third Amended Complaint related to hundreds of sites in Indiana and Illinois on which Zayo has installed fiber optic cable, including: (1) Count I – criminal trespass under the Indiana Crime Victim's Relief Act ("ICVRA"); (2) Count II – railroad mischief under the ICVRA; (3) Count III – deception under the ICVRA; (4) Count IV – theft/criminal conversion under the ICVRA; (5) Count V – civil trespass to land; (6) Count VI – civil trespass to CSXT components; (7) Count VII – unjust enrichment; (8) Count VIII – rent; (9) Count IX – declaratory judgment related to Zayo's "unilateral and unauthorized actions"; and (10) Count X – declaratory judgment as to a location near 2000 S. Jackson Street, in Greencastle, Indiana.  [Filing No. 210 at 40-52.]  In its 60-page Order – the product of analyzing over 100 pages of briefs and over 2,500 pages of evidence – the Court found, among many other things, that: (1) CSXT lacked standing to assert trespass to land and rent claims against Zayo for sites where CSXT only possesses an easement because CSXT had not put forth evidence that the specific easements covering the sites at issue applied to the subsurface below or air above those sites or any evidence that Zayo's installations prevented it from using its tracks, [Filing No. 607 at 17-20; Filing No. 607

at 49-50]¹; and (2) that the continuing trespass doctrine does not apply to the presence of Zayo's fiber optic cables, [Filing No. 607 at 46-47; Filing No. 607 at 57-58].  CSXT now asks the Court to revise its Order on Zayo's Motion for Summary Judgment as to these two rulings only to allow it to take an interlocutory appeal of those two issues.  [Filing No. 624.]

### B.    Standard of Review

A party may petition for leave to file an interlocutory appeal of a nonfinal order under 28 U.S.C. § 1292(b).  *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). There are four statutory criteria for granting a § 1292(b) petition: (1) the proposed appeal must involve a question of law; (2) it much be controlling; (3) it must be contestable; and (4) its resolution must speed up the litigation.  *Id.*  Additionally, "the petition must be filed in the district court within a reasonable time after the order sought to be appealed."  *Id.* (emphasis omitted). Recognizing that proceedings in the district court generally "grind[ ] to a halt" as soon as an order is certified for immediate appeal, the Seventh Circuit has held that unless all criteria under §

---

¹ CSXT states in a footnote that "the Court was mistaken in equating a failure to prove a cognizable injury with a lack of standing," that CSXT need only "plausibly allege[ ] that it has suffered" a cognizable injury, and that "[t]he Court accordingly may wish to consider revising the order to omit the references to standing."  [Filing No. 624 at 3.]  CSXT's suggestion is inappropriate for two reasons.  First, CSXT is wrong.  As the Seventh Circuit Court of Appeals recently explained, "[i]njury is essential to standing," and "it isn't enough to imagine how injury could occur; a plaintiff challenged to produce evidence of injury at the summary-judgment stage must do so."  *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024).  It further explained that "[s]ummary judgment is the 'put up or shut up' time in litigation," that the plaintiffs were "asked for details [regarding injury] and refused to provide any," and that because they did not, they "cannot carry on with this litigation" due to a lack of standing.  *Id.*  Second, CSXT relies solely on its novel damages theory set forth by Alex Saar and cobbled together from three dictionary definitions, to allege that it suffered a cognizable injury, but the Court explicitly rejected that definition of damages in its Order on Zayo's Motion for Summary Judgment.  In other words, CSXT has not even plausibly alleged that it has suffered a cognizable injury for the very claims where the Court has found standing lacking due to an absence of injury.

1292(b) are satisfied, a district court "may not and should not" certify an order for an immediate appeal. *Id.* at 676.

### C.  Discussion

In support of its Motion to Modify, CSXT argues that there is substantial grounds for a difference of opinion regarding the scope of CSXT's easements.  [Filing No. 624 at 3.]  It asserts that the Court's ruling is contrary to what CSX claims is "the majority position that a railroad's easement includes use of the right of way to install fiber-optic cables."  To establish its purported "majority view" CSX cites to a 2002 district court case from the Northern District of Indiana, a treatise on "The Law of Easements & Licenses in Land," a 1990 case from the Western District of Texas, a 1994 case from the District of Vermont, as well as Indiana Supreme Court cases that it contends stand for the proposition that "because of the unique needs and functions of a railroad, railroad easements are not like typical easements; instead, they possess many of the hallmarks of ownership in fee."  [Filing No. 624 at 4-7.]  CSXT argues further that "[a]nother reason for the majority position" is that "it facilitates the installation of communications infrastructure" and alleviates the need for communications companies like Zayo to "secure permission to install their infrastructure from every landowner who retains an interest in a servient estate along the right of way…."  [Filing No. 624 at 7.]  CSXT further contends that "the majority rule protects the integrity of railroad infrastructure and the safety of railroad employees, passengers, the general public, and even would-be trespassers."  [Filing No. 624 at 8-13.]  It asserts that "[e]ven the minority position does not support this Court's ruling," arguing that "even when courts hold that a railroad's easement does not include use of the right of way for a particular purpose, they also generally recognize that the railroad has the right to exclude others who want to use the right of way for that purpose."  [Filing No. 624 at 13.]  CSXT states that "[t]he message sent by this Court's order – whether

