UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 1:21-cv-02859-JMS-MJD |
| *vs.* | ) | |
| | ) | |
| ZAYO GROUP, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Plaintiff CSX Transportation, Inc. ("CSXT") initiated this matter alleging that Defendant Zayo Group, LLC ("Zayo") installed a fiber optic network system that damaged CSXT's property. During the course of the litigation, disputes have arisen regarding the exact locations of Zayo's installations, resulting in various motions and Court orders. The latest such motion is CSXT's Second Motion to Prohibit Repudiation of KMZ Files, [Filing No. 541], which is ripe for the Court's decision.

### I.
### BACKGROUND

In order to understand the current dispute between CSXT and Zayo regarding the exact locations of Zayo's installations, a fairly extensive discussion of the background of the dispute is necessary and is set forth below.

### A.    CSXT's Initial Interrogatories to Zayo Regarding Zayo's Installation Locations and CSXT's Motion to Compel

On December 17, 2021, CSXT served interrogatories on Zayo which stated as follows:

**INTERROGATORY NO. 1.**    Identify and Describe all Relevant Zayo Installations during each of the past five (5) years in the states of Indiana or Illinois. Please include a geographic reference point for each Relevant Zayo Installation, for

- 1 -

example, a nearby DOT Crossing Number, an approximate street address, or approximate GPS coordinates.

**INTERROGATORY NO. 2.**  For each Relevant Zayo Installation Identified in response to Interrogatory No. 1, Identify and Describe each and every CSXT approval, permit, authorization, contract, agreement, consent, or license for the Installation.  If there are no such approvals, permits, authorizations, contracts, agreements, consents, or licenses for any Relevant Zayo Installation, so state for each applicable Relevant Zayo Installation.

[Filing No. 39-1 at 9-10.]

After serving initial responses to Interrogatories 1 and 2, the parties filed a stipulation on July 6, 2022 which reflected agreed-upon parameters for Zayo's response, including that Zayo would produce an interactive map or .kmz files.[1]  [Filing No. 119 at 1.]  The stipulation provided:

1.      Zayo will fully and completely respond to Interrogatories Nos. 1 and 2, as written, under oath, by July 11, 2022….


2.      Zayo will produce to CSXT an interactive map that shows all of the Zayo network in Indiana and Illinois by July 11, 2022.  In the alternative, Zayo will produce its complete and up-to-date KMZ file to CSXT by July 11, 2022.

[Filing No. 119 at 1.]  On July 11, 2022, Zayo served amended responses to Interrogatories 1 and 2 and produced three .kmz files.  [Filing No. 133-2.]  As to Interrogatory 1 and the accompanying .kmz files, Zayo stated the .kmz files reflected installations "within 150 feet of railroad track that [CSXT] may allege an interest in," but that Zayo "does not have sufficient information to describe the nature, if any, of [CSXT's] ownership interest(s), in such locations."  [Filing No. 133-2 at 2.]

Unsatisfied with Zayo's responses to Interrogatories 1 and 2, CSXT filed a Motion to Compel Complete, Accurate, and Immediate Discovery Compliance.  [Filing No. 135.]  Magistrate Judge Mark Dinsmore held a hearing and denied the Motion to Compel as to Interrogatory 1, but

---

[1] The .kmz files display geographical data, including custom overlay information, and are viewable in map applications like Google Earth.

granted it as to Interrogatory 2.  [Filing No. 161.]  For Interrogatory 1, the Magistrate Judge found that "the .kmz files as produced satisfied [Zayo's] obligation pursuant to Federal Rule of Civil Procedure 33(d), given the information [Zayo] had at the time it provided its interrogatory responses," but ordered Zayo to revise its .kmz files because it now had "the .kmz files that identify [CSXT's] relevant property interests." [Filing No. 161 at 3-6.]  Pursuant to the Magistrate Judge's Order, Zayo produced another .kmz file on September 16, 2022.  [Filing No. 345-8 at 2.]

As to Interrogatory 2, the Magistrate Judge found that Zayo had not provided CSXT with all of the information that it had at the time of the response.  [Filing No. 161 at 5.]  The Magistrate Judge required Zayo to serve a supplemental response that satisfied certain criteria and to include in its response certain certification language, [Filing No. 161 at 6], which Zayo did, [Filing No. 345-8 at 2].

