UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02859-JRS-MJD |
| | ) |
| ZAYO GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ZAYO GROUP, LLC, | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MILENIUM INC., | ) |
| CROSSROADS COMMUNICATIONS | ) |
| SOLUTIONS, LLC, | ) |
| BSM GROUPS, LLC default entered 6/2/2023, | ) |
| JDH CONTRACTING, INC, | ) |
| OCM ENGINEERING, LLC, | ) |
| ON POINT CONSTRUCTION | ) |
| MANAGEMENT, INC., | ) |
| PLB ENGINEERING, LLC, | ) |
| SPECTRUM ENGINEERING, LLC, | ) |
| TESCO COMPANY, INC., | ) |
| | ) |
| Third Party Defendants. | ) |

**<u>Order</u>**

This matter is before the Court on Plaintiff CSX Transportation, Inc.'s ("CSXT") Objections, (ECF No. 761), to Magistrate Judge Dinsmore's Report and Recommendation on Defendant Zayo Group LLC's ("Zayo") Motion to Dismiss Count VI and IV under Rule 12(b)(1), (ECF No. 750). In contrast, no objections have been

filed to the Magistrate Judge's second Report and Recommendation setting forth which sites remain for trial after the Court's order granting partial summary judgment in favor of the Defendants. (ECF No. 751.) For the reasons discussed below, CSXT's objections to the Report and Recommendation on Zayo's Motion to Dismiss are **overruled**, and both of the Magistrate's Reports and Recommendations, (ECF No. 750, 751) are **adopted**.

## I.    Legal Standard

A district court has the discretion to assign dispositive matters for consideration by a magistrate judge, and in response the magistrate should submit to the district judge a report and recommendation, including any findings of fact. 28 U.S.C. §636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1); *see also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The magistrate's recommendation on a dispositive matter is only that, a recommendation, and the Court must decide whether to "accept, reject, or modify" the report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3); *Schur*, 577 F.3d at 760-61. If a party files objections to specific findings and recommendations of the magistrate's report, the Court must review the objections *de novo* to determine whether the magistrate's recommendations as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3). Conversely, if a party objects on some issues and not others, the party waives review of the issues to which the party has not objected. *See Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999).

## II. Discussion

### A. Background

Before this case was transferred to the Undersigned, Judge Magnus-Stinson granted in part Zayo's Partial Motion for Summary Judgment, finding, as relevant here, that CSXT did not have standing to assert its civil trespass to land and rent claims as to sites it held in easement. The Order held that "'exclusivity should be clearly evidenced in the grant of the easement[,]'" so "[e]ven if the Court assumes that CSXT could maintain a civil trespass to land claim if it had an exclusive easement to the property at issue . . . CSXT has not pointed to [any evidence] . . . indicating [the easements] are exclusive[;]" moreover, a look at Indiana precedent "demonstrate[s] a holding by the Indiana Supreme Court that even if CSXT is entitled to exclusive use of the surface of the land, that entitlement does not equate to exclusive use of the subsurface below that land or the air above that land—the only places where Zayo installed fiber optic cable." (Order 18, 19, ECF No. 607) (quoting *Bratton v. Yerga*, 588 N.E.2d 550, 554 (Ind. Ct. App. 1992)). In a subsequent Order, Judge Magnus-Stinson denied CSXT's Request to Modify the Court's Summary Judgment Order to Allow Interlocutory Appeal, reiterating her conclusion that "Zayo is entitled to judgment as a matter of law in its favor as to trespass to land and rent claims for any sites where CSXT had an easement because CSXT has not proven that those easements were exclusive." (Order 12-13, ECF No. 632.) On the heels of that Order, Zayo filed its Partial Motion to Dismiss, (ECF No. 637), moving the Court to dismiss

3

for lack of subject-matter jurisdiction Plaintiff's Count IV, theft or criminal conversion, as to the sites CSXT holds in easement, and Plaintiff's Count VI, civil trespass to chattel, as to all remaining sites.

Judge Magnus-Stinson referred Zayo's Partial Motion to Dismiss to Magistrate Judge Dinsmore for consideration. (ECF No. 644). Judge Magnus-Stinson also referred the issue of which sites remain for trial after her ruling on Zayo's Motion for Partial Summary Judgment to Magistrate Judge Dinsmore for consideration. *Id.* On January 22, 2025, Magistrate Judge Dinsmore issued two Reports and Recommendations, one detailing which sites remain for trial, (ECF No. 751), and the other recommending that Zayo's Partial Motion to Dismiss be granted in its entirety, (ECF No. 750). CSXT filed objections to certain parts of the latter, arguing against the proposed dismissal of Count IV and requesting that the Court overrule the R & R to the extent it prohibits Plaintiff's Director of Corridor Services, Alex Saar, from testifying as a lay witness at trial.