intended or not – is that, wherever a railroad has an easement to use its right of way, the subsurface below the railroad and the air above the railroad are unregulated spaces, free for the taking by anyone for any purpose," and that "until a trespasser actually causes a derailment, a crossing accident, or some other demonstrable damage to railroad property, employees, or the public, the railroad has no power to stop the trespasser from doing whatever it wants with that space and installing whatever structures come to mind." [Filing No. 624 at 15.]  As to the continuing trespass doctrine and statute of limitations, CSXT relies upon a 2010 opinion from this district which it claims contradicts this Court's holding and sets forth various policy arguments that it claims indicate that there is a substantial ground for difference of opinion.  [Filing No. 624 at 15-18.] CSXT asserts that the parties differ regarding which claims for which sites remain viable after the Court's Order and that "[i]t would be inefficient to proceed to trial regarding the remaining claims without knowing whether the Court's rulings disposing of the claims relating to the [sites for which the parties agree the Court's summary judgment rulings are dispositive] will hold up on appeal or, instead, whether a trial relating to those installations will wind up being necessary." [Filing No. 624 at 19-20.]  It contends that it "cannot resolve this case by settlement without obtaining appellate review of the legal rulings in the summary judgment order because those rulings pose a significant threat to the integrity of CSXT's rail network as well as the safety of CSXT's employees and the public." [Filing No. 624 at 20.]

In its response, Zayo argues that the easement issue is not a controlling question of law because the Court found that CSXT "had not directed it to material facts in the record demonstrating that it possessed sufficient easement interests such that Zayo could have trespassed to its exclusive possession of land." [Filing No. 629 at 4.] Zayo asserts that "the ruling that CSXT seeks to appeal is not as sweeping or impactful as it contends" and that "the Court made the

decision on the record as CSXT created it based on the applicable state law." [Filing No. 629 at 5.] Zayo argues further that the easement issue is not contestable because CSXT cites to "decisions (or briefs offering policy rationale) from several jurisdictions where courts have undertaken different analyses, under different facts, and come to different conclusions than this Court," and because it "has not identified any controlling cases where a court has found [that] a plaintiff had standing to assert trespass or rent claims where it did not specifically identify for the court the scope and bounds of its easement rights." [Filing No. 629 at 7.] Zayo contends that CSXT has not shown that the Court's holding on the easement issue is likely to be reversed. [Filing No. 629 at 7.] As to the statute of limitations issue, Zayo argues that the Court's ruling "was tied to the record and CSXT's choices in prosecuting its trespass claims," and that the issue is not a pure question of law. [Filing No. 629 at 5-6.] It asserts that CSXT has not cited to any controlling cases "where a continuing trespass has been found where the claims sought redress for fiber installation, not ongoing maintenance efforts." [Filing No. 629 at 7.] Zayo argues further that an immediate appeal would hamper, not advance, the litigation because the Court's summary judgment order eliminated certain claims, that even if CSXT could appeal the Court's ruling, "it will inevitably appeal other aspects of the Court's Order after trial" so "piecemeal appeals are inevitable," and that trial of the claims not affected by an interlocutory appeal is inevitable, absent settlement and regardless of how the Seventh Circuit may rule. [Filing No. 629 at 9.] Finally, Zayo argues that CSXT's Motion to Modify is untimely because it waited 45 days to file its motion and has prevented no justification for the delay. [Filing No. 629 at 9-10.]

In its reply, CSXT argues that the easement issue is not factual and that Zayo's argument regarding the need to scour the record "assumes that the summary judgment order is correct and that a railroad easement does not include [use of a right of way to install fiber optic cables] unless

specifically granted by the originating documents." [Filing No. 630 at 1-2.]  CSXT reiterates its public policy arguments and its claim that "the majority of courts have adopted a conflicting position on this issue, including one case under Indiana law." [Filing No. 630 at 2-4 (emphasis omitted).]  It asserts that "[t]here is no precedent for the outcome in the Court's summary judgment order." [Filing No. 630 at 5.]  As for whether an immediate appeal will advance resolution of the case, CSXT argues that the Seventh Circuit would be able to review all aspects of the Court's summary judgment Order, not just those issues for which it seeks interlocutory appeal and that "without interlocutory review, there may well end up being two separate trials on different sets of Zayo's installations – those remaining in this case now and, following an appeal, those for which the summary judgment order is dispositive," and that "that second trial may then be followed by a second appeal." [Filing No. 630 at 7.]  Finally, CSXT argues that its Motion to Modify is timely, that there is no statutory deadline for filing its motion, that "CSXT believed that it made sense to determine the actual effect of the Court's summary judgment order in this case – and the scope of the installations for which the Court's rulings were dispositive – before asking the Court to certify the summary judgment order for interlocutory review," and that "[i]t has now become clear that resolving the dispute between CSXT and Zayo over which installations remain in the case following the Court's summary judgment order will be a protracted and costly endeavor – one that would be rendered pointless, at least in part, were the Seventh Circuit to overturn any aspect of the summary judgment order." [Filing No. 630 at 8-9.]