### B.    The Magistrate Judge's First Order Regarding Repudiation of the .kmz Files

In June of 2023, CSXT filed a Motion to Prohibit Zayo's Repudiation of Its KMZ Mapping Files in which it argued that Zayo had disclaimed the accuracy of the .kmz files Zayo had produced, as reflected in the testimony of certain Zayo witnesses who stated that the .kmz files may not be 100% accurate due to the nature of underground installations and the way that the .kmz files are generated.  [Filing No. 346 at 5-8.]  CSXT requested that the Court find that: (1) the lines indicating installations that are reflected on Zayo's .kmz files "[are] taken as established for purposes of the action"; and (2) Zayo "is not allowed to use" information contradicting the lines drawn on Zayo's .kmz files "to supply evidence on a motion, at a hearing, or at a trial."  [Filing No. 346 at 9 (quotations omitted).]

The Magistrate Judge entered an Order on July 19, 2023 granting in part and denying in part CSXT's Motion to Prohibit Zayo's Repudiation of Its KMZ Mapping Files (the "KMZ Order"). [Filing No. 379.]  The Magistrate Judge stated:

> As previously noted, there is no question that Zayo represented to [CSXT] and the Court that its .kmz files showed the location of its installations.  Zayo will not be permitted to deny that fact by generally asserting that the .kmz files are not accurate or cannot be relied upon to determine precise locations.  Zayo made no such qualifications in its interrogatory response, in its response to the motion to compel, or at the hearing on the motion to compel.  The fact that Interrogatory No. 1 sought only general location information does not change the fact that, rather than providing that general information (such as a "nearby DOT Crossing Number"), Zayo purported to provide a visual depiction of the location of the installations, without qualification.  In the absence of any contrary evidence from Zayo, [CSXT] was, and is, entitled to rely upon Zayo's representations that the .kmz files depicted the location of its installations.
>
> That said, discovery is still open, and the Court does not agree with [CSXT] that Zayo may not supplement or amend its interrogatory response if it obtains new, specific evidence that the .kmz file is inaccurate as to a particular installation.  It has until the close of liability discovery, **August 11, 2023**, to do so.

[Filing No. 379 at 4-5 (emphasis in original).]  The Magistrate Judge also noted in a footnote:

> Obviously, had Zayo provided only general locations, [CSXT] would have had to have used the discovery process to obtain more exact location information.  In providing the .kmz files in the manner that it did, Zayo effectively relieved [CSXT] of the need to conduct such further discovery, a result which benefitted Zayo, which would have otherwise been required to provide more precise location information.

[Filing No. 379 at 4.]  Further, the Magistrate Judge stated in another footnote that, "[t]o the extent that Zayo obtains new evidence that renders its previous factual statements incorrect, and timely amends or supplements its discovery responses accordingly, the Court does not find that it would be equitable to bar the use of that new evidence based on the doctrine of judicial estoppel." [Filing No. 379 at 5.]

### C.      Zayo's Supplemental Response to Interrogatory 1

On August 11, 2023 – the day that fact discovery closed – CSXT and Zayo both served

discovery responses on the other.   [*See, e.g.*, Filing No. 571-1.]   Pursuant to the KMZ Order, Zayo

served its Supplemental Responses to CSXT's First Set of Interrogatories, in which it

supplemented its response to CSXT's Interrogatory 1 as follows:

> Zayo responds that the KMZ files it has produced in this litigation are the most
> comprehensive documentation in its possession, custody and control that depict all
> installations throughout Indiana and Illinois.   Zayo further responds that its KMZ
> files are created by manually transferring information from printed as-builts
> [("Construction Drawings")] to the KMZ software.   Contractors in the field will
> draw on construction prints after the construction work on an installation is
> complete, submit those drawings to Zayo, and Zayo enters the information from the
> drawings to the KMZ file.   Thus, the [Construction Drawings] are the most accurate
> information depicting Zayo's fiber installations absent having a locator and
> surveyor physically inspect the installation – a process which also has a margin of
> error of approximately 2 feet.   Zayo has produced numerous [Construction
> Drawings] in this litigation and supplements its response to Interrogatory No. 1 by
> referring [CSXT] to Attachment A to Zayo's supplemental responses to [CSXT's]
> Interrogatory 10, referencing the bates-labeled [Construction Drawings] in the
> column "Construction Drawings" for each Relevant Alleged Incursion Zayo has
> been able to locate in its possession[,] custody and control after a reasonable search.
>
> Many of the installations listed on [CSXT's] December 2022 Draft Incursion list
> are either locations where (1) Zayo did not complete the installation, and instead
> acquired the installation from another entity, (2) Zayo does not own the conduit,
> but rather leases space in another entity's conduit for the placement and use of fiber,
> or (3) Zayo does not own the conduit or the fiber but leases the fiber from another
> entity.   Because Zayo benefits from other entities' installations at these locations,
> but Zayo did not itself complete the installations, Zayo may not have the
> construction drawings in its custody or control.   Where Zayo does not have a
> construction drawing applicable to the site, [it] supplements its response by
> identifying these [Construction Drawings] in the chart below.   These [Construction
> Drawings] are a more reliable and precise depiction of the location of the fiber
> installed at each of these locations, and supersede the KMZ files as to these
> locations.   Zayo refers to these [Construction Drawings] pursuant to Fed. R. Civ.
> P. 33(d) as to locations identified in the "Construction Drawings" column of
> Attachment A to Zayo's Supplemental Response to [CSXT's] Fifth Set of
> Interrogatories, as well as ZAYO_2_003981-ZAYO_2_004005 and
> ZAYO_2_004419-ZAYO_2_004507 relative to the Jackson Street Installation.

[Filing No. 571-2 at 5-6.]

### D. Zayo's Supplemental Response to Interrogatory 10

Also on August 11, 2023, Zayo served a Supplemental Response to [CSXT's] Fifth Set of Interrogatories, in which it supplemented its response to Interrogatory 10 which asked Zayo to, "[f]or each Relevant Zayo Installation listed on the December 5, 2022 Incursion List, Identify and Describe the Installation Details." [Filing No. 571-3 at 5.]  In its supplemental response, Zayo provided specific information regarding numerous sites and provided a spreadsheet (the "Rog 10 Spreadsheet") that listed for each site where available: (1) the CSXT PIN; (2) the placement of the installation (aerial or underground); (3) the city and state in which the installation was located; (4) the installing company; (5) the date of the installation; (6) the "Fiber Count"; (7) the "Fibers in Use"; (8) the contractor; (9) the Bates number of the associated Construction Drawing; and (10) the Bates number of the associated "impact report." [Filing No. 571-3 at 18-36.]  The Rog 10 Spreadsheet was the "Attachment A" that Zayo referred to in its supplemental response to Interrogatory 1.  [*See* Filing No. 571-2 at 5-6.]

Zayo served a revised Rog 10 Spreadsheet on CSXT on August 25, 2023.  [Filing No. 571-4.]  The revised Rog 10 Spreadsheet was emailed to CSXT's counsel with a message that explained that "[d]ue to a processing error with our e-discovery vendor, there were documents which were produced but were not listed by bates number in the 'Construction Drawings' column.  Some of these documents may be duplicates of previously listed documents." [Filing No. 571-4 at 2.]

### E. Zayo's Experts Disavow the Accuracy of the .kmz Files

On November 6, 2023, Zayo's expert, Gary Kent, issued a Report in which he opined: "[u]pon examination of the various crossings, it is clear that there are cases where the Zayo KMZ is erroneous in its depiction of the Zayo line." [Filing No. 541-1 at 3.]  Mr. Kent criticized CSXT's

expert, Beth Harper, because she "relies solely on the Zayo KMZ as representing the location of

the Zayo line, and she has assumed that KMZ to be correct." [Filing No. 541-1 at 3.]