### B. CSXT's Objections

The Court begins by considering CSXT's objection to the proposed partial dismissal of Count IV.[1] In Count IV, CSXT alleges that "one of the property rights [it] owns . . . is the right to license [its railroad property] to third parties" and Zayo "knowingly and intentionally exerted unauthorized control over CSXT Railroad Property and CSXT Licensing Rights" when it made unpermitted installations and advertised the property and licensing rights for resale. (Third Am. Compl. ¶¶ 273,

---

[1] CSXT does not object to dismissal of Count VI.

4

275, ECF No. 201-1). In turn, Zayo argues that the law of the case holds that CSXT has not demonstrated a possessory interest in the land below and air above its easements, so "Zayo cannot have exerted control over [CSXT's] property" when it installed its fiber optic cable on the sites that CSXT owns in easement. (Zayo's Br. in Supp. of Partial Mot. to Dismiss. 11, ECF No. 639.) In its objections, CSXT once again requests, as it did in its responsive filings to Zayo's Partial Motion to Dismiss, that the Court reconsider Judge Magnus-Stinson's rulings on "the scope of railroad easements generally." (CSXT's Obj. to R & R 6, ECF No. 761.) Although CSXT assures the Court that the scope of its right to exclude on its easements is a "distinct legal issue[]" from its right to grant licenses for installations on its easements, (*id.*), CSXT does not elaborate on this divergence. It is perplexing to the Court how CSXT can maintain a right to license the subsurface and aerial space of its easements for utility installations when the law of the case holds that CSXT has not demonstrated an exclusive possessory interest in them. This being the case, it seems that CSXT's objections to the partial dismissal of Count IV necessarily depend upon the Court agreeing to reconsider Judge Magnus-Stinson's previous rulings. CSXT here ignores the District's Local Rules by cloaking a motion to reconsider in the guise of another filing, *see* S.D. Ind. L.R. 7-1(a). Nevertheless, to put this matter to bed once and for all, the Court will address Plaintiff's arguments to reconsider.

   *i.* *CSXT's Arguments to Reconsider Judge Magnus-Stinson's Rulings*

Under Federal Rule of Civil Procedure 54(b), orders other than final judgments "may be revised at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b).

This rule gives a district court broad discretion to reconsider any interlocutory order. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). That discretion is tempered by the "law of the case" doctrine, which "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Generally, "when a case is transferred between district judges midway through litigation, the [law of the case] doctrine discourages the new judge from reconsidering rulings made by the original judge." *Flynn* 39 F. 4th at 953 (citations omitted). But the circuit court in *Flynn* also noted that the "law of the case is a discretionary doctrine, not a rigid bar . . . and its force is lowest when applied to jurisdictional questions[,]" and while courts may apply the doctrine when there are "no significant differences in the legal landscape since the prior ruling," the Court maintains an "ongoing obligation to assure itself of its jurisdiction[,] [meaning] that revisiting such matters is almost always on the table." *Id.* (citations omitted).

To sustain the Court's jurisdiction over its theft and criminal conversion claim (Count IV), CSXT argues that Judge Magnus-Stinson's rulings as to the exclusivity of its easements were in error. This is CSXT's third time rehashing the same arguments in trying to nullify Judge Magnus-Stinson's holding as to the scope of its easements. (*See* ECF No. 624, ECF No. 655, ECF No. 761.) On two separate occasions, Judge Magnus-Stinson considered CSXT's arguments, and twice she found that CSXT was unable to demonstrate the exclusivity of its easements. While CSXT

6

seems convinced that the law is, without question, on its side, the reality is this: no Indiana state case law answers in the affirmative the question of whether a railroad, by nature of owning an easement, has exclusive possession over the subsurface and aerial space of that easement. And even if, as CSXT alleges, the nature of a railroad's easement grants it exclusive possession over the easement's surface, CSXT has not demonstrated how that particular "possessory interest was affected by Zayo's installations," (Order 19, ECF No. 607), as to amount to an injury-in-fact sufficient to confer standing.

It is true, as CSXT points out, that in the early days of railroad operations, the United States Supreme Court emphasized the breadth of railroad easements. (*See e.g.* CSXT's Resp. in Opp'n to Zayo's Partial Mot. to Dismiss 4, ECF No. 655) (citing *New Mexico v. United States Tr. Co.*, 172 U.S. 171, 183 (1898) ("The right acquired by the railroad company, though technically an easement, yet requires for its enjoyment a use of the land permanent in in its nature and practically exclusive.")  But to extrapolate from this sentiment the narrow conclusion that a railroad's easement, no matter the language in the grant, bestows upon it exclusive rights in the subsurface, surface, and airspace above, would be an overreach. CSXT complains that Judge Magnus-Stinson failed to engage with certain case law it presented, specifically the "[holdings]" of two Indiana Supreme Court cases: *Consumers' Gas Trust Co. v. American Plate Glass Co.*, 68 N.E. 1020 (Ind. 1903), and *Chicago, St. L. & P. Railway Co. v. Burger*, 24 N.E. 981, 982 (Ind. 1890). (CSXT's Resp. in Opp'n to Zayo's Partial Mot. to Dismiss 5, ECF No. 655). CSXT characterizes these cases to stand for the