      *1.*     *Whether the Proposed Issues for Appeal Involve Pure Questions of Law*

A question of law involves "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," and the question must be "a 'pure' question of law rather than merely…an issue that might be free from a factual contest." *Ahrenholz*, 219 F.3d at

676-77.  Pure questions of law "typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016).  A pure question of law involves one that "the court of appeals could decide quickly and cleanly without having to study the record." *Id.* at 677. If the Seventh Circuit would have to "hunt[] through the record" to determine the issues presented, they are not appropriate for an interlocutory appeal.  *Id.*  Neither issue which CSXT seeks to immediately appeal involve pure questions of law.

First, as to the easement issue, the Court did not hold that CSXT can never recover for trespass and rent related to sites for which it has an easement.[2]  Instead, it held that "[e]ven if the Court assumes that CSXT could maintain a civil trespass to land claim if it had an exclusive easement to the property at issue, 'exclusivity should be clearly evidenced in the grant of the easement.'  Here, CSXT has not pointed to the language of any specific easements – statutory or otherwise – indicating that they are exclusive," and "it is not the Court's responsibility to conduct its own search."  [Filing No. 607 at 18 (citation omitted).]  It was CSXT's decision to broaden the scope of this litigation to include hundreds of sites throughout two states, as was its determination not to point the Court to evidence of the nature of its easements.  CSXT's reading of the scope of

---

[2] CSXT characterizes the Court's Order on Zayo's Motion for Summary Judgment as "sending a message" that "wherever a railroad has an easement to use its right of way, the subsurface below the railroad and the air above the railroad are unregulated spaces, free for the taking by anyone for any purpose," and that "until a trespasser actually causes a derailment, a crossing accident, or some other demonstrable damage to railroad property, employees, or the public, the railroad has no power to stop the trespasser from doing whatever it wants with that space and installing whatever structures come to mind."  [Filing No. 624 at 15.]  The Court disagrees that its Order leads to this parade of horribles.  Indeed, had CSXT established that its easements were exclusive or presented any evidence that anyone had actually damaged its property, it may have had viable trespass and rent claims for sites for which it holds easements.  The Court's ruling was based on that absence of evidence, and whether or not to present that evidence – assuming it exists – was CSXT's decision.

the Court's decision ignores the fact that it was based on the record evidence – or lack thereof – that CSXT determined to provide or not provide. A review of the Court's holding by the Seventh Circuit would necessitate "hunting through the record" to review the Court's decision which, again, was based on the record that CSXT created, making the issue inappropriate for an interlocutory appeal.

Second, as to the statute of limitations issue, the Court applied federal law (although noted that its holding was also consistent with Indiana and Illinois law) and found that the continuing trespass doctrine did not apply in determining when CSXT's claims accrued because the claims are not aimed at Zayo's performance of repairs or maintenance, but rather focus on "Zayo's installation of its fiber optic cables, an activity which had a clear ending date at each site." [Filing No. 607 at 46-47; *see also* Filing No. 607 at 57 ("[A]s discussed in connection with the application of the continuing trespass doctrine to the Indiana claims, CSXT's Illinois claims focus on Zayo's installations and not on wrongs that were committed after those installations.").] Again, the Court's holding was based on the record before it and on CSXT's characterization of its claims – which the Seventh Circuit would need to review in order to decide the continuing trespass doctrine issue.

Because the issues CSXT seeks to immediately appeal do not involve pure questions of law, the Court **DENIES** CSXT's Motion to Modify. *See Ahrenholz*, 219 F.3d at 676 (court may not certify an order for immediate appeal unless all criteria under § 1292(b) are satisfied). In any event, the Court briefly addresses the remaining requirements set forth in § 1292(b).

### 2. *Whether the Proposed Issues for Appeal Are Controlling*

A question of law is "controlling" if "its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). While resolving the easement and

statute of limitations issues in an immediate appeal would affect the litigation if CSXT were successful in the sense that additional claims would go forward, the same could be said of any issue that a losing party wishes to present for interlocutory appeal.  CSXT has asserted numerous claims in this case, several of which survived Zayo's Motion for Summary Judgment.  The easement and statute of limitations issues are not controlling in the way typical interlocutory appeal issues are – such as qualified immunity, whose resolution affects whether litigation against a particular party proceeds or does not.  Neither issue is controlling in this litigation, and the Motion to Modify is **DENIED** for this reason as well.