Also on November 6, 2023, another Zayo expert, Gillian Leytham, stated in her Expert

Disclosure as follows:

> It is notable that [CSXT expert] Ms. Harper's analysis appears to largely rely upon
> the lines shown on the KMZ file – as opposed to the ones depicted on the
> [Construction Drawings], which would be far more accurate.  Based on the right-
> of-way boundaries depicted on the [Construction Drawings] (which were Norfolk-
> approved at a minimum), the fiber optic facilities are properly within the bounds of
> the Norfolk right-of-way.

> CSXT also has not provided any documentation demonstrating either that the
> facilities are not within the Norfolk corridor or that Norfolk is without the proper
> authority to have granted permission for such occupancy within its corridor.
> Additionally, CSXT has not provided any documentation disputing that the Norfolk
> right-of-way lines as shown on the [Construction Drawings] are inaccurate.

[Filing No. 541-3 at 8.]

On January 11, 2024, yet another Zayo expert, Harvey Stone, testified as follows at his

deposition:

> A:    Quite frankly, I don't think the KMZ is that accurate.

> Q:    Do you intend to testify as to that at the trial?

> A:    It's an opinion.  I did not review the KMZs closely, but what I saw looked
>       like they weren't a hundred percent accurate.

> Q:    So are you going to say that at the trial?

> A:    I don't know.

[Filing No. 541-2 at 6.]

## II.
### DISCUSSION

In support of its motion, CSXT argues that Mr. Kent, Mr. Stone, and Ms. Leytham made

their "statements contradicting the Zayo KMZ files" after the August 11, 2023 deadline by which

Zayo was permitted to supplement or amend its interrogatory responses relating to the accuracy of the .kmz files. [Filing No. 541 at 3.] It asserts that even if the experts were allowed to belatedly make their contradictory statements, none offer any new or specific evidence that the .kmz files are inaccurate. [Filing No. 541 at 3.] CSXT argues that Mr. Kent "admitted that his repudiation of the Zayo certified KMZ file was based only upon: (A) the KMZ files loaded into Google Earth, and (B) one 'as built' Zayo drawing that relates to Columbus." [Filing No. 541 at 3.] It asserts that "the KMZ files cannot recursively qualify as 'new' evidence that those files are themselves inaccurate," and that the Columbus Construction Drawing Mr. Kent appears to reference was produced on July 11, 2023, so cannot be considered "new." [Filing No. 541 at 3-4.] As to Mr. Stone's testimony, CSXT argues that he admitted that he did not look at the .kmz file; "did not compare the KMZ to the plan or to the photos"; "did not review the KMZs closely"; "did not perform an investigation" in relation to the KMZ files; "didn't use the KMZ files"; and it is "not part of [his] analysis to determine the KMZ's accuracy or not." [Filing No. 541 at 4 (quotations omitted).] CSXT contends that "[w]ith these admissions, it is inconceivable that [Mr.] Stone would be permitted to testify that he 'do[es] not' think the KMZ is that accurate,' especially in light of this Court's clear order to the contrary." [Filing No. 541 at 4.] Finally, CSXT argues that Ms. Leytham "directly contradicts" the KMZ Order by criticizing Ms. Harper for relying on the .kmz files and that Ms. Leytham "attempts to reverse this Court's clear allocation of the burden of proof when she states: 'CSXT also has not provided any documentation demonstrating either that the facilities are not within the Norfolk corridor or that Norfolk is without the proper authority to have granted permission for such occupancy within its corridor,'" but that "[u]nder the [KMZ Order] it is Zayo's burden to contradict the KMZ files by a date certain, not CSXT's burden." [Filing No. 541 at 4.]