proposition that "the possession of the railroad that held the easement was so exclusive that not even the grantor of the easement itself was authorized to enter upon the right of way." (*Id.*) While the Court disagrees with this characterization, it does not see how such a conclusion undermines Judge Magnus-Stinson's rulings on CSXT's lack of ownership over the subsurface and airspace of its easements, nor remedies CSXT's failure to provide any evidence demonstrating that Zayo had interfered with CSXT's alleged possessory interest in the surface.

In *Consumers' Gas,* a gas company sued a glass company, seeking to enjoin it from drilling a well under a railroad's right of way. The right of way, which the Indiana court determined was held by the railroad in easement, was granted to it by the gas company, which held the servient property in fee. The railroad and the glass company had seemingly agreed that the latter would dig a gas well under the former's easement; however, the Indiana court found that "the mere fact that [the gas company] may not enter and enjoy [the railroad's easement] [did] not destroy [its] property rights in the servient tenement," and found that the gas company could enjoin the glass company from siphoning gas on its fee. *Consumers' Gas Tr. Co.,* 68 N.E. at 1021. In other words, the "holding" quoted by CSXT, that the gas company is not entitled to enter upon the railroad's easement to drill its own gas wells, is only dictum undergirding the case's true holding: "we do not doubt the right of the gas company to an injunction restraining the drilling of wells upon that part of the right of way which extends across the tract leased by it." *Id.* t 1022. If anything, this case cuts against CSXT's position that it has exclusive ownership over the subsurface of

8

its easements. The Indiana Supreme Court found that the fee owner's rights in the subsurface of its land trumped the railroad's attempt to install a gas well in the subsurface of its easement.

*Chicago, St. L. & P.* is similarly unimpactful. The case concerned a landowner who sued a railroad company, alleging that the railroad company negligently maintained its easement, which ran across the landowner's property, as to cause a fire on the landowner's meadow. In dictum, the Court noted that "[t]he right of way of a railroad company is only an easement, the fee remaining in the owner of the soil, but the railroad company has the exclusive right of possession, so that the owner of the fee has no right to enter and remove combustibles." 24 N.E. 981, 982. The holding of the case was irrelevant to the issues at bar: the Indiana Supreme Court held that "the [jury's special] verdict rests upon a theory entirely different from that upon which the complaint proceeds[]" and reversed the judgment with instructions for a new trial because "[t]he appellee must recover, if at all, upon the case as made by his complaint, and not on some other, which he might have made." *Id.* (citations omitted). In short, the holding merely reversed the jury verdict and did not opine as to the extent of the possessory interest in the space above or below the surface.

As concerns Judge Magnus-Stinson's rulings, there is nothing in either case to undermine the proposition that CSXT does not possess "exclusive use of the subsurface below that land or the air above that land—the only places where Zayo installed fiber optic cable." (Order 19, ECF No. 607.) Nor do the cases offer insight as to whether the railroad could have sustained an action for trespass to any part of

9

its easement in light of Indiana's traditional rule that a trespass action cannot be maintained for an invasion of an easement interest. *See State ex rel. Green v. Gibson Cir. Ct.,* 206 N.E.2d 135, 137 (Ind. 1965). Finally, while the cases do indicate that the fee owners were prohibited from entering onto the railroads' easements, they do not remedy the Court's lack of subject-matter over the trespass and rent claims that Judge Magnus-Stinson dismissed. As Judge Magnus-Stinson held, "CSXT ha[d] not provided any proof that Zayo interfered with CSXT's [purported] exclusive right to the surface of the land," nor evidenced that its possessory interest in the surface was affected by Zayo's installations. (Order 19, ECF No. 607.) Ultimately, even if the Court assumes that CSXT maintains exclusive possession over the surface of its easements, CSXT could not then demonstrate and has not now shown an injury-in-fact sufficient to establish standing on its trespass claims. Without evidence of an injury-in-fact sufficient to confer standing, the Court lacks subject-matter jurisdiction to adjudicate that claim.