> 3.     *Whether the Proposed Issues for Appeal Are Contestable*

An issue is contestable when "there is a 'substantial likelihood' that the district court's order would be reversed on appeal." *Emley v. Wal-Mart Stores, Inc.*, 2020 WL 108374, at \*5 (S.D. Ind. 2020).  An issue is not contestable merely because "reasonable judicial minds could differ" or "when the court is unguided by binding precedent."  *Id.*  Courts consider "the strength of the arguments in opposition to the challenged ruling," including "examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification."  *In re Bridgestone/Firestone, Inc. Tire Prods. Liability Litig.*, 212 F. Supp. 2d 903, 909-10 (S.D. Ind. 2002) (quotation and citation omitted).  "[I]t is beyond dispute that interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decisions regarding the claimed controlling issue of law." *Carlson v. Brandt*, 1997 WL 534500, at \*6 (N.D. Ill. Aug. 22, 1997).  The Court recognizes that CSX contests its rulings, but those rulings were based on the Court's review of the record evidence and application of controlling law, and CSX has not set forth "substantial conflicting decisions." *Id.*

a.  <u>Easement Issue</u>

As for the easement issue, CSXT relies in part on cases from outside the Seventh Circuit that involved distinguishable facts and sets forth far-reaching policy arguments that it has discussed in different cases.  CSXT emphasizes that the Court did not follow what it calls the "majority view," but that characterization is CSXT's alone.  Indeed, the "majority view" CSXT sets forth is supported by a handful of cases, none of which apply to the facts presented here or contradict the Court's decision.  First, *Baltimore Cnty. v. AT&T Corp.*, 735 F. Supp. 2d 1063, 1089-90 (S.D. Ind. 2010), applied Maryland law to the easement issue – an issue to which the Court must, and did, apply Indiana law to Indiana sites and Illinois law to Illinois sites.  *Hynek v. MCI World Comms., Inc.*, 202 F. Supp. 2d 831 (N.D. Ind. 2002), involved the question of whether a railroad was obligated to compensate the landowner for a license it had granted to a fiber optic cable company.  The court granted a motion to dismiss filed by the railroad, but the case did not discuss whether the cable company was required to obtain a license from the railroad in the first place or whether the cable company trespassed on the land absence such a license.  Additionally, it is noteworthy that although CSXT characterizes *Hynek*, a 22-year-old district court case, as "controlling" and the "majority view," it only cited *Hyne*k once in its response to Zayo's Motion for Summary Judgment – in fine print in a footnote.  [Filing No. 482 at 23.]

Other cases relied upon by CSXT are from outside of the Seventh Circuit and did not apply Indiana or Illinois law.  *See Mellon v. Southern Pacific Trans. Co.*, 750 F. Supp. 226 (W.D. Tex. 1990); *State v. Preseault*, 652 A.2d 1001 (Vt. 1994).  And CSXT takes snippets from other cases that involved different factual scenarios.  *See, e.g., Territory of New Mexico v. U.S. Trust Co. of N.Y.*, 172 U.S. 171 (1898) (issue was whether railroad's "station buildings, workshops, etc." located within 100 feet of each side of railroad were included in railroad's right of way or sufficiently

attached to right of way such that it was exempt from taxation); *Western Union Tel. Co. v. Pennsylvania R. Co.*, 195 U.S. 540 (1904) (court considered specific easement language, but CSXT did not present the Court with specific easement language here – statutory or otherwise); *Chicago, St. L. & P.R. Co. v. Burger*, 124 Ind. 275 (Ind. 1890) (finding that owner of land had no right to enter property and remove rubbish and combustible material that railroad had allowed to accumulate, and that landowner had negligence claim against railroad for damage resulting from fire that spread); *Consumers' Gas Trust Co. v. American Plate Glass Co.*, 68 N.E. 1020 (Ind. 1903) (considered whether gas company's lease allowed it to drill gas wells and lay pipes on railroad right of way); *Pittsburgh, C. & St. L. Ry. Co. v. Jones*, 86 Ind. 496 (Ind. 1882) (finding that landowner was not contributorily negligent for failing to remove dry grass from railroad's right of way that ended up catching on fire).