In its response, Zayo argues that it is not clear upon which legal principles CSXT bases its motion because it does not cite to any legal authority. [Filing No. 572 at 7.] It asserts that it has complied with the KMZ Order in terms of how and when it could supplement its response to Interrogatory 1 and "there is thus no grounds to invoke the KMZ Order against Zayo in the way CSXT seeks." [Filing No. 572 at 8.] Zayo notes that in the KMZ Order, the Magistrate Judge "rejected CSXT's position that Zayo's as-produced KMZ files constituted the absolute final word in this action," and acknowledged that contrary evidence may exist and that Zayo was permitted to supplement its discovery responses. [Filing No. 572 at 8.] Zayo asserts that the Magistrate Judge "did not rule going forward that the installations reflected in the KMZ files were established for purposes of the action." [Filing No. 572 at 8 (quotation and citation omitted).] Zayo argues that the Magistrate Judge in the KMZ Order "expressly rejected the argument that judicial estoppel prevents Zayo from using its amended or supplementary responses to Interrogatory 1, or new evidence that contradicts the accuracy of KMZ files at certain locations," and contends that it amended its response to Interrogatory 1 by the August 11, 2023 deadline. [Filing No. 572 at 9.] Zayo argues further that Mr. Kent, Mr. Stone, and Ms. Leytham all testified consistently with Zayo's August 11, 2023 supplemental response and disclosure. [Filing No. 572 at 10-11.] Zayo also asserts that CSXT improperly seeks to limit lay testimony, despite basing its motion on a paragraph of the Case Management Plan that relates to expert testimony only. [Filing No. 572 at 11-12.] Finally, Zayo argues that "[a]lthough [it] contends that the expert testimony it seeks to introduce complies with the KMZ Order and its requirements, even if its experts did seek to testify to opinions that contradicted or expanded on Zayo's previous discovery responses, CSXT cites no rule or principle that prohibits such testimony," and that "[i]f in their professional opinions, the KMZ files cannot be or are not precise depictions of the placement of the fiber optic cables at

issue, Zayo's previous interrogatory response stating that these files depict its installations should not preclude this testimony." [Filing No. 572 at 12.]

CSXT did not file a reply brief.

The Court notes at the outset that CSXT does not indicate upon what legal authority its Second Motion to Prohibit Repudiation of KMZ Files is based. Its initial Motion to Prohibit Zayo's Repudiation of Its KMZ Mapping Files was based on Fed. R. Civ. P. 37 and the doctrine of judicial estoppel, [see Filing No. 346], but CSXT does not reference either in the current Motion, [see Filing No. 541]. The Court distills CSXT's arguments into two: (1) that the statements by Mr. Kent, Mr. Stone, and Ms. Leytham constitute supplements to Zayo's discovery responses related to the .kmz files and are belated because they were made after the August 11, 2023 deadline set forth in the KMZ Order for providing any supplementations related to whether a .kmz file is inaccurate as to a particular installation; and (2) that Mr. Kent, Mr. Stone, and Ms. Leytham do not, and should not be allowed to, offer any new or specific evidence that the .kmz files are inaccurate. [See Filing No. 541.]

The Court first notes that by failing to file a reply brief, CSXT has waived any opposition to the arguments that Zayo made in its response brief. See Ennin v. CNH Indus. Am., LLC, 878 F.3d 590, 596 (7th Cir. 2017) ("Where a brief is permitted as a matter of right, a party must file it or risk waiver of any arguments it has neglected to raise."); Hardy v. City Optical Inc., 39 F.3d 765, 771 (7th Cir. 1994) ("In an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which [a] decision will be based, the failure to reply to an adversary's point can have serious consequences."). The Court could deny CSXT's Motion on this basis alone, but because it prefers to decide motions on the merits, it discusses the parties' arguments below.

**A.      Whether Mr. Kent's, Mr. Stone's, and Ms. Leytham's Statements Constitute Belated Supplements to Zayo's Interrogatory Responses**

The parties agree that the KMZ Order required Zayo to supplement its discovery responses related to the accuracy of the .kmz files by August 11, 2023, and that Mr. Kent's, Mr. Stone's, and Ms. Leytham's statements came after that deadline.  They disagree regarding the effect of those statements.  The August 11, 2023 deadline was for liability discovery, not expert discovery, and applied to Zayo's supplementation of its interrogatory responses.  The deadline did not apply to expert opinions.  The Court finds that Mr. Kent's, Mr. Stone's, and Ms. Leytham's statements regarding the accuracy of the .kmz files are not belated supplements to Zayo's interrogatory responses – indeed, they are not interrogatory responses at all, but rather expert opinions.