Because the Court does not believe Judge Magnus-Stinson wrongly disclaimed jurisdiction over CSXT's Counts V and VIII, the Court finds no reason to depart from the law of the case. The Court counsels CSXT to accept defeat on this recurring issue and to reserve any further argument for appeal.

  ii. *CSXT's Objection to the Dismissal of Count IV*

The proposition that CSXT has the right to license the subsurface and aerial space of its easement for a fiber optic installation is difficult to square with the law of the case as discussed. While CSXT alleges that the law of the case does not decide the

10

licensing issue, CSXT does not explain how the right to license is not premised on the exclusive right of possessory ownership, and it is unclear how these rights can be disentangled. Because CSXT's objections to Count IV are premised on a reconsideration of Judge Magnus-Stinson's rulings, which the Court has now rejected, the Court cannot consider them. It is prudent to note, however, that regardless of the law of the case, there is no clear and binding Indiana law espousing an affirmative finding that railroad easement licensing rights exist. In its objections, CSXT pastes together a tapestry of statutory and case law citations, each of which, in one way or another, *implies* that a railroad with an easement may license it for use by a third party. But none says so explicitly. And of course, there is CSXT's continued reliance on *Hynek v. MCI World Communications, Inc.,* 202 F. Supp. 2d 831 (N.D. Ind. 2002), a non-precedential case with a holding supportive of CSXT's position. In his R & R, Magistrate Judge Dinsmore looks under the hood of the *Hynek* opinion, and the Court agrees with his assessment of the crumbling machinery. *Hynek* at best overreads the Indiana case law it cites by taking implications for conclusions. Regardless, the Court is not bound by *Hynek,* and it is the case that no Indiana precedent affirms CSXT's position that it may license the subsurface or aerial space of its easements for utility installations.

Finally, a brief note on CSXT's policy arguments. It is perhaps fair to say that CSXT's exclusive possession of its railroad easements would make things simpler for prospective licensees, in the sense that bargaining with an array of individual fee owners to license an installation could come with higher transaction costs.

11

Additionally, there may be safety benefits to allowing CSXT to regulate under and above ground installations on its railroad easements. But the Court cannot base its decision solely on what one party views as the most pragmatic outcome. Indiana law, and the law of the case, must guide the Court's rulings. The Court concludes that on Count IV of CSXT's Third Amended Complaint, as to sites it owns in easement, CSXT cannot demonstrate an "invasion of a legally protected interest" sufficient to constitute an injury-in-fact for Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

      *iii.*    *Alex Saar's Testimony*

CSXT requests that the Court "overrule the R & R to the extent that adopting it would render all of Alex Saar's testimony inadmissible expert testimony or preclude Saar from giving similar and additional fact and lay opinion testimony at trial." (CSXT Objs. 23, ECF No. 761). Zayo, in turn, requests that the Court preclude Saar from testifying at trial based on "Magistrate Judge Dinsmore's conclusions." (Zayo Resp. in Opp'n to CSXT's Objs. 13, ECF No. 765.) The parties misconstrues the R & R. The R & R's discussion of Saar's testimony was in response to CSXT relying on it to establish standing for its trespass to chattels claim. In opposing Zayo's motion, CSXT sought to demonstrate a concrete and particularized injury using testimony from Saar that had been previously excluded. (*See* ECF No. 606). As the Magistrate Judge pointed out, CSXT cannot repackage the contents of Saar's expert testimony as lay opinion and reintroduce excluded evidence to establish standing for Count VI. But Judge Magnus-Stinson's Order was clear: Saar "may provide lay testimony as an

12

employee of CSXT **as long as it is not based on conjecture or speculation**." (Order 15, ECF No. 606) (emphasis added).[2]

Saar is not precluded from providing lay opinion testimony at trial, as long as that testimony comports with Rule 701 of the Federal Rules of Evidence; in other words, it must be 1) rationally based on the witness's perception; 2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and 3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The Court cautions CSXT that Saar will be permitted to testify only to the extent his testimony comports with this rule; he will not be permitted to rehash excluded expert testimony or engage in speculation absent some contemporaneous showing, subject to Zayo's objections at trial.

### III. Conclusion

CSXT has moved for leave to file a reply brief in support of its objections to the R & R, (ECF No. 766). The Court **grants** the motion and notes that it has considered the reply in the foregoing analysis.

CSXT does not object to the Magistrate's proposed dismissal of Count VI, the trespass to chattel claim, and so waives its right to review on this issue. For the foregoing reasons, the Court **overrules** CSXT's objections to the R & R. The Court **adopts** both R & Rs, (ECF No. 750, ECF No. 751), in whole and clarifies that nothing

---

[2] The Court notes that while Judge Magnus-Stinson reserved Saar's right to testify about the damages he witnessed at the Montrose, Illinois site, (*see* Order 15, ECF No. 606), all Illinois sites have since been dismissed from this case for lack of personal jurisdiction, (ECF No. 741). Saar is not permitted to testify about specific sites not at issue in this litigation.

in them should be read to prohibit Alex Saar from offering proper lay opinion testimony at trial.

Count VI, in whole, and Count IV, as to the sites CSXT owns in easement, are **dismissed without prejudice** for lack of subject-matter jurisdiction.

**SO ORDERED.**

Date: 2/21/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record.