In short, the cases relied upon by CSXT do not present a "majority view" that the Court failed to follow and do not indicate that the Court is likely to be reversed on the easement issue. The Court also notes that the litigation of this case, though rife with fits and starts and an oft amended case management plan, has proceeded along the normal course. One party filed suit and a party responded. All parties engaged in discovery, where they both sought and produced evidence. And then, the inevitable motions for summary judgment were filed. CSXT was challenged by Zayo in its Motion for Summary Judgment to provide evidence that its easements gave it exclusive rights to the sites where some of Zayo's installations had occurred. CSXT failed to do so. Under controlling Indiana and Illinois precedent, then, its claims for trespass to land for sites where it only held easements fail. The time for raising fact issues about the nature of the easements has passed, as summary judgment presented the "put up or shut up moment." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). The Court has ruled that Zayo is entitled to

judgment as a matter of law in its favor as to trespass to land[3] and rent claims for any sites where CSXT had an easement because CSXT has not proven that those easements were exclusive. CSXT's refusal to accept that ruling, or its current attempt to manufacture issues of fact as to the nature of the easements, is too little too late. The Court's decision was based on the record before it, which CSXT chose to present.

                b.     <u>Statute of Limitations Issue</u>

As to the statute of limitations issue, CSXT again relies on *Baltimore Cnty.*, 735 F. Supp. 2d 1063. It is a fourteen-year-old case in which the court considered how a Maryland court would determine the issue of whether the continuing trespass doctrine applied, despite CSXT's characterization otherwise. *Id.* at 1080-81 (stating that "[i]n the court's view, the Maryland courts would likely treat this case as one of continuing trespass" and that "the better view under Maryland law is that the installation and maintenance of buried cables is a continuing trespass"). Neither this case nor any others cited by CSXT lead to the conclusion that the Seventh Circuit is likely to reverse this Court's holding regarding the continuing trespass doctrine.

---

[3] The Court notes that the parties' Joint Report of remaining claims indicates that there may be confusion regarding CSXT's trespass to chattels/components claim. [*See* Filing No. 609-1 at 1 (Zayo noting that trespass to chattels claims fail because the Court has rejected CSXT's damages theory).] To clarify, the Court did not find in its Order on Zayo's Motion for Summary Judgment that CSXT lacks standing to assert its trespass to chattels/components claims and, notably, Zayo did not make that argument. Given that Zayo did not raise the trespass to components issue, the Court has no idea if CSXT has provided Zayo with evidence of damages to its components (separate and apart from the type of speculative damages espoused by Mr. Saar and already rejected by the Court). If not, CSXT's standing to pursue its trespass to chattels claim may remain at issue. *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980) (issue of court's subject-matter jurisdiction can be raised "at any time and at any stage of the proceedings"). But if so, the jury will determine whether the claim has merit.

In short, CSXT has not shown that the Court's holdings on the easement issue or the statute of limitations issue are likely to be reversed on appeal, so those issues are not contestable and the Motion to Modify is **DENIED** for this additional reason.

      4.    *Whether Resolution of the Proposed Issues for Appeal Will Speed Up the Litigation*

In order for an interlocutory appeal to be appropriate under § 1292(b), it must have the promise of speeding up the litigation. *Ahrenholz*, 219 F.3d at 675. There is no such promise here. CSXT essentially says that an immediate appeal would save time and resources because continuing to litigate the case within the parameters of the Court's Order on Zayo's Motion for Summary Judgment will require it to spend time identifying which sites remain for which claims and that if it prevails on an interlocutory appeal, none of that would be necessary. But CSXT does not propose immediately appealing other aspects of the Court's ruling such as its finding that CSXT has not provided evidence of damages at any of its sites other than the Montrose Street Location. While CSXT claims that the Seventh Circuit could consider other issues outside of the easement or statute of limitations issue on appeal, the Court considers only those issues in deciding the Motion to Modify. Even if the Seventh Circuit were to reverse the Court's holdings, work regarding which sites remain for which claims will still need to be done. And given the way that CSXT has litigated this case thus far (more on that below), it is highly likely that CSXT will appeal any negative result at the end of this litigation – resulting in two appeals to the Seventh Circuit. Moreover, every party that loses some of its claims on summary judgment would like to immediately appeal so that they can proceed to trial knowing what the Seventh Circuit would have said regarding those claims. But that is not how our system of litigation works, and interlocutory appeals are to be granted sparingly and only under specific circumstances not present here. *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 741 (7th Cir. 2007). In short, there is no indication that allowing

an immediate appeal of the easement and statute of limitations issue would promise to speed up this litigation.