**B.      Whether Mr. Kent, Mr. Stone, and Ms. Leytham Can Disavow the Accuracy of the .kmz Files**

At bottom, CSXT is making a fairness argument – that Zayo cannot represent that the .kmz files are accurate, but then contradict that notion through its experts.  But upon close analysis of the statements CSXT points to, those statements do not contradict Zayo's timely supplementary interrogatory responses.

*1.      Mr. Kent*

CSXT complains regarding two statements made by Mr. Kent: (1) "Upon examination of the various crossings, it is clear that there are cases where the Zayo KMZ is erroneous in its depiction of the Zayo line"; and (2) criticism of Ms. Harper's opinions because she "relies solely on the Zayo KMZ as representing the location of the Zayo line, and she has assumed that KMZ to be correct." [Filing No. 541 at 2.]  Zayo supplemented its discovery responses on August 11, 2023 to explain that the Construction Drawings are the most accurate information showing Zayo's installations and by producing the Rog 10 Spreadsheet, which referenced the Construction

- 11 -

Drawings in a separate column for each site where available.  Mr. Kent specifically refers to a Zayo installation "in the vicinity of 18005 0014 and 0015" as an example of the .kmz file inaccurately reflecting the installation location.  [Filing No. 541-1 at 3.]  When questioned about his statement regarding the .kmz files not always being accurate, Mr. Kent stated that his statement was based on "[t]he way the KMZ files plot onto the Google Earth imagery, and in the one case there was [a Construction Drawing listed in his Report] to the contrary also."  [Filing No. 542-1 at 6.]  The Rog 10 Spreadsheet shows that for site 18005 0014, Zayo incorporated testimony from its 30(b)(6) witness for the specifics of that site, [Filing No. 571-3 at 32], and Zayo points to an exhibit from the 30(b)(6) deposition which appears to be a Construction Drawing for a site – presumably site 18005 0014, [see Filing No. 542-2; Filing No. 571-5 at 2].  All this to say that Mr. Kent testified that he believes the .kmz files are sometimes inaccurate, and bases that opinion on the Construction Drawing.  The Court does not read his testimony as a blanket statement that the .kmz files are inaccurate, but rather that they may sometimes be inaccurate as shown by comparing them to the Construction Drawings.  Mr. Kent's statement that "there are cases where the Zayo KMZ is erroneous in its depiction of the Zayo line," [Filing No. 541-1 at 3], is perfectly consistent with Zayo's discovery responses and with the Rog 10 Spreadsheet.

As for his criticism of Ms. Harper for relying solely on the .kmz files as representing the locations of the installations, Mr. Kent's position that the .kmz files do not always reflect the location of a particular installation, again, is consistent with Zayo's discovery responses as supplemented on August 11, 2023.  To the extent CSXT argues that Ms. Harper did not rely solely on the .kmz files, or that she was entitled to rely on the files based on Zayo's discovery responses, CSXT is entitled to address that issue with Mr. Kent during cross-examination or with Ms. Harper during its case-in-chief.

The two statements of Mr. Kent that CSXT focuses on do not contradict Zayo's timely supplements to its interrogatory responses and do not provide a basis for granting CSXT's motion.

       2.    *Mr. Stone*

CSXT points to the following statements by Mr. Stone during his deposition:  "Quite frankly, I don't think the KMZ is that accurate," and "It's an opinion.  I did not review the KMZs closely, but what I saw looked like they weren't a hundred percent accurate." [Filing No. 541 at 2] (citing Filing No. 541-2 at 6).]  The testimony to which CSXT refers related to questions about an installation near Jackson Street in Greencastle, Indiana (the "Jackson Street Location"), a site that was within the original, narrow, focus of this lawsuit.  [*See* Filing No. 541-2 at 5.]  Mr. Stone testified that he looked at photos of the site and that certain drawings reflected the location of the installation at that site.  [Filing No. 541-2 at 5-6.]  He testified further that he did not look at the .kmz file for the Jackson Street site because he did not think it was "that accurate" when compared to the photos and drawings.  [Filing No. 541-2 at 5-6.]