### 5.   *Timeliness of the Motion to Modify*

While it is true that § 1292(b) does not impose a deadline for filing a motion to interlocutory review, it is worth noting that CSXT waited until 45 days after the Court's Order on Zayo's Motion for Summary Judgment to file its Motion to Modify.  [*See* Filing No. 607; Filing No. 624.]  CSXT explains that it was waiting to see whether the parties were able to agree regarding which claims remained for which sites, but that is an issue independent of the issues CSXT raises in its Motion to Modify and also a non-issue in the Court's view, since agreeing on which claims remained for which sites should have been relatively straightforward after the Court's specific rulings.  The timing of the Motion to Modify is interesting given that its filing followed various filings by CSXT related to whether its Chief Executive Officer is required to attend a June 27, 2024 settlement conference.  Absent an expedited briefing schedule set by the Magistrate Judge, [Filing No. 626], the Motion to Modify would not have been fully briefed by the settlement conference.  Tellingly, in its briefs challenging the Magistrate Judge's requirement that CSXT's Chief Executive Officer attend the settlement conference, CSXT argues that it cannot meaningfully consider settlement with the issues that are the subject of the Motion to Modify outstanding.  That said, despite this suspicious timing, the Court declines to find that the Motion to Modify was untimely, especially since CSXT has not met the other four requirements of § 1292(b) in any event.

CSXT has failed to satisfy the requirements for an interlocutory appeal set forth in § 1292(b) and its Motion to Modify the Court's Summary Judgment Order to Allow Interlocutory Review, [Filing No. 624], is **DENIED**.

## II.
### OBJECTION TO SETTLEMENT-CONFERENCE ORDERS

#### A.    Background

On May 31, 2024, at the Court's request, Magistrate Judge Mark Dinsmore set a settlement conference in this matter for June 13, 2024.  [Filing No. 611.]  In his Order, Magistrate Judge Dinsmore explained that clients or client representatives with complete settlement authority were required to attend and also ordered that "the chief executive officer of both Plaintiff CSX Transportation, Inc. and Defendant Zayo Group, LLC shall appear in person for the settlement conference." [Filing No. 611 at 1-2.]  Later that day, CSXT filed a First of Two Motions to Vacate Settlement Conference for Good Cause, advising that its lead counsel would be out of the country from June 11 to June 24 and that it would "assess the availability of CSXT" and submit a second motion.  [Filing No. 612 at 2-3.]  On June 3, 2024, Magistrate Judge Dinsmore granted CSXT's Motion to Vacate and re-set the settlement conference for June 27, 2024.  [Filing No. 613.]

Later on June 3, 2024, CSXT filed a 15-page Motion to Modify Order Concerning Required Attendees at Settlement Conference Consistent With Court's Prior Order Approving CSXT Attendees at Prior Settlement Conference.  [Filing No. 615.]  In its Motion to Modify Order, CSXT requested that the Court excuse its Chief Executive Officer, Joseph Hinrichs, from attending the June 27, 2024 settlement conference and, instead, permit its Vice President of Business Development and Real Estate, Christina Bottomley, to attend in his place.  [Filing No. 615 at 1-2.] CSXT argued that Ms. Bottomley "possess[es] the requisite settlement authority and knowledge necessary to negotiate a settlement"; that "[t]aking [Mr. Hinrichs] away from his other significant duties and responsibilities to travel to and attend the second settlement will not serve the interests of justice or facilitate a settlement in this case"; that Mr. Hinrichs lacks "direct knowledge and involvement in the prior settlement conference and the management of this litigation"; that the

Court allowed Ms. Bottomley to attend the first settlement conference in this matter instead of requiring Mr. Hinrichs or some other specific individual to attend; that Mr. Hinrichs and other individuals were available by telephone during the first settlement conference and CSXT "negotiated in good faith, and fully participated throughout the [first settlement] conference"; that Zayo has designated documents for attorney review only and "many or most" of CSXT's settlement demands "will be based in large part upon CSXT's request[ ] for…actual damages in the amount of value of the property that Zayo misappropriated from CSXT" which is reflected in the restricted documents; that Mr. Hinrichs "is only generally aware of the nature of the legal dispute with Zayo and has not had any direct involvement or participation in the management of the case or the evaluation of the case for settlement purposes"; and that Mr. Hinrichs "rel[ies] upon the attorneys in CSXT's Law Department to evaluate legal matters and litigation risks." [Filing No. 615 at 2-11.]

On June 4, 2024, Magistrate Judge Dinsmore denied CSXT's Motion to Modify Order, noting CSXT's position that Mr. Hinrichs "is only generally aware of the nature of the legal dispute with Zayo and has not had any direct involvement or participation in the management of the case or the evaluation of the case for settlement purposes," and stating that "[t]he Court views that as a problem, and certainly not a valid reason to excuse Mr. Hinrichs from participating in the settlement conference." [Filing No. 616 at 1 (quotation and citation omitted).] Magistrate Judge Dinsmore noted that at the first settlement conference, Mr. Bottomley and CSXT's in-house counsel "took settlement positions that rendered settlement impossible," and that since the Court's issuance of the Order on Zayo's Motion for Summary Judgment, CSXT has "taken positions regarding [the Order] that cause the Court to question the sincerity of [CSXT's] representations."

[Filing No. 616 at 2.]  Magistrate Judge Dinsmore found that Mr. Hinrichs "is an essential participant" at the June 27, 2024 settlement conference.  [Filing No. 616 at 2.]