The Jackson Street Location is associated with site 18133 021, [*see* Filing No. 428 at 7], and the Rog 10 Spreadsheet reflects that the Construction Drawings for that site were not produced to CSXT, [Filing No. 571-3 at 19].  However, Mr. Stone has been retained by Zayo to "help determine if the damages alluded to by CSXT [in discovery and pleadings] are valid." [Filing No. 539-2 at 3.]  When asked in his deposition whether he had opinions "on the accuracy of any KMZ file," he stated "No, I don't." [Filing No. 538-1 at 4.]  He also testified that he did not use the .kmz files in forming his opinions in this case.  [Filing No. 538-1 at 13.]  ]  He has not been retained to testify regarding where Zayo's installations are located or regarding the accuracy of the .kmz files.  To the extent CSXT contests Mr. Stone's knowledge of the accuracy of the .kmz files, it may

address that on cross-examination.  But the Court finds that CSXT has not shown that Mr. Stone's testimony conflicts with Zayo's discovery responses or should be stricken.

3.     *Ms. Leytham*

As to Ms. Leytham, CSXT points to statements in her Expert Disclosure relating to sites 18089 0056 and 0060 that Ms. Harper relies largely on the .kmz files "as opposed to the [lines] depicted on the [Construction Drawings], which would be far more accurate." [Filing No. 541 at 2 (citing Filing No. 541-3 at 8).]  Ms. Leytham's statements relate to sites where Zayo produced Construction Drawings and referred to them on the Rog 10 Spreadsheet with which it timely supplemented its interrogatory responses.  [*See* Filing No. 571-3 at 34 (referencing the Construction Drawings for sites 18089 0056 and 0060 at bates numbers ZAYO_2_003227 and ZAYO_2_003304).]  Zayo timely supplemented its interrogatory responses to state that the Construction Drawings are more accurate than the .kmz files where they are available, and Ms. Leytham's testimony is consistent with that.

CSXT also complains regarding Ms. Leytham's statements that CSXT has not provided any documentation showing that Zayo's installations are not within Norfolk Southern's corridor, [*see* Filing No. 541 at 4], but this is not related to the accuracy of the .kmz files.  The Court does not find anything improper or inconsistent about Ms. Leytham's opinion on this topic, or any basis to exclude the testimony about which CSXT complains.  To the extent CSXT disputes the basis for Ms. Leytham's opinion, it may address that issue on cross-examination or may present its own, previously-disclosed, expert on the issue.

In short, CSXT attempts to paint a picture of Zayo stating that the .kmz files are correct, but then presenting experts who contradict that notion.  But CSXT ignores Zayo's timely qualification that the Construction Drawings, where available, are more accurate than the .kmz

- 14 -

files.  The Court finds that the statements by Mr. Kent, Mr. Stone, and Ms. Leytham on which CSXT bases its motion do not constitute belated discovery responses and do not contradict Zayo's timely supplements to its interrogatory responses made on August 11, 2023 and as reflected in the Rog 10 Spreadsheet.  CSXT has not provided any basis for the Court to conclude that Mr. Kent's, Mr. Stone's, or Ms. Leytham's testimony or disclosures are belated, inappropriate, or "violat[e] the first KMZ order," [Filing No. 541 at 5].

Further, even if Mr. Kent, Mr. Stone, and Ms. Leytham did contradict the notion that the .kmz files are accurate even when Construction Drawings are not available, CSXT has not provided any legal authority for the principle that an expert witness cannot contradict fact discovery produced by the party it has been engaged by and the Court has not located any.  This is not a situation where Zayo itself is disavowing the accuracy of discovery that it has produced and represented as accurate.  If a Zayo expert contests the accuracy of the .kmz files without Construction Drawings reflecting the inaccuracy or with Construction Drawings that Zayo has not previously produced – something that CSXT has not demonstrated has occurred thus far – then CSXT may cross-examine the expert witness, present its own expert witness to contest the issue, or seek appropriate relief from the Court.

In short, CSXT has not provided any basis for the Court to conclude that exclusion of the statements made by Mr. Kent, Mr. Stone, or Ms. Leytham is appropriate.  CSXT's Second Motion to Prohibit Repudiation of KMZ Files, [Filing No. 541], is **DENIED**.

### III.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** CSXT's Second Motion to Prohibit Repudiation of KMZ Files.  [541.]

Date: 7/16/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**