On June 11, 2024, CSXT filed a Motion to Reconsider Orders Setting Settlement Conference in which it argued that the Motion to Modify the Court's Summary Judgment Order to Allow Interlocutory Review shows that "it is not possible to fully resolve this case while the Summary Judgment Order remains in effect," so the settlement conference should be postponed while CSXT exhausts appellate options.  [Filing No. 625 at 5.]  CSXT also requested that the Magistrate Judge reconsider his requirement that Mr. Hinrichs attend the settlement conference, setting forth the same arguments it had previously made, and argued that it did not render settlement impossible at the first settlement conference.  [Filing No. 625 at 5-9.]  On June 12, 2024, Magistrate Judge Dinsmore summarily denied CSXT's Motion to Reconsider Orders Setting Settlement Conference.  [Filing No. 627.]  CSXT's Objection to Settlement-Conference Orders, currently pending before this Court, followed two days later.  [Filing No. 628.]

### B.  Standard of Review

The standard of review of a magistrate judge's decision "varies depending on whether the matter was dispositive."  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). For dispositive matters, review is *de novo*.  *Id.*  Fed. R. Civ. P. 72(b).  For non-dispositive matters, review is far more deferential.  *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).  An objection to a non-dispositive decision will only be sustained if the decision is "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a).  Clearly erroneous means that the district court is left with a "definite and firm conviction that a mistake has been made."  *Weeks*, 126 F.3d at 943.  Contrary to law means that the decision "fail[ed] to apply or misapplie[d] relevant statutes, case law, or rules of procedure."  *Pain Ctrs. of Se. Ind., LLC v. Origin Healthcare Sols.,*

*LLC*, 2014 WL 6674757, at *2 (S.D. Ind. Nov. 25, 2014). The orders that CSXT's objects to are all non-dispositive, so the Court applies the "clearly erroneous or contrary to law" standard.

    **C.**    **Discussion**

    In its 22-page Objection, CSXT reiterates all of the arguments that it has already made regarding why it does not believe that Mr. Hinrichs should have to attend the settlement conference. [Filing No. 628.] It argues further that Fed. R. Civ. P. 16 "does not authorize the Court to dictate a specific corporate representative to attend a settlement conference," that the advisory committee notes to Rule 16 state that the selection of the appropriate representative to attend a settlement conference "should ordinarily be left to the party and its counsel," that the Court must articulate legally adequate reasons to establish why the attendance of a certain corporate representative is necessary, that the Court cannot "force a settlement," and that a designated corporate representative does not have to be willing to settle "on someone else's terms." [Filing No. 628 at 1-6.] CSXT asserts that the only reason the Magistrate Judge gave for requiring Mr. Hinrichs' attendance relates to CSXT's prior settlement positions and its "post-summary judgment litigation positions," and that "the record evidence establishes that these statements are clearly erroneous and do not justify compelling" Mr. Hinrichs' attendance. [Filing No. 628 at 7-8.] CSXT reiterates its belief that it did not render settlement impossible at the first settlement conference and contends that its "concerns with the Summary Judgment Order are both sincere and well-founded given that unauthorized trespassers in Illinois and Indiana now believe they may excavate on or under CSXT's operating rail corridor without supervision or prior coordination." [Filing No. 628 at 14.] Finally, CSXT argues that the need for immediate appellate review of the Court's Order on Zayo's Motion for Summary Judgment "obviates any present need for a settlement conference." [Filing No. 628 at 20.]

- 19 -

Despite what CSXT argues, Magistrate Judge Dinsmore has provided two reasons for requiring Mr. Hinrichs' attendance at the June 27, 2024 settlement conference.  First, Magistrate Judge Dinsmore noted that at the first settlement conference, CSXT "took settlement positions that rendered settlement impossible."  [Filing No. 616 at 2.]  The Court was not at the first settlement conference, nor is it – or should it – be privy to what occurred.  It cannot conclude from the information before it that Magistrate Judge Dinsmore is clearly erroneous or is acting contrary to law in requiring Mr. Hinrichs' attendance at the settlement conference due to what occurred at the first settlement conference.  Indeed, the Court defers to Magistrate Judge Dinsmore's evaluation as to the nature of the earlier proceedings.

Second, Magistrate Judge Dinsmore based his decision to require Mr. Hinrichs' attendance at the settlement conference on the positions CSXT has taken since the Court issued its Order on Zayo's Motion for Summary Judgment, which "cause the Court to question the sincerity of [CSXT's] representations."  [Filing No. 616 at 2.]  While Magistrate Judge Dinsmore did not expand on this, the Court agrees that CSXT's conduct since that Order was issued demonstrates that CSXT is  simply refusing to accept the Court's rulings which were based on the evidentiary record it provided.  As an example, the Court explained in the Order that CSXT's theory of damages is not supported by the law and that it has not set forth any evidence of concrete and particularized damage at any sites other than the Montrose Street Location.  Yet, CSXT still insists that it has adequately alleged that it has suffered damages.  [*See, e.g.*, Filing No. 624 at 3 (criticizing the Court's finding regarding standing and insinuating that it has plausibly alleged that it suffered a cognizable injury).]  Additionally, CSXT has ignored the Court's Order on Zayo's Motion for Summary Judgment and continued to include on the Joint Report of sites for which viable claims remain claims that did not survive summary judgment.  [*See, e.g.*, Filing No. 609-1

at 3 (including trespass to land and rent claim for site where KMZ mapping shows installation is on a public right of way, despite the Court's grant of summary judgment in favor of Zayo on that claim).]  The Joint Report – as clearly set forth by the Court in its Order – was to comprise only sites for which viable claims remained *according to the Court's Order on Zayo's Motion for Summary Judgment* – not according to what CSXT wishes or thinks it could prove if given another chance.  Further, CSXT argues in its reply in support of its Motion to Modify that the Court's requirement that the parties file a Joint Report listing sites for which claims remain after the Order on Zayo's Motion for Summary Judgment indicates that "[i]n a sense,…the Court's [summary judgment] ruling was not 'final' because it recognized uncertainty about the specific installations for which the Court was granting summary judgment and contemplated future proceedings to address that issue."  [Filing No. 630 at 9.]  CSXT's assertion is disingenuous.  As the Court explained in the Order on Zayo's Motion for Summary Judgment, it ordered the parties to file the Joint Report due to "the sheer volume of sites for which CSXT seeks relief," and the fact that the parties "are much more familiar with those sites and the evidence related to those sites" – not because there is some outstanding uncertainty regarding the Court's rulings.  Indeed, the Court believed the list would be fairly easy to compile, given the parties' knowledge of the sites and the fact that the evidentiary record related to the issues raised on summary judgment is complete.  CSXT's actions, also evidenced by the nearly 50 pages in briefs it has filed related to whether there should be a settlement conference and who should be required to attend, demonstrate either some level of denial or a lack of respect for the Court's orders.  Neither is good.  And CSXT's statement in support of its Motion to Modify the Court's Summary Judgment Order to Allow Interlocutory Review that the Seventh Circuit could review issues beyond the easement and statute of limitations issues, [Filing No. 630 at 7], lead the Court to believe that CSXT views the interlocutory appeal

as a way to get a full do-over of the ruling on Zayo's Motion for Summary Judgment and another chance at proving its claims.

Finally, and directly related to how CSXT has conducted this litigation, CSXT has supplied another reason why the Court finds that Magistrate Judge Dinsmore's requirement that Mr. Hinrichs attend the settlement conference is not clearly erroneous or contrary to law. CSXT emphasizes that Mr. Hinrichs does not know much about this litigation, nor how it is being conducted. The Court concurs with Magistrate Judge Dinsmore that this is not a positive thing. Indeed, having Mr. Hinrichs present at the settlement conference may be beneficial so that he becomes aware of the posture of this case and what claims actually remain – and not what claims CSXT's counsel may think remain.[4] The Court finds that Magistrate Judge Dinsmore's decision to require Mr. Hinrichs to attend the settlement conference was not clearly erroneous.

Further, Fed. R. Civ. P. 16 does not prohibit Magistrate Judge Dinsmore from requiring Mr. Hinrichs' attendance, and none of the cases CSXT points to involve circumstances similar to those present in this case, where conduct at an earlier settlement conference, litigation conduct in general, and a lack of awareness of the litigation by the Chief Executive Officer informed the Magistrate Judge's decision. Accordingly, the Court also finds that Magistrate Judge Dinsmore's decision is not contrary to law. The Court **OVERRULES** CSXT's Rule 72(a) Objection to Settlement-Conference Orders, [Filing No. 628].

---

[4] The Court acknowledges that Magistrate Judge Dinsmore granted Zayo's request that its Chief Financial Officer be able to attend the settlement conference in lieu of its Chief Executive Officer, but does not find this fact significant given that Magistrate Judge Dinsmore did not make similar findings regarding Zayo's actions at the first settlement conference or in this litigation generally, and that Zayo has not informed the Court that its Chief Executive Officer is unaware of how this litigation is being conducted. Additionally, Zayo's Chief Executive Officer has a specific commitment on June 27, 2024, as opposed to CSXT's Chief Executive Officer, who seeks a pass to attend a settlement conference no matter when it is held.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** CSXT's Motion to Modify the Court's Summary Judgment Order to Allow Interlocutory Appeal, [624], and **OVERRULES** CSXT's Rule 72(a) Objection to Settlement-Conference Orders, [628].

Date: 6/24/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

- 23